No. 22-10675

# United States Court of Appeals

*for the*

# Eleventh Circuit

———————————————

PDVSA US LITIGATION TRUST,

*Plaintiff-Appellant,*

PETROLEOS DE VENEZUELA, S.A.,

*Movant-Appellant,*

– v. –

LUKOIL PAN AMERICAS, LLC, LUKOIL PETROLEUM, LTD.,
COLONIAL OIL INDUSTRIES, INC., COLONIAL GROUP, INC.,
GLENCORE, LTD., *et al.*,

*Defendants-Appellees.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
HONORABLE DARRIN P. GAYLES, U.S. DISTRICT JUDGE

## BRIEF FOR PLAINTIFF AND MOVANT APPELLANTS

GEORGE F. CARPINELLO
JOSEPH STARSIA
JENNA SMITH
BOIES SCHILLER FLEXNER LLP
30 South Pearl Street, 11th Floor
Albany, New York 12207
(518) 434-0600

– and –

MARSHALL DORE LOUIS
BOIES SCHILLER FLEXNER LLP
MIAMI CENTER
100 SOUTHEAST 2ND ST., SUITE 2800
MIAMI, FL 33131
TEL: (305) 539-8400

DAVID BOIES
BROOKE ALEXANDER
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, New York 10504
(914) 749-8200

– and –

DAVID A. BARRETT
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, New York 10001
(212) 446-2300

*Attorneys for Plaintiff-Appellant PDVSA U.S. Litigation Trust and
Movant-Appellant Petroleos de Venezuela, S.A.*

CERTIFICATE OF INTERESTED PERSONS

*PDVSA US LITIGATION TRUST V. LUKOIL PAN AMERICAS, LLC, ET AL,* NO. 22-10675

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1, counsel for Appellants hereby certify that the following persons and entities have or may have an interest in the outcome of this case:

**District Court Judges**

Gayles, Darrin P., District Court Judge

Otazo-Reyes, Alicia M., Magistrate Judge

**Counsel for Plaintiff/Appellant**

Barrett, David A.

Boies, Alexander

Boies, David

Boies Schilller Flexner LLP

Carpinello, George F.

Marshall Dore Louis

Kunstler, Marilyn

Shaw, Adam R.

Starsia, Joseph

**Plaintiff/Appellant and Associated Persons/Entities**

Algamex Limited

Andrews, Vincent (trustee)

The Bolivarian Republic of Venezuela

The Brennan Group

Citgo Holdings, Inc. and its numerous partially and wholly-owned subsidiaries

PDVSA US Litigation Trust (Movant on Motion to Intervene and Beneficiary of Trust)

Petróleos de Venezuela, S.A (PDVSA) (Trust beneficiary) and its numerous partially and wholly-owned subsidiaries

Rojas, Alejandro (trustee)

Swyer, Edward (trustee)

**Law Firms Representing Defendants/Appellees**

Akin Gump Strauss Hauer & Feld LLP

Carlton Fields, P.A.

Clarke Silverglate, P.A.

Fowler White Burnett P.A.

Gelber Schachter & Greenberg, P.A.

Gunster

Holland & Knight LLP

Hunter, Maclean, Exley & Dunn, P.C.

Jorden Burt LLP

Mark Migdal & Hayden

Mayer Brown LLP

Paul, Weiss, Rifkind, Wharton & Garrison, LLP

Pillsbury Winthrop Shaw Pittman

Podhurst Orseck, P.A.

Porter Hedges LLP

Reed Smith LLP

Rivero Mestre LLP

Susman Godfrey, LLP

Quinn Emanuel Urquhart & Sullivan, LLP

**<u>Counsel for Defendants/Appellees</u>**

Bellows, Christopher N.

Birenboim, Bruce

Breur, George Thomas

Briz, Brian A.

Burck, William A.

Burkoff, David M.

Canamero, Rebecca Jo

Cardenas, Maria Cristina

Carey, Jessica S.

Encinosa, Israel Jovanny

Espinosa, Mikayla Kiersten

Funes, Freddy

Galis, Allan C.

Gangwer, Jason E.

Gervais, Michael

Glass, Ethan

Gonzalez, Alex M.

Greenberg, Gerald Edward

Gruhn, Clifton Richard

Grillo, Lara O'Donnell

Guttman, Jorge David

Hauss, Stephen

Hayden, Donald John

Hudes, Adam L.

Josefsberg, Robert C.

Kaplan, Alexander L.

Karp, Brad S.

Kaskel, Jonathan H.

Kelso, Michael C.

Kully, David

Lee, Stephen H.

Lennon Jr., Michael P.

MacDougall, Mark J.

Manne, Neal S.

Mark, Etan

McLish, Thomas P.

Medlock, Stephen M.

Mitchell, Stacey H.

Mullins, Edward Maurice

O'Black, Weston

O'Connor, Catherine A.

Olivos, Christina

Paterno, Lide E.

Pathman, Kimberly Ann

Reid, Benjamine

Rivero, Andres

Rosenthal, Stephen Frederick

Ryan, Mark W.

Sanchez, Dayme

Schachter, Adam Michael

Silverglate, Spencer Hal

Sum, Alice

Wolfson, Adam B.

**<u>Individual Defendants/Appellees</u>**

Alvarez, Luis

Baquero, Leonardo

De la Vega, Sergio

Gabaldon, Gustavo

Larocca, Jose

Liendo, Luis

Lutz, Daniel

Maarraoui, Antonio

Morillo, Francisco

Paez, Campos Elias

Poveda, Maximiliano

Rodriguez, Maria Fernando

Rosado, Paul

Ryan, John

Summers, Andrew

**Corporate Defendants/Appellees**

BAC Florida Bank

Blue Bank International N.V.

Colonial Oil Industries, Inc.

Colonial Group, Inc.

EFG International A.G.

Glencore de Venezuela, C.A.

Glencore Ltd

Glencore International

Godelheim, Inc.

Helsinge Holdings, LLC

Helsinge, Inc.

Helsinge Ltd., Saint-Helier

Hornberg Inc.

Jehu Holdings, Inc.

Lukoil Pan Americas LLC

Lukoil Petroleum Ltd

Masefield A.G.

Societe Doberan, S.A.

Societe Hedisson, S.A.

Societe Hellin, S.A.

Trafigura A.G.

Trafigura Trading LLC

Trafigura Beheer B.V.

Vitol Energy (Bermuda) Ltd

Vitol S.A.

Vitol, Inc.

Waltrop Consultants, C.A.

Dated: May 11, 2022

**BOIES SCHILLER FLEXNER LLP**

By: _/s/ Marshall Dore Louis_

Marshall Dore Louis (Bar No. 512680)
Miami Center
100 Southeast 2nd St., Suite 2800
Miami, FL 33131
Tel:  (305) 539-8400
Fax: (305) 539-1307

David Boies
Brooke Alexander
333 Main Street
Armonk, New York 10504
Tel:  (914) 749-8200
Fax:  (914) 749-8300

George F. Carpinello
30 S. Pearl Street, 11th Floor
Albany, New York 12207
Tel:  (518) 434-0600
Fax:  (518) 434-0665

David A. Barrett
55 Hudson Yards
New York, NY 10001
Tel: (212) 446-2300
Fax: (212) 446-2350

***Attorneys for Plaintiff and Movant
Appellants***

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and Eleventh Circuit Rule 28-1(b),

Appellants certify that Appellants are not a subsidiary or affiliate of a publicly owned

corporation, and that Appellants are not aware of any publicly owned corporation,

not a party to the litigation, that has a financial interest in the outcome of this case.

Respectfully Submitted,

Dated:  May 11, 2022                    **BOIES SCHILLER FLEXNER LLP**

By:  _/s/ Marshall Dore Louis_
Marshall Dore Louis (Bar No. 512680)
Miami Center
100 Southeast 2nd St., Suite 2800
Miami, FL 33131
Tel:  (305) 539-8400
Fax: (305) 539-1307

David Boies
Brooke Alexander
Boies Schiller Flexner LLP
333 Main Street
Armonk, New York 10504
Tel:  (914) 749-8200
Fax:  (914) 749-8300

George F. Carpinello
Joseph Starsia
Jenna Smith
Boies Schiller Flexner LLP
30 S. Pearl Street, 11th Floor
Albany, New York 12207
Tel:  (518) 434-0600
Fax:  (518) 434-0665

David A. Barrett
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY 10001
Tel:  (212) 446-2300
Fax: (212) 446-2350

***Attorneys for Plaintiff and Movant
Appellants***

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Oral argument is warranted in this case because it raises important legal issues concerning the concepts of Article III standing and real party in interest and the proper interpretation of Rules 17(a) and 60(b) of the Federal Rules of Civil Procedure.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT............................... i

TABLE OF AUTHORITIES ............................................................... iv

JURISDICTIONAL STATEMENT ...................................................... 1

STATEMENT OF ISSUES ON APPEAL ........................................... 1

STATEMENT OF THE CASE .............................................................. 1

STATEMENT OF FACTS .................................................................... 2

STANDARD OF REVIEW .................................................................. 5

SUMMARY OF ARGUMENT ............................................................. 6

ARGUMENT.........................................................................................11

I.   THE DISTRICT COURT HAD SUBJECT MATTER JURISDICTION TO
     SUBSTITUTE PDVSA FOR THE TRUST. ...............................................11

     A. This Case Is Governed by *Delta Coal* and Many Other Appellate
        Decisions. ...........................................................................................11

     B. The District Court Misread *Delta Coal* and Multiple Other Cases. ........17

II.  PDVSA MEETS THE REQUIREMENTS OF RULE 17(a)(3) FOR
     SUBSTITUTION AND RELATION BACK. .............................................23

     A. Rule 17(a)(3) Allows for Substitution of the Real Party in Interest and
        Provides That Its Claims Relate Back to the Initial Filing of the
        Complaint. ...........................................................................................23

     B. PDVSA Met the Conditions for Application of Rule 17(a)(3)...............30

III. THE DISTRICT COURT HAD JURISDICTION UNDER RULE 60(b) TO
     ALLOW POST-JUDGEMENT RELIEF. ...................................................33

IV. THIS COURT SHOULD NOT REACH THE FACT-INTENSIVE
    ARGUMENTS NOT TAKEN UP BY THE DISTRICT COURT; IT
    SHOULD REMAND FOR FURTHER CONSIDERATION. .....................36

CONCLUSION ..................................................................................................39

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(g)(1) ................41

CERTIFICATE OF SERVICE .............................................................................42

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
    106 F.3d 11 (2d Cir. 1997)............................................................................24, 25

*Aldana v. Del Monte Fresh Produce N.A., Inc.*,
    741 F.3d 1349 (11th Cir. 2014) .................................................................... 35

*American Fid. & Cas. Co v. All American Bus Lines*,
    190 F.2d 234 (10th Cir.)................................................................................ 16

*Camarena v. Dir., Immigr. & Customs*,
    988 F.3d 1268 (11th Cir. 2021) ...................................................................... 5

*Carolina Cas. Ins. Co. v. Red Coats Inc.*,
    624 F. App'x 992 (11th Cir. 2015)................................................................ 36

*Chambers v. Florida Parole Comm'n*,
    257 F. App'x 258 (11th Cir. 2007)................................................................ 33

*Cifuentes v. Regions Bank*,
    No. 11-23455, 2012 WL 2339317 (S.D. Fla. June 19, 2012)............17, 18, 22, 26

*Crowley Maritime Corp. v. Robertson Forwarding Co., Inc.*,
    No. 20-20151, 2020 WL 4366079 (S.D. Fla. July 30, 2020) .................21, 31, 32

*Cummings v. United States*,
    704 F.2d 437 (9th Cir. 1983).....................................................................27, 28

*Curtis v. United States*,
    61 Fed. Cl. 511 (Ct. Fed. Cl. 2004) ...........................................................33, 34

*Degamo v. Bank of Am., NA*,
    849 F. App'x 620 (9th Cir. 2021).................................................................. 36

iv

*Delta Coal Program v. Libman*,
  554 F. Supp. 684 (N.D. Ga. 1982) .................................................................. 31

*Delta Coal Program v. Libman*,
  743 F.2d 852 (11th Cir. 1984) ................................................................ *Passim*

*Esposito v. U.S.*,
  368 F.3d 1271 (10th Cir. 2004) ........................................................ 15, 16, 29

*Fisher v. PNC Bank, N.A.*,
  2 F.4th 1352 (11th Cir. 20221) ......................................................................... 5

*Fraley v. Cincinnati Ins. Co.*,
  No. 1:05CV006-VPM, 2006 WL 435667 (M.D. Ala. Feb. 21, 2006) ............... 13

*Fund Liquidation Holdings LLC v. Bank of Am. Corp.*,
  991 F.3d 370 (2d Cir. 2021) ...................................................................... 14, 15

*GE Mortg. Servs., LLC v. Laws. Title Ins. Corp.*,
  No. 1:05-CV-03057-MHS, 2006 WL 8432853 (N.D. Ga. Mar. 31, 2006) ......... 13

*Guevara v. Republic of Peru*,
  468 F.3d 1289 (11th Cir. 2006) ....................................................................... 36

*Hess v. Edey*,
  689 F. 2d 977 (11th Cir. 1982) .................................................................. 13, 14

*In re Adelphia Communications Corporation Securities and Derivative Litigation*,
  No. 03 MDL 1529, 2009 WL 1490599 (S.D.N.Y. May 21, 2009) .... 26, 27, 31, 34

*In re Engle Cases*,
  767 F.3d 1082 (11th Cir. 2014) ..................................................................... 6, 24

*Kondapalli v. DeMasi (In re DeMasi)*,
  8:13-AP-00890-MGW, 2014 WL 4071664 (Bankr. M.D. Fla. Aug. 18, 2014).. 20

*Levinson v. Deupree*,
  345 U.S. 648 (1953) ......................................................................................... 14

*Link Aviation, Inc. v. Downs*,
    325 F.2d 613 (D.C. Cir. 1963) ............................................................. 16

*Live Entertainment, Inc. v. Digex, Inc.*,
    300 F. Supp. 2d 1273 (S.D. Fla. 2003) ..................................... 18, 19, 20

*Lizarazo v. Miami-Dade Corrections and Rehab. Dep't*,
    878 F.3d 1008 (11th Cir. 2017) ............................................................. 6

*Lustig v. Blakesley* (*In re Blakesley*),
    19-20566, 2021 WL 5985327 (Bankr. W.D.N.Y. Dec. 16, 2021) ..................... 35

*Magallon v. Livingston*,
    453 F.3d 268 (5th Cir. 2006) ............................................................. 28

*MAO-MSO Recovery II, LLC v. Boehringer Ingelheim Pharms., Inc.*,
    No. 1:17-CV-21996-UU, 2018 WL 4956737 (S.D. Fla. Jan. 26, 2018) ........ 13, 19

*Marks Law Offices, LLC v. Mireskandari*,
    704 F. App'x (3d Cir. 2017) ............................................................. 29

*Meek v. Metropolitan Dade County Florida*,
    985 F.2d 1471 (11th Cir. 1993) ......................................................... 32

*Miller v. Longacre*,
    172 F.3d 44, 1999 WL 34977 (4th Cir. 1999) ..................................... 16

*Ocwen Loan Servicing, LLC v. Accredited Home Lenders, Inc.*,
    No. 6:08-CV-214-ORL-31GJ, 2009 WL 722406 (M.D. Fla. Mar. 18, 2009) ..... 13

*O'Hara v. District No. 1-PCD*,
    56 F.3d 1514 (D.C. Cir. 1995) ......................................................... 28

*Pacheco de Perez v. AT&T Co.*,
    139 F.3d 1368 (11th Cir. 1998) ......................................................... 36

*Patton v. Sec'y of Health & Hum. Servs.*,
 25 F.3d 1021 (Fed. Cir. 1994) .......................................................................... 33

*PDVSA US Litigation Trust v. Lukoil Pan Americas, LLC*,
 991 F.3d 1187 (11th Cir. 2021) ................................................................*Passim*

*Rideau v. Keller Independent School District*,
 819 F.3d 155 (5th Cir. 2016) ........................................................................... 29

*Summit Office Park, Inc. v. U.S. Steel Corp.*,
 639 F.2d 1278 (5th Cir. 1981) .....................................................................21, 22

*Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*,
 904 F.3d 1197 (11th Cir. 2018) ......................................................................... 5

*U.S. v. Perulena*,
 146 F.3d 1332 ...................................................................................................... 6

*Unique Sols., LLC v. Murray*,
 No. CV 106-024, 2007 WL 9701284 (S.D. Ga. Apr. 18, 2007) ....................... 13

*Vencor Hosps., Inc. v. Standard Life & Accident Ins. Co.*,
 279 F.3d 1306 (11th Cir. 2002) ......................................................................... 6

*Wieburg v. GTE Southwest, Inc.*,
 272 F.3d 302 (5th Cir. 2001) ........................................................................... 29

## Statutes

28 U.S.C. § 1291 ................................................................................................... 1

## Rules

Fed. R. Civ. P. 17(a) ....................................................................................*Passim*

Fed. R. Civ. P. 60(b) ....................................................................................*Passim*

**Other Authorities**

7 Moore, Federal Practice and Procedure § 60.2 ................................................. 33

## JURISDICTIONAL STATEMENT

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291, as this is an appeal from a final order denying Petroleus de Venezuela, S.A. ("PDVSA")'s motion to be substituted as real party in interest pursuant to Fed. R. Civ. P. 17(a) and for relief from the judgment pursuant to Fed. R. Civ. P. 60(b) on February 2, 2022 in the United States District Court for the Southern District of Florida. Dkt. No. 755. Plaintiff-Appellant and Movant-Appellant timely filed a notice of appeal on March 1, 2022. Dkt. No. 756.

## STATEMENT OF ISSUES ON APPEAL

This appeal presents the following issues:

(1)    Whether the district court had subject matter jurisdiction to grant PDVSA's motion to be substituted as the real party in interest.

(2)    Whether the district court properly applied Federal Rules of Civil Procedure 17(a) and 60(b).

(3)    Whether PDVSA's motion was timely.

## STATEMENT OF THE CASE

### COURSE OF PROCEEDINGS AND DISPOSITION BELOW

This action for damages and injunctive relief was filed on March 3, 2018 (Dkt. No. 1) and the Amended Complaint was filed on March 5, 2018 (Dkt. No. 12) by the PDVSA US Litigation Trust ("the Trust"). In response to the Trust's motion for

preliminary injunctive relief, Defendants challenged the Trust's standing. The district court referred the matter to the magistrate judge who, after discovery and a hearing, recommended that the court hold that the Trust lacked standing. Dkt. No. 638. The district court entered a final judgment granting Defendants' motion to dismiss for lack of standing on March 19, 2019. Dkt. Nos. 679, 684. The Trust timely filed a notice of appeal on March 22, 2019. Dkt. No. 681. This Court affirmed the dismissal on March 18, 2021. *PDVSA US Litigation Trust v. Lukoil Pan Americas, LLC*, 991 F.3d 1187 (11th Cir. 2021). On May 18, 2021, PDVSA moved pursuant to Rules 17(a) and 60(b) to be substituted as the real party in interest. The motion was denied on February 2, 2022. Dkt. No. 755. A notice of appeal was filed on March 1, 2022. Dkt. No. 756.

## STATEMENT OF FACTS

The proposed Complaint (Dkt. No. 12) alleges that Defendants are individuals and corporations who executed a multi-billion-dollar fraud on PDVSA, the Venezuelan state oil company and, by extension, the people of Venezuela. They bribed numerous people to obtain PDVSA's proprietary oil trading information, which they conspired to use to manipulate the pricing of crude oil and hydrocarbon products. *Id*.

At the heart of the conspiracy are Defendants Francisco Morillo and Leonardo

2

Baquero.  In brief summary, through their Miami-based operation, they (i) hacked into PDVSA's computers; (ii) stole information concerning PDVSA's bid solicitations for purchase and sale of oil products; (iii) provided the information to Defendant oil traders in exchange for large kickbacks; and (iv) colluded to rig bids and ultimately cost PDVSA billions of dollars.  *Id.*

This action was brought by the Trust, and not PDVSA itself, so that efforts to hold Defendants accountable could proceed without interference from the political and economic instability and rampant corruption in Venezuelan government and society.  The Trust was created under New York law by PDVSA as grantor; it has two New York trustees and one Venezuelan trustee.  Dkt. No. 518-2.  PDVSA is also the beneficiary of the Trust.  *Id.* at 2.5(b).  Any proceeds obtained by the Trust must be held for the sole benefit of PDVSA, but no distributions can be made in violation of law, including the strict sanctions imposed by the United States on Venezuelan assets.  *Id*. at 3.6(b).  Accordingly, the net proceeds of any recovery would effectively remain in the Trust until the current Venezuelan crisis is resolved or the distribution is otherwise approved by the U.S. Treasury Department.

On March 3, 2018, the Trust moved for a preliminary injunction to prevent Defendants from destroying evidence and dissipating assets in light of their

3

demonstrated history of doing both.  Dkt. No. 5.[1]  In opposition to the motion, Defendants argued, among other things, that the Trust lacked standing.  Dkt. No. 161.  The district court referred the issue of the Trust's standing to the magistrate judge for discovery on standing.  Dkt. No. 267 ("Apr. 16, 2018 Hearing Tr.") at 34:25-35:4; Dkt. Nos. 219, 220.

After discovery and a hearing, the magistrate judge on November 5, 2018 recommended dismissal for lack of subject matter jurisdiction.  Dkt. No. 638.  The Trust objected to the report (Dkt. No. 646), and the district court, in an opinion dated March 19, 2019 (Dkt. No. 684), agreed in part with the report and affirmed dismissal for lack of standing.  The district court agreed with the magistrate judge that the Trust had failed to authenticate the agreement by which PDVSA had assigned its claims to the Trust. Dkt. No. 684 at 5-6.  The court also held that the assignment was champertous under New York law.  *Id*. at 7-8.  This Court affirmed the dismissal on March 18, 2021.  *PDVSA US Litig. Tr. v. Lukoil Pan Americas, LLC et al.*, 991 F.3d 1187 (11th Cir. 2021).  This Court "assume[d] without deciding that the Litigation Trust made out a prima facie case of authenticity for the trust agreement at the Rule 12(b)(1) proceedings, and that this prima facie showing was sufficient." *Id.* at 1191.

---

[1] The district court granted in part and denied in part a temporary restraining order on March 5, 2018. Dkt. No. 9.

Nonetheless, this Court found the assignment to be champertous and affirmed the dismissal. *Id.* at 1192-97.

On May 18, 2021, PDVSA moved in the district court for relief from the judgment and to be substituted as the real party in interest pursuant to Federal Rules of Civil Procedure 17(a) and 60(b). Dkt. No. 732. As part of the motion, PDVSA sought to interpose a complaint virtually identical to that asserted by the Trust. Dkt. No. 732-1. On February 22, 2022, the district court denied the motion. Dkt. No. 755. On March 1, 2022, the Trust and PDVSA filed a notice of appeal. Dkt. No. 756.

## STANDARD OF REVIEW

The district court dismissed this action after finding that the court lacked subject matter jurisdiction. A district court's dismissal for lack of subject matter jurisdiction is reviewed *de novo*. *Fisher v. PNC Bank, N.A.*, 2 F.4th 1352, 1355 (11th Cir. 20221); *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1271 (11th Cir. 2021). When reviewing a dismissal order, the Court should "accept all facts in the complaint as true and view those facts in the light most favorable to the plaintiff." *Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1207 (11th Cir. 2018).

Similarly, the district court's failure to apply the proper tests under Rules 17(a) and 60(b) is subject to *de novo* review. *Lizarazo v. Miami-Dade Corrections and Rehab. Dep't*, 878 F.3d 1008, 1010 (11th Cir. 2017) ("We review *de novo* a district court's interpretation of the Federal Rules of Civil Procedure"); *Vencor Hosps., Inc. v. Standard Life & Accident Ins. Co.*, 279 F.3d 1306, 1308 (11th Cir. 2002) (same). Although a court's application of a rule to the facts of a given case is reviewed for abuse of discretion (*In re Engle Cases*, 767 F.3d 1082, 1109 (11th Cir. 2014)), where a court, such as the district court here, misinterprets a Federal Rule of Civil Procedure, the proper standard of review for the Court's mistake of law is de novo review. *U.S. v. Perulena*, 146 F.3d 1332, 1334 n. 7 (11th Cir. 1998) ("Whether the district court misinterpreted the Sentencing Guidelines is a question of law. Accordingly, we review the district court's interpretation of the guidelines in this case *de novo.*").

## <u>SUMMARY OF ARGUMENT</u>

When the Trust first brough this action, Defendants consistently argued, and the district court agreed, that PDVSA was the real party in interest. Dkt. Nos. 155 at 4, 684 at 2. Defendants also told this Court in the previous appeal that dismissal of the Trust's claims would not adversely affect the people of Venezuela because "[i]f the Litigation Trust and/or conveyance were to be invalidated, PDVSA would

6

still have its purported claims." Case No. 19-10950, Appellee's Br., filed on June 26, 2019 at 36. Defendants counsel repeated that point in the closing of his oral argument before this Court.[2] Yet, when PDVSA sought to intervene to pursue those claims, Defendants argued and the district court agreed, that the court had no jurisdiction to adjudicate those claims.

The district court found that, because the assignment from PDVSA to the Trust was invalid, the court lacked subject matter jurisdiction to substitute PDVSA as the real party in interest. That conclusion is clearly erroneous as a matter of law. If the district court had jurisdiction *ab initio*, it certainly had jurisdiction to entertain a proper motion under Rules 17(a)(3) and 60(b) to allow substitution of the real party in interest after the Trust's lack of standing was finally determined by this Court.

The district court was not divested of jurisdiction merely because it found that the Trust lacked standing. The court's logic is not only contrary to prevailing case law, but also undermines the purpose of Rule 17(a)(3), which was expressly designed to allow liberal substitution of a party and to adjudicate cases on their underlying merits. In almost every case where courts have applied Rule 17(a)(3),

---

[2] "These claims still remain in the hands of PDVSA if this case is dismissed." Oral Argument in *PDVSA US Litigation Trust v. Lukoil Pan Americas, LLC et al.*, dated May 22, 2020 at timestamp: 32:28, available at: https://www.ca11.uscourts.gov/oral-argument-recordings?title=19-10950&field_oar_case_name_value=&field_oral_argument_date_value%5Bvalue%5D%5Byear%5D=&field_oral_argument_date_value%5Bvalue%5D%5Bmonth%5D= (last accessed May 10, 2022).

the initial party lacks standing.  If that lack of standing, *per se*, means the court lacks jurisdiction, Rule 17(a)(3) is a dead letter.

Moreover, Rule 17(a)(3) clearly allows substitution—even after dismissal—when such substitution does not alter the original complaint's factual allegations as to the events or the participants and the substituted party has an identity of interest with the original plaintiff.  PDVSA's motion for substitution does not change those allegations in any way.  Moreover, PDVSA brought the action originally based on a good faith belief that its assignment to the Trust was valid and effective.   As soon as it was finally determined by this Court's affirmance of the dismissal that the assignment was invalid and the Trust lacked standing, PDVSA sought substitution in order to protect its interests directly.

The district court suggested that PDVSA should have intervened prior to dismissal of the action, when Defendants first challenged the Trust's standing.  Dkt. No. 755 at 4.  That alternative, however, would have defeated the whole purpose of creating the Trust.  As proven and uncontroverted below, PDVSA created the Trust as a vehicle to pursue its valid claims to avoid the possibility that the action would be derailed or proceeds would be diverted by persons or parties in Venezuela who had interests in conflict with PDVSA and the people of Venezuela.  *See* Dkt. No. 583-1; *see also* Dkt. No. 519 at 78:15-79:3 ("The purpose of the trust was very clear.

8

The purpose of the trust was to make sure this litigation was conducted without any interference from the Government or politicians in Venezuela once the litigation began…").  If, in the face of Defendants' motion to dismiss, PDVSA simply had intervened, it effectively would have abandoned its purpose in creating the Trust without a court ever deciding the merits of Defendants' challenges to standing. Neither the federal rules nor the constitutional limitations on district court jurisdiction require placing PDVSA in this Catch-22 position.

Under this Court's precedents, the motion to intervene was timely because it was made immediately after this Court affirmed the district court's decision that the assignment to the Trust was invalid.  Nor is there any prejudice to Defendants.  They have had timely notice of the claims against them and no substantive discovery or other proceedings have occurred in the underlying action that would have to be redone as a result of the substitution.  Defendants have been on notice, and, in fact, argued below, that the claims belong to PDVSA, and that PDVSA would still have the claims after dismissal.  The fact that Defendants would now have to defend the claims on the merits is not legally-cognizable prejudice.  Further, there would be clear prejudice to PDVSA if substitution were denied because commencing a new action would expose PDVSA to claims that some or all of the causes of action are now time-barred.

9

PDVSA's motion also was proper under Rule 60(b) because that rule, like Rule 17(a)(3), is to be liberally construed to achieve substantial justice and to avoid procedural dismissal of meritorious claims. While it ultimately was determined that PDVSA was mistaken as to the validity of the assignment, it had a good faith basis for that belief. Finally, PDVSA moved for relief promptly after the Court affirmed the dismissal.

Defendants' remaining arguments to the effect that the PDVSA board of directors in Venezuela, which authorized the filing of the substitution motion, is not recognized by the U.S. government are without merit. PDVSA clearly has standing as the injured party. Disputes over which board can control the litigation do not go to PDVSA's standing. In any event, in accordance with the practice in this Circuit, those arguments should not be reached here. There are substantial ongoing developments in the nature of the relationship between the United States and the Maduro government, including very recent efforts to secure oil from Venezuela to replace blocked Russian oil supplies vital to U.S. national security. Given that Venezuela's oil production is at the center of this case as well as these ongoing diplomatic efforts, the district court should address in the first instance the complex factual and legal issues that may be implicated, which it expressly declined to reach in the decision on appeal.

10

## ARGUMENT

## I.    THE DISTRICT COURT HAD SUBJECT MATTER JURISDICTION TO SUBSTITUTE PDVSA FOR THE TRUST.

### A.    This Case Is Governed by *Delta Coal* and Many Other Appellate Decisions.

The district court held that it lacked subject matter jurisdiction because the assignment to the Trust was invalid and therefore there was no pending case in which PDVSA could intervene.  This conclusion is clearly wrong and is precluded by this Court's decision in *Delta Coal Program v. Libman*, 743 F.2d 852 (11th Cir. 1984). *Delta Coal* was a securities fraud action brought by two individuals and an entity that they had created to represent the interest of a large number of other investors. The district court below found that the entity, Delta, lacked standing and denied plaintiffs' motion to substitute the other individual investors under Fed. R. Civ. P. 17(a).  This Court reversed and ordered substitution be granted.  *Id*. at 852.  In doing so, this Court rejected precisely the argument made by Defendants and adopted by the district court here:

> [B]ecause Delta had no claims that the district court had the power to hear, it should have been dropped from the litigation, leaving no entity for which the individual investors could have been substituted under Rule 17(a)(3).  Appellants add that it would be improper for the district court to attempt to remedy its initial lack of jurisdiction by the substitution of the co-owners, because the lack of subject matter jurisdiction cannot be remedied retroactively by resort to procedural rules.

11

*Id.* at 854. This Court expressly rejected the argument, which is identical to the holding of the court below. *Id*. at 855. It found that Delta had alleged the basic elements of a securities fraud action, namely, that there had been a purchase and sale of securities based on alleged misrepresentations, as a result of which the investors suffered injuries, thereby meeting the minimal test for invoking the court's jurisdiction. *Id*. This Court then held that "[a] plaintiff's suit may, of course, be subject to dismissal if the substantive statute on which he relies affords no right to relief to either him or those he represents. But that is properly an issue for determination on the merits." *Id*. This Court recognized that Delta had "such an identity of interest" with the individual co-owners that their claims "have functionally been before the court since the outset of this litigation." *Id.* at 856.

Thus, this Court concluded:

A district court does not exceed its power when it takes jurisdiction over a controversy, even if not brought by the real party in interest, as long as there exists a substantial identity of interest between the original plaintiff and the true party in interest, and as long as the pleadings set forth the facts upon which the real party would base its invocation of the court's jurisdiction in its own right.

*Id.*[3]  The same is true here.  Like the plaintiff in *Delta Coal*, the Trust had an indisputable identity of interest with PDVSA and was acting in the good faith belief that its assignment from PDVSA entitled it to bring the claims.  Moreover, the dismissal of this case was not affirmed on standing grounds, but on the merits, *i.e.*, that the assignment was champertous.  991 F.3d at 1192-93.

This principle is well-established.  It was previously applied by this Court in *Hess v. Edey*, 689 F. 2d 977 (11th Cir. 1982).  In *Hess*, the wife of a deceased prison inmate brought a § 1983 action for his death but had not been appointed as administrator of his estate.  This rendered her suit a nullity because she lacked standing under Alabama law.  *Id*. at 979.  This Court not only held that Rule 17 allowed her to obtain administrator status after commencement of the action, but also that amending the complaint to bring it as an administrator related back to the

---

[3] Virtually every other district court in the Eleventh Circuit since *Delta Coal* has recognized that it has the power to allow a plaintiff who lacked standing at the outset of the lawsuit to correct a jurisdictional defect.  *See, e.g.*, *MAO-MSO Recovery II, LLC v. Boehringer Ingelheim Pharms., Inc.*, No. 1:17-CV-21996-UU, 2018 WL 4956737, at *3 (S.D. Fla. Jan. 26, 2018) (recognizing that district court had discretion to permit substitution, even when none of the original plaintiffs has standing); *Ocwen Loan Servicing, LLC v. Accredited Home Lenders, Inc.*, No. 6:08-CV-214-ORL-31GJ, 2009 WL 722406, at *5 (M.D. Fla. Mar. 18, 2009) (same; quoting *Delta Coal*); *Unique Sols., LLC v. Murray*, No. CV 106-024, 2007 WL 9701284, at *5 (S.D. Ga. Apr. 18, 2007) (original plaintiff who lacked standing could amend complaint to substitute real party in interest); *GE Mortg. Servs., LLC v. Laws. Title Ins. Corp.*, No. 1:05-CV-03057-MHS, 2006 WL 8432853, at *2 (N.D. Ga. Mar. 31, 2006) (same); *Fraley v. Cincinnati Ins. Co.*, No. 1:05CV006-VPM, 2006 WL 435667, at *1 (M.D. Ala. Feb. 21, 2006) (plaintiffs' lack of standing does not require dismissal when lack of standing was subsequently remedied).

initial filing of the case.  *Id.* at 980-981.  This Court relied not only on Rule 17(a)(3) but also on *Levinson v. Deupree*, 345 U.S. 648 (1953), in which the Supreme Court allowed the same type of amendment.  This Court noted that Rule 17(a)(3) was specifically amended to codify the holding in *Levinson*::

> The Rule provides that when an action is brought by someone other than the real party in interest, the suit need not be dismissed if the real party in interest subsequently joins or ratifies the action.  The Rule further provides that such subsequent joinder or ratification by the real party in interest relates back to the time the suit was first filed.

*Id.* at 981.

Numerous decisions in other circuits follow the same rule.  For example, the Second Circuit did so just last year.  In *Fund Liquidation Holdings LLC v. Bank of Am. Corp. et al.*, 991 F.3d 370, 389 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 757, 211 L. Ed. 2d 475 (2022), the plaintiffs were two investment funds.  *Id.* at 376.  In a second amended complaint, the funds revealed that they had assigned their claims to a third fund prior to inception of the case and the district court granted substitution of the assignee as plaintiff.  *Id.* at 377.  The defendants moved to dismiss, arguing that the case was a nullity because the original plaintiff funds lacked standing at the case's inception, and therefore the district court was powerless to permit substitution.  *Id.* at 378.  The Second Circuit rejected the same logical fallacy on which the district court here relied:

> The real party in interest is the party with the legal title to the claim asserted and is the party with the stake in the controversy that is being used to invoke the court's jurisdiction. Why, then, should jurisdiction to hear the controversy turn on whether the *nominal* plaintiff has standing? That would be nonsensical. . . And since Rule 17(a)(3) is clear that joinder of the real party in interest relates back to the "original[ ] commence[ment]" of the suit, this approach is consistent with the directive that standing must exist at the case's inception.

*Id.* at 389.

The Second Circuit further rejected the "nullity doctrine," which argues "that an action commenced in the name of a plaintiff who lacks Article III standing is rendered an incurable nullity even where a real party in interest both has standing and is willing to join the suit." *Id.* at 387. The court held that the key issue is not the standing of the original plaintiff, but rather "Article III would [] seem to be satisfied so long as the real party in interest is willing to join the case and has had standing since the case's inception." *Id.* at 388.

In *Esposito v. U.S.*, 368 F.3d 1271 (10th Cir. 2004), both the district court and court of appeals held that a deceased person lacked standing to bring an action for his own wrongful death. *Id*. at 1272. The defendant, the United States, argued that as a result, the case was a nullity and the estate's administratrix could not be substituted. *Id.* at 1277. The court held that this the "nullity" theory of jurisdiction was precluded by Rule 17(a) which provides that the substitution of the real party in

15

interest "shall have the *same effect as if* the action had been commenced in the name of the real party in interest." *Id.* at 1278 (emphasis in original).

In *Miller v. Longacre*, 172 F.3d 44, 1999 WL 34977 (4th Cir. 1999), a son brought a suit to quiet title with regard to land that actually was owned by his father at the time the action was commenced. Although the father conveyed title to the son while the case was pending, the district court nonetheless dismissed. *Id*. at *1. The Fourth Circuit reversed, holding that it was "contrary to law" for "the district court implicitly [to] conclude[] that the absence of the real party in interest at commencement of the suit was incurable." *Id.* at *2.

In *Link Aviation, Inc. v. Downs*, 325 F.2d 613 (D.C. Cir. 1963), the court held that:

> though brought in the name of the insureds [rather than the insurer, to which the insureds' claims were wholly subrogated], this suit was not a nullity, since, as we hold, it was brought for the use of the real parties in interest. It was thus not so lacking in validity as to furnish no support for a motion to bring it into compliance with Rule 17(a). Any other rule would be highly technical without meaningful purpose.... 'to hold otherwise would be nothing less than a narrow and ill-grounded construction of the rules of civil procedure not in harmony with their intent and purpose.'

*Id*. at 615 (quoting *American Fid. & Cas. Co v. All American Bus Lines*, 190 F.2d 234, 237 (10th Cir.)).

16

**B.**    **The District Court Misread *Delta Coal* and Multiple Other Cases.**

The district court below distinguished *Delta Coal* on the basis that "in the underlying [*Delta*] district court case, the court still had subject matter jurisdiction over the action as other original plaintiffs remained and the court retained pending jurisdiction over Delta state claims."  Dkt. No. 755 at 3.  However, this Court did not rely on (or even mention) these facts to support its holding in *Delta Coal*.  *See generally Delta Coal Program*, 743 F.2d. 852.  Rather, this Court upheld jurisdiction because of the "identity of interest" between Delta and the individual investors and because Delta's complaint had alleged all the relevant facts applicable to the investors' claims—just as the Trust did here.  *Id.* at 856.

In *Cifuentes v. Regions Bank*, No. 11-23455, 2012 WL 2339317, at *6 (S.D. Fla. June 19, 2012), the court considered and rejected the interpretation of *Delta Coal* that the district court adopted in this case, *i.e.*, that substitution is permitted only when "at least one original plaintiff already had standing to bring the action and therefore to ask for a substitution." *Id*. at *6.  There, the court permitted substitution of the original plaintiff's surviving spouse and daughters when it was determined that they, and not the original plaintiff, had inherited the claims under Colombian law.  *Id.* at *4.  Significantly, because the original plaintiff had not inherited the claim, the court recognized that no original plaintiff had Article III standing.  *Id.* at

17

*7. However, applying *Delta Coal*, the court held that substitution was proper because "an identity of interests" existed between the original plaintiff and the real parties in interest. *Id.*

The court found that an identity of interests existed between the original plaintiff and the real parties in interest because "both the original and amended complaints are attempts to advance the rights of the same decedent; the only difference stems from the identification of who actually inherited the power to assert the power to assert those rights under Columbian law." *Id.* The same is true in this case. There is no question that the Trust and PDVSA seek to advance the same interest: the recovery of Defendants' ill-gotten gains on behalf of the people of Venezuela. The sole reason the Trust, rather than PDVSA, brought the case was due to an assignment that was subsequently found to be invalid under New York law.

The reliance of the district court here on *Live Entertainment, Inc. v. Digex, Inc.*, 300 F. Supp. 2d 1273 (S.D. Fla. 2003), is misplaced because that case is clearly distinguishable on its facts. There, Live Entertainment brought a claim based on an assignment it thought it had from an entity called Maverick. *Id.* at 1274. The court held not only that the assignment was invalid, but that Live Entertainment knew as much before it brought the case because a state court had previously invalidated the assignment. *Id.* at 1277. Further, the *Live Entertainment* court noted that the

18

substitution motion was made not by Maverick as real party in interest, but by Live Entertainment, which the court said, "has no standing to bring this action and no standing to make a motion." *Id*. at 1279.

The district court here interpreted *Live Entertainment* as having announced a bright-line rule that where the original plaintiff lacked standing, the case is a nullity in which a court may take no further action. But the proper interpretation is that substitution is precluded where the plaintiff "lacked standing **and** the lack of standing was not an honest mistake." *See MAO-MSO Recovery II, LLC v. Boehringer Ingelheim Pharms., Inc.*, No. 1:17-CV-21996-UU, 2018 WL 4956737, at *3 (S.D. Fla. Jan. 26, 2018) (emphasis added).

The district court's reading of *Live Entertainment*, suggesting that Rule 17(a) cannot be invoked when the original party lacks standing, is flatly inconsistent with *Delta Coal* and would eviscerate the purposes of the rule. In virtually every case, where a party moves to be substituted as the real party in interest, the original plaintiff lacks standing either because of lack of capacity, improper assignment, or a simple misunderstanding as to which party held the claim. If, in all if those cases, the court lacked jurisdiction to substitute the party actually holding the claim, Rule 17(a) would be a dead letter.

19

The district court's mistaken reading of *Live Entertainment* is amply demonstrated in *In re DeMasi*, a case almost directly on point.[4]  *Kondapalli v. DeMasi* (*In re DeMasi*), No. 8:13-AP-00890-MGW, 2014 WL 4071664 (Bankr. M.D. Fla. Aug. 18, 2014).  There, the debtor-plaintiff was found to lack standing to bring his state-law fraud claim, because the claim which had been assigned to him by two entities of which he was a member was found to be nonassignable under state law.  *Id.* at *2.  Following dismissal of the case, the debtor-plaintiff sought to substitute the assigning entities as the real parties in interest.  *Id.* at *1.  The defendant, relying on *Live Entertainment*, argued against substitution on the theory that the original plaintiff's lack of standing meant that the court never had jurisdiction over the case.  *Id.* at *3.  However, the court distinguished *Live Entertainment*, finding that, because the debtor-plaintiff had a "substantial identity of interests" with the assigning entities, the case was governed by *Delta Coal*, and therefore "subject matter jurisdiction existed even where the original party lacked standing."  *Id.*  The court found that a substantial identity of interests existed because "a member was trying to bring a claim that belonged to a limited liability company."  *Id.* at *4.  The same is true in this case.  The Trust tried to bring a claim that was

---

[4] Appellant cited and discussed *In re DeMasi* in the reply brief below, but the district court did not address or distinguish it.

found to belong to PDVSA as a matter of state law.  However, the Trust, if it had been permitted to, would have ultimately brought the case on behalf of PDVSA and for the same purpose.

The district court also mistakenly relied upon *Crowley Maritime Corp. v. Robertson Forwarding Co., Inc.*, No. 20-20151, 2020 WL 4366079 (S.D. Fla. July 30, 2020).  That case also is distinguishable on its facts because, despite the passage of extensive time and an express court order directing the plaintiff to show cause why it should not be dismissed, the real party in interest did not seek intervention. Further, the court noted that determining the real party in interest "was not difficult" since those parties were the subsidiaries of the plaintiff and "their identities are spelled on the face of the underlying documents." *Id.* at *4.  Here, in contrast, the Trust had a good faith basis to believe that the assignment was valid and acted properly in vigorously defending the assignment.  To the extent that *Crowley* endorses the reasoning of *Live Entertainment*, that reasoning should be rejected as inconsistent with *Delta Coal*.

The district court here also cited to *Summit Office Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278, 1282 (5th Cir. 1981) for the proposition that substitution would be improper because "there was no proper party available to amend the complaint."  Dkt. 755 at 4.  In *Summit Office Park*, the plaintiffs moved for

21

substitution after when a change in the substantive law meant that they could no longer assert their cause of action. *Id.* at 1280-81. Although the court in *Summit Office Park* stated that a party which lacked standing could not substitute the real party in interest, the *Delta Coal* court explicitly limited *Summit Office Park* to "instances where a plaintiff who lacks standing to assert a claim attempts to substitute 'new plaintiffs, a new class, and a *new cause of action*.'" *Delta Coal*, 743 F.2d at 856, n. 6 (emphasis in original); *see also Cifuentes*, 2012 WL 2339317 at *6.

This case is plainly analogous to *Delta Coal* and not to *Summit Office Park*. PDVSA seeks substitution in order to bring the same causes of action under the same statutes as in the original complaint. The only change is the identity of the plaintiff. The Trust indisputably had an "identity of interest" with PDVSA. Of particular significance, and in contrast to other cases, Defendants themselves, as well as the district court have recognized—since the inception of the case—that PDVSA is the real party in interest and Defendants assured this Court that PDVSA's claims would survive even if the Trust's claims were dismissed. Dkt. Nos. 155 at 4; 684 at 2.[5]

---

[5] As discussed below, Defendants argued in the district court that the PDVSA Board which authorized filing the Rule 17 motion is not recognized by the United States. This argument is irrelevant because there is no question that PDVSA has standing to bring this case, whatever may be the identity of the Board that manages the company. The question of which Board is the properly recognized Board does not affect PDVSA's standing as the injured party entitled to seek relief. In any event, there is no dispute that the Maduro government, and by extension the Board that it appointed, was recognized by the United States at the time that this case was filed. *PDVSA*

## II.    PDVSA MEETS THE REQUIREMENTS OF RULE 17(a)(3) FOR SUBSTITUTION AND RELATION BACK.

### A.    Rule 17(a)(3) allows for substitution of the real party in interest and provides that its claims relate back to the initial filing of the complaint.

Rule 17(a)(3) provides that:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

The Advisory Committee Notes to this provision state that it was "added simply in the interest of justice" and "is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake is made." Fed. R. Civ. P. 17(a)(3) Advisory Committee Notes.

Eleventh Circuit case law makes clear that a motion to substitute the real party in interest pursuant to Rule 17(a)(3) and for the claims of the real party in interest to relate back to the commencement of the action should be granted when (1) there is an understandable mistake that has been made in the determination of the proper party or where the determination is difficult; (2) where the change is merely formal and does not materially alter the known facts or issues; (3) where the original

---

*US Litigation Trust v. Lukoil Pan Americas, LLC, et al.*, No. 19-10950, Brief for Plaintiff-Appellant at 41, n. 18 (May 6, 2019).

plaintiff was not a fictitious entity; and (4) if done on a timely basis. *4432 Individual Tobacco Plaintiffs v. Various Tobacco Companies et al.* (*In re Engle Cases*), 767 F.3d 1082, 1109, n. 31 (11th Cir. 2014).

How Rule 17(a)(3) should be applied is illustrated in *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11 (2d Cir. 1997). In that securities fraud action, certain shareholders assigned their fraud claims to a corporation, AMI. *Id.* at 14. The district court dismissed the claims because it found that the assignment was ineffective and refused to allow substitution of the shareholders themselves as the real party in interest. *Id.* at 15. Although the motion for substitution was made prior to dismissal, the district court nonetheless dismissed and did not allow amendment because AMI would not concede the assignments were not valid. *Id.* The district court also held that the claims were time-barred and any amendment did not relate back because the assignment was, according to the district court "tactical rather than due to a mistake." *Id.* The court of appeals reversed noting that, although the original plaintiff lacked standing, under Rule 17(a) and Rule 15(c), the shareholders should have been allowed to be substituted and their claims should relate back to the filing of the original action. *Id.* at 19-21. The court of appeals noted that Rule 17(a) substitution should be liberally allowed:

> when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or participants.

24

We see no good reason why Rule 17(a) should not have been applied here to allow the amendment proposed by AMI. The claims of the selling shareholders are sufficiently asserted in the original complaint, . . . [t]he complaint's only pertinent flaw was the identity of the party pursuing those claims, and the complaint submitted to the court with AMI's motion was, except for naming the selling shareholders as the plaintiffs on their own claims, virtually identical to the original complaint.

*Id.* at 20. The court also rejected the argument that substitution of the real party in interest should be denied because it was "tactical:"

The attempted assignment was a tactic meant to allow AMI to sue as assignee of the selling shareholders; but assignments are not impermissible. There plainly was a mistake as to the legal effectiveness of the documents to permit AMI to sue as assignee. However, the court did not refer to any evidence suggesting that the mistake itself was deliberate or tactical, and we have been pointed to no evidence that would indicate that the attempted assignments were undertaken in bad faith or in an attempt to deceive or prejudice the defendants.

Nor do we see any unfairness to defendants in allowing substitution of the selling shareholders as plaintiffs on their respective claims. The original complaint plainly gave defendants the particulars of the selling shareholders' claims, and the attempt to substitute the selling shareholders was made within a reasonable time.

. . . .

If, as alleged, however, defendants violated the pertinent securities laws and thereby caused the selling shareholders to lose thousands of dollars, it would be unjust to allow defendants to foreclose pursuit of those claims by taking advantage of that otherwise inconsequential error.

106 F.3d at 20-21.

25

Similarly here, denying substitution would give Defendants a windfall by denying PDVSA recovery of the billions of dollars lost here simply because the court found that the assignment, which was not undertaken in bad faith or to deceive Defendants, was ineffective.

Any delay that was entailed by the fact that PDVSA did not move to intervene until the dismissal was affirmed on appeal did not prejudice Defendants and resulted from the Trust enforcing what it believed in good faith to be a valid assignment.

The court in *Cifuentes* found that the original plaintiff had made an understandable mistake (and therefore was eligible for substitution under Rule 17(a)), because "an identification of the correct Plaintiffs under Columbian intestacy law was difficult to make." *Cifuentes*, 2012 WL 2338317 at *8. As the closely-contested litigation in this case demonstrates, so too was ascertaining the validity of the Trust a close call under New York law.

A similar result was achieved in *In re Adelphia Communications Corporation Securities and Derivative Litigation*, No. 03 MDL 1529, 2009 WL 1490599 (S.D.N.Y. May 21, 2009). In that case, an investment advisor had brought claims on behalf of his clients for securities fraud. *Id.* at *1. The district court denied a motion to dismiss for lack of standing, but the court appeals reversed, and, on remand, the district court dismissed the case. *Id.* The advisor and his clients then

moved pursuant to Rule 60(b) to reopen the action and allow substitution of the actual clients under Rule 17(a).  *Id.*  Defendants argued that the advisor had waited too long to seek substitution.  *Id.*  The court rejected this argument noting that, while Rule 17(a) provides for a reasonable period of time to substitute the proper party, "[i]t cannot be extrapolated from this [] that a party faced with a Rule 17(a) objection in a motion must forthwith seek ratification, joinder or substitution at that party's peril, even if the party takes a different view of the validity of the objection; such a party is surely acting reasonably if it awaits the court's decision on the motion."  *Id.* at *3.  The court found that plaintiffs had acted within a reasonable time because they moved quickly after the court of appeals found that the advisor lacked standing to pursue the claims: "[w]hen the Court of Appeals reversed, Huff acted promptly and within a reasonable time to seek relief as it might have originally done had this Court not erred.  To deny Huff relief now would be punishing it for the court's error." *Id.* at *5.

In *Cummings v. United States*, 704 F.2d 437 (9th Cir. 1983), the court allowed the insurer to file a complaint in intervention as late as the end of the discovery period.  *Id.* at 439.  The insurer alleged that it had been subrogated to much of the claims that had already been made by the insured.  *Id.*  The court held that it was proper to allow the intervention, citing Rule 17(a), and that the insurer's claim

should relate back to the filing of the insured's claim. *Id.* at 440. The court further noted that the district court abused its discretion in finding that the intervention was untimely because the insurer's claim alleged many of the same operative facts as the insured and the government was already on notice of the claims. *Id.* at 441. "Although the district court's order mentions the fact that the close of the discovery period was near, it does not contain a finding that the government would be prejudiced or that discovery would have to be extended, and the papers submitted by the parties below also did not address the issue of prejudice." *Id.* Further, the court found that allowing the intervention would not cause any undue delay in the prosecution of the action. *Id.*

In *O'Hara v. District No. 1-PCD et al.*, 56 F.3d 1514 (D.C. Cir. 1995), the court held that it was proper to allow a substitution of the proper parties as late as the appeal. *Id.* at 1519. The court, applying Rule 17(a), held that the substitution of the real parties in interest after the notice of appeal was filed "cured any defect that previously may have existed in the notice of appeal" and treated "the four appellant unions as though they were defendants from the outset of the case." *Id.*; *see also Magallon v. Livingston*, 453 F.3d 268, 273 (5th Cir. 2006) (finding that Consul General of Mexico lacked standing to bring suit on behalf of Mexican national, but trial court should have granted leave for Rule 17 substitution or ratification);

28

*Esposito v. United States*, 368 F.3d 1271, 1276 (10th Cir. 2004) ("courts should allow joinder of the real party in interest where failure to name the proper party was not the result of some tactic designed to prejudice defendant" and where "there has been no tangible showing that defendant was prejudiced by the joinder"); *Rideau v. Keller Independent School District*, 819 F.3d 155, 165-67 (5th Cir. 2016) (holding that trust was allowed to intervene as real party in interest in the place of the parents who brought an action for injury to their disabled child and that "[r]ule 17(a)(3) ratification does not depend on the absence of any mistake; rather, ratification is proper when the mistake is understandable….A good faith, nonfrivolous mistake of law triggers Rule 17(a)(3) ratification, joinder or substitution."); *Marks Law Offices, LLC v. Mireskandari*, 704 F. App'x at 171, 175 (3d Cir. 2017) (applying Rule 17(a) to allow substitution where error was not the result of the plaintiff's attorney "deliberately acting in bad faith."); *Wieburg v. GTE Southwest, Inc.*, 272 F.3d 302, 308 (5th Cir. 2001) (holding that it was an abuse of discretion for the district court to dismiss a case because the claim was brought by the bankrupt debtor, who lacked standing, rather than the trustee; Rule 17(a) should be liberally construed to allow the real party in interest to pursue the case).

29

**B.    PDVSA Met the Conditions for Application of Rule 17(a)(3).**

Here, proper application of the test under Rule 17(a)(3) requires granting PDVSA's motion.

First, both PDVSA and the Trust had a reasonable relief that the Trust assignment was valid and therefore the Trust had standing.  The Trust clearly had a colorable basis for asserting the validity of the Trust and acted in good faith in defending the validity of the assignment.

Second, the substitution of parties is merely formal and would not in any way alter the known facts or issues.  PDVSA makes virtually the same allegations as the Trust and the case is not materially altered in any way.  Both Defendants and the court below acknowledged that PDVSA owned the very claims asserted by the Trust (Dkt. Nos. 155 at 4; 684 at 2) and Defendants assured this Court that PDVSA would still have the claims once the Trust was dismissed.  *See* page 6, *supra*.

Third, the case was not brought by a John Doe or any kind of fictitious entity. It was brought in the name of the Trust, which indisputably was created to prosecute the action and to protect the interests of PDVSA and the people of Venezuela.

Fourth, the substitution motion was made within two months after this Court made a final determination that the assignment was invalid.  Clearly that is a

30

reasonable time because PDVSA was entitled to await such a final determination on the validity of the Trust before it took prompt action.

The district court found the motion untimely "given PDVSA's years long knowledge that standing was an issue in this case." Dkt. No. 755 at 4 (citing *Crowley*, 2020 WL 4366079 at *4) (internal citation omitted). Although PDVSA was aware of Defendants' attack on the Trust's validity, as the court in *Adelphia* held, it cannot be that a party acts at its peril when it undertakes a good faith defense against a standing challenge and awaits a final determination of that issue. Under the district court's logic, the Trust should have immediately abandoned its position based simply on the fact that the Defendants challenged its standing. The Trust vigorously defended the assignment and, in fact, the primary ground on which the district court found the assignment invalid was questioned by this Court in its decision on appeal. *PDVSA Litig. Trust*, 991 F.3d at 1191. It was not improper for the Trust to vigorously defend its position so long as PDVSA moved with alacrity after that position ultimately was rejected. Indeed, that very argument was effectively accepted by this Court in *Delta Coal*. *See Delta Coal Program v. Libman*, 554 F. Supp. 684, 690 (N.D. Ga. 1982) ("timeliness in cases such as this, where there is a genuine dispute concerning the right of the initial party to maintain the suit, is

31

reckoned from the date of the court determination of a challenge to the interest of that party."), *aff'd* 743 F.2d 852 (11th Cir. 1984).

This case is nothing like *Crowley*, which was relied upon by the district court, where the court found that the lack of standing of the original plaintiff was clear and no attempt was made to substitute the real party in interest and where the plaintiff apparently ignored the court's direct order to address the question of plaintiff's standing. *Crowley*, 2020 WL 4366079 at *2, 4.

It is also significant that the substitution here would cause absolutely no prejudice to Defendants. As this Court has previously explained in the context of Rule 24, "absolute measures of timeliness, such as how far the litigation has progressed when intervention is sought and the amount of time that may have elapsed since the institution of the action are not to be relied upon" when determining whether to permit a party to join the lawsuit. *Meek v. Metropolitan Dade County Florida*, 985 F.2d 1471, 1479 (11th Cir. 1993). Rather, "[p]rejudice . . . is the essence of the timeliness inquiry." *Id.*

There have been no proceedings with regard to the merits of the case, there has been no merits discovery, and all the proceedings to date have involved the Defendants' challenge to the validity of the Trust assignment. Defendants were on notice of the nature and substance of the claims from the very beginning and the

32

complaint that PDVSA wishes to interpose is virtually identical to the complaint made by the Trust.

## III.    THE DISTRICT COURT HAD JURISDICTION UNDER RULE 60(b) TO ALLOW POST-JUDGEMENT RELIEF.

Federal Rule of Civil Procedure 60(b) provides that: "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . . (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1). Relief is available under Rule 60(b)(1) for mistakes of law or its application. *Chambers v. Florida Parole Comm'n*, 257 F. App'x 258, 259 (11th Cir. 2007). The "mistake" provision in Rule 60(b)(1) is available where: (1) a party has made an excusable litigation mistake or an attorney in the litigation has acted without authority from a party, or (2) where the judge has made a substantive mistake of law or fact in the final judgment or order. 7 Moore, Federal Practice and Procedure § 60.22, pgs. 60-175-179. The term "mistake" has been held to encompass "[a]n error, misconception, or misunderstanding; an erroneous belief." *Curtis v. United States*, 61 Fed. Cl. 511 (Ct. Fed. Cl. 2004) (quoting Black's Law Dictionary, 1017 (7th ed. 1999). Rule 60(b) is a remedial provision that is intended to be "liberally construed for the purpose of doing substantial justice." *Patton v. Sec'y of Health & Hum. Servs.*, 25 F.3d 1021, 1030 (Fed. Cir. 1994).

33

Here, Plaintiff operated under the good faith, but mistaken belief, that the Trust had standing to bring this action. As the Rule 17(a) cases cited above demonstrate, errors with regard to the real party in interest are routinely excused by the court if no prejudice results to the defendants. Multiple courts have granted parties relief under Rule 60(b) for the purpose of substituting the real party in interest for a party that has been found to lack standing or not be the real party in interest. As noted above, the court in *Adelphia*, after finding that Huff's client should be substituted for Huff, granted relief under Rule 60(b) from its prior dismissal and allowed the substitution. *Adelphia*, 2009 WL 1490599 at *5.

In *Curtis*, 61 Fed. Cl. 511, the plaintiff brought a claim in his own name rather than in the name of the corporation that was the party to a contract with the government. The court dismissed for lack of standing. The individual plaintiff then brought a Rule 60(b) motion arguing that the corporation was insolvent and, under the applicable state law, he was entitled to bring the case in his own name. The court found justifiable mistake under Rule 60(b) and reopened the case notwithstanding its previous dismissal for lack of standing. Said the court: "[b]ecause the 'substantial rights' of plaintiff had been harmed by the entry of judgment before a full determination of the proper party in interest in this case and because a decision under merits is favored over technical dismissal." (internal quotations and citations

34

omitted); *see also Lustig v. Blakesley* (*In re Blakesley*), Adv. Pro. No. 19-20566, 2021 WL 5985327, at *4 (Bankr. W.D.N.Y. Dec. 16, 2021) (granting motion under 60(b)(1) and noting that "[t]here is much more reason for liberality in reopening a judgment when the merits of the case never have been considered.").

This case law makes clear that dismissal of an action because of the absence of the real party interest does not divest the court of subject matter jurisdiction to grant a motion under Rule 60(b) to allow for substitution of the real party in interest.

Should the Court find that Rule 60(b)(1) is unavailable, Rule 60(b)(6)'s catchall provision permits relief "for any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b)(6). This provision is reserved for extraordinary circumstances and requires a justification so compelling that the court must vacate its order. *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 741 F.3d 1349, 1355 (11th Cir. 2014).

The circumstances presented in the instant appeal are extraordinary in that a multi-billion dollar claim will be lost merely because the assignment was found to be invalid, where Defendants have been on notice, since the case's inception, of the full nature and basis for the claims and there has never been an adjudication on the merits.

35

**IV.** **THIS COURT SHOULD NOT REACH THE FACT-INTENSIVE ARGUMENTS NOT TAKEN UP BY THE DISTRICT COURT; IT SHOULD REMAND FOR FURTHER CONSIDERATION.**

At the conclusion of its opinion, the district court wrote: "[i]n light of the Court's findings, it need not address the parties remaining arguments." Dkt. No. 755 at 5. If this Court agrees with Plaintiffs' position that the district court erred in denying substitution, we respectfully request that it should remand the action for further findings of fact and determination of the remaining legal arguments. "'[T]he general rule [is] that a court of appeals will not consider issues not reached by the district court, especially where the issues involve questions of fact.'" *Carolina Cas. Ins. Co. v. Red Coats Inc.*, 624 F. App'x 992, 995 (11th Cir. 2015) (citing *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1372 n. 5 (11th Cir. 1998)); *Guevara v. Republic of Peru*, 468 F.3d 1289, 1306 (11th Cir. 2006); *see also Degamo v. Bank of Am., NA*, 849 F. App'x 620, 623 (9th Cir. 2021) (remanding a motion to intervene for further consideration because "resolving these issues will involve making factual findings and could potentially involve taking evidence, which the district court is in the best position to do.").

The arguments not reached here involve factual and legal issues best suited to determination by the district court in the first instance. At base, Defendants ask the court to determine who may properly represent the interests of PDVSA in light of

36

the complex and ever-changing political situation within Venezuela, and the similarly unsettled and changing position of the United States Government with respect to its treatment of the multiple contenders for power in Venezuela. As briefly outlined by PDVSA below, "this motion is being made by the current governing body of PDVSA that is undisputedly the *de facto* governing body of PDVSA, is in control of PDVSA assets, in Venezuela, and is recognized as such by the *de facto* government of Venezuela." Dkt. No. 732 at 5-6. "Counsel for PDVSA has asked U.S. counsel for both the purported Guaidó government and the Guaidó-controlled Ad Hoc Board of Directors," who Defendants contend are the 'real' PDVSA, "if they would support PDVSA's motion to intervene in this action," as there "can be no doubt that the interests of those entities must align with those underlying this action." Dkt. No. 738 at 3. Given the complexity and continuing changes in the situation in Venezuela and in the approach of the U.S. Government to those circumstances, it is most appropriate for the district court to consider these matters in the first instance.

Among other recent developments demonstrating the dynamic fluctuations in the Venezuelan political and economic situation and the U.S. Government's policies in dealing with it, senior U.S. Government officials recently began meeting with the Maduro regime to try to reach an accommodation that would allow resumption of

Venezuelan oil exports to replace Russian production blocked by the sanction resulting from the Ukraine invasion.[6] It may well be appropriate for this Court or the district court to allow the United States an opportunity to present its current views on these matters and related questions such as the control of PDVSA and its enormous petroleum assets by its board of directors located in Venezuela.

Should this Court reach this issue, it should allow the action to proceed. Whichever board of PDVSA is recognized as the appropriate board, there is no question that PDVSA itself is in control of the PDVSA assets in Venezuela and its rights should be promptly prosecuted. Rather than allowing all Defendants to escape liability for their actions by exploiting political divisions, allowing intervention

---

[6] John Hudson and Samantha Schmidt, *U.S. officials make rare trip to Venezuela, discuss resuming oil important to help replace Russian fuel,* WASHINGTON POST, March 6, 2022, available at: https://www.washingtonpost.com/world/2022/03/06/venezuela-american-officials-visit/ ("A group of senior U.S. officials" including "U.S. delegation included Roger Carstens, the special presidential envoy for hostage affairs; Juan Gonzalez, the National Security Council's senior director for Western Hemisphere affairs; and Jimmy Story, the U.S. ambassador to Venezuela" "flew to Venezuela on Saturday for a meeting with President Nicolás Maduro's government to discuss the possibility of easing sanctions on Venezuelan oil exports"); U.S Department of State Daily Press Briefing, March 10, 2022 2:30 pm, available at https://www.youtube.com/watch?v=cqEJqaaxYlE starting at 1:44:10 (State Department Spokesperson Ned Price praised the Maduro government's stated intention to return to the negotiating table, and said that the U.S. "supports the Unitary Platform's goal of immediately resuming negotiations with the Maduro regime to restore free and fair elections, democratic institutions, and the rule of law, as well as for respect for human rights in Venezuela."); Joseph Choi, *Sullivan: Sanctions relief in Venezuela must be 'tied to concrete steps*,' THE HILL, March 13, 2022, available at: https://thehill.com/policy/international/598022-sullivan-sanctions-relief-in-venezuela-must-be-tied-to-concrete-steps/?rl=1 (quoting an interview with White House National Security Adviser Jake Sullivan, in which he states: "Any sanctions relief that we provide, as was true in the last administration and is true in this administration, has to be tied to concrete steps that Maduro and the people around him take.").

would preserve the claims asserted in the Complaint against possible expiration of

the statute of limitations, and the Court can order that any recovery be held in escrow,

pending clarification of what government and institutions in Venezuela at the time

of judgment should receive them—which is clearly a determination committed to

the political branches that conduct the foreign policy of the United States. Allowing

PDVSA to prosecute the claims will ensure that the recovery is used for the benefit

of the Venezuelan people.

## CONCLUSION

For all the foregoing reasons, Plaintiff-Appellant and Movant-Appellant

respectfully request that the decision below be reversed and the action remanded to

the district court.

Respectfully submitted,

Dated: May 11, 2022                    By:  */s/ Marshall Dore Louis*
                                       Marshall Dore Louis (Bar No. 512680)
                                       Boies Schiller Flexner LLP
                                       Miami Center
                                       100 Southeast 2nd St., Suite 2800
                                       Miami, FL 33131
                                       Tel:  (305) 539-8400
                                       Fax: (305) 539-1307

                                       David Boies
                                       Brooke Alexander
                                       Boies Schiller Flexner LLP
                                       333 Main Street
                                       Armonk, New York 10504

Tel:  (914) 749-8200
Fax:  (914) 749-8300

George F. Carpinello
Joseph Starsia
Jenna Smith
Boies Schiller Flexner LLP
30 S. Pearl Street, 11th Floor
Albany, New York 12207
Tel:  (518) 434-0600
Fax:  (518) 434-0665

David A. Barrett
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY 10001
Tel:  (212) 446-2300
Fax: (212) 446-2350

***Attorneys for Plaintiff and Movant Appellants***

40

## <u>CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(G)(1)</u>

1. This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(i) and Fed. R. App. P. 29(d) because it contains 9,654 words, excluding the parts of the brief exempted by 11th Cir. R. 32-4, as calculated by the word-counting feature of Microsoft Office 2010.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: May 11, 2022                    /s/ *Marshall Dore Louis*

41

## **CERTIFICATE OF SERVICE**

I, Marshall Dore Louis, do hereby certify that I have filed the foregoing Brief electronically with the Court's CM/ECF system with a resulting electronic notice to all counsel of record on May 11, 2022.

/s/ *Marshall Dore Louis*