No. 22-10675

# United States Court of Appeals
### for the
# Eleventh Circuit

PDVSA US LITIGATION TRUST,
*Plaintiff-Appellant,*

PETROLEOS DE VENEZUELA, S.A.,
*Movant-Appellant,*

– v. –

LUKOIL PAN AMERICAS, LLC, LUKOIL PETROLEUM, LTD.,
COLONIAL OIL INDUSTRIES, INC., COLONIAL GROUP, INC.,
GLENCORE, LTD., *et al.,*
*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
HONORABLE DARRIN P. GAYLES, U.S. DISTRICT JUDGE

# BRIEF OF APPELLEES

EDWARD M. MULLINS
DANIEL ALVAREZ SOX
CHRISTINA OLIVOS
REED SMITH LLP
200 S. Biscayne Blvd., Ste. 2600
Miami, FL 33131
 (786) 747-0200

*Attorneys for Defendants-
Appellees Trafigura Trading,
LLC and Jose Larocca*

WILLIAM A. BURCK
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
1300 I Street, N.W., Suite 900
Washington, DC 20005
(202) 538-8000

BRUCE BIRENBOIM
BRAD S. KARP
JESSICA S. CAREY
KRISTINA A. BUNTING
MELINA MENEGUIN LAYERENZA
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

– and –

ROBERT C. JOSEFSBERG
STEPHEN F. ROSENTHAL
PODHURST ORSECK, P.A.
One Southeast Third Avenue
Suite 2300
Miami, FL 33131
(305) 358-2800

*Attorneys for Defendants-
Appellees Glencore Ltd., Glencore
Energy UK Ltd., Gustavo
Gabaldon, Luis Alvarez, and
Sergio de la Vega*

MARK J. MCDOUGALL
LIDE E. PATERNO
AKIN GUMP STRAUSS
HAUER & FELD, LLP
2001 K Street, N.W.
Washington, DC 20006
(202) 887-4000

*Attorneys for Defendants-
Appellees Leonardo Baquero
and Francisco Morillo*

ALEX M. GONZALEZ
ISRAEL J. ENCINOSA
BRIAN BRIZ
CHRISTOPHER N. BELLOWS
HOLLAND & KNIGHT LLP
701 Brickell Avenue, Suite 3300
Miami, FL 33131
(305) 374-8500

*Attorneys for Defendants-
Appellees Helsinge, Inc., Helsinge
Ltd., Helsinge Holdings, LLC,
Daniel Lutz, Luis Liendo, and
Maria Fernanda Rodriguez*

ADAM L. HUDES
STEPHEN M. MEDLOCK
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
(202) 263-3312

– and –

MICHAEL P. LENNON, JR.
MAYER BROWN LLP
700 Louisiana Street, Suite 3400
Houston, TX 77002
(713) 238-3000

– and –

JORGE D. GUTTMAN
LAUREN V. PURDY
GUNSTER
600 Brickell Avenue, Suite 3500
Miami, FL 33131
(305) 376-6054
*Attorneys for Defendant-Appellee
LUKOIL Pan Americas LLC*

DAVID M. BURKOFF
ALLAN C. GALIS
HUNTER, MACLEAN, EXLEY
& DUNN, P.C.
200 East Saint Julian Street
P.O. Box 9848
Savannah, GA 31412
(912) 236-0261

*Attorneys for Defendants-*
*Appellees Colonial Group, Inc.,*
*Colonial Oil Industries, Inc., and*
*Paul Rosado*

GERALD E. GREENBERG
ADAM M. SCHACHTER
FREDDY FUNES
GELBER SCHACHTER
& GREENBERG, P.A.
1221 Brickell Avenue, Suite 2010
Miami, FL 33131
(305) 728-0950

*Attorneys for Defendants-*
*Appellees Vitol Inc., Vitol Energy*
*(Bermuda) Ltd., and Antonio*
*Maarraoui*

ETAN MARK
LARA O'DONNELL GRILLO
MARK MIGDAL & HAYDEN
80 Southwest Eighth Street
Suite 1999
Miami, FL 33130
(305) 374-0440

*Attorneys for Defendant-Appellee*
*John Ryan*

LUIS KONSKI
ANA TOVAR
FOWLER WHITE BURNETT P.A.
1395 Brickell Avenue, 14th Floor
Miami, FL 33131
(305) 479-9273

*Attorneys for Defendant-Appellee*
*BAC Florida Bank*

NEAL S. MANNE
ALEXANDER L. KAPLAN
WESTON O'BLACK
MICHAEL C. KELSO
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite
5100
Houston, TX 77002
(713) 651-9366

– and –

MICHAEL GERVAIS
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite
1400
Los Angeles, CA 90067
(310) 789-3100

*Attorneys for Defendants-*
*Appellees Vitol Inc., Vitol Energy*
*(Bermuda) Ltd. and Antonio*
*Maarraoui*

SPENCER H. SILVERGLATE
CLARKE SILVERGLATE, PA
799 Brickell Plaza, Suite 900
Miami, FL 33131
(305) 377-0700

– and –

STEPHEN H. LEE
PORTER HEDGES LLP
1000 Main Street, 36th Floor
Houston, TX 77002
(713) 226-6686

*Attorneys for Defendant-Appellee*
*Maximiliano Poveda*

**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Eleventh Circuit Rule 26.1-1, Counsel for Appellees-Appellees hereby certify that the following persons have or may have an interest in the outcome of this case or appeal:

Akin Gump Strauss Hauer & Feld LLP
Algamex Limited
Alvarez, Luis
Andrews, Vincent
BAC Florida Bank
Baquero, Leonardo
Barrett, David A.
Birenboim, Bruce
Blue Bank International N.V.
Boies Schiller Flexner LLP
Boies, Alexander
Boies, David
Breur, George Thomas
Briz, Brian A.
Brockman, Ellen
Bunting, Kristina A.
Burck, William A.
Burkoff, David M.
Canamero, Rebecca Jo
Cardenas, Maria Cristina
Carey, Jessica S.
Carlton Fields, P.A.
Carpinello, George F.
Clarke Silverglate, P.A.
Colonial Group, Inc.
Colonial Oil Industries, Inc.
De la Vega, Sergio
Duker, William F.
Duker, William West
EFG International A.G.
Encinosa, Israel Jovanny

Espinosa, Mikayla Kiersten

Fowler White Burnett P.A.

Gabaldon, Gustavo

Galis, Allan C.

Ganwer, Jason E.

Gayles, Darrin P., District Court Judge

Gelber Schachter & Greenberg, P.A.

Gervais, Michael

Glass, Ethan

Glencore de Venezuela, C.A.

Glencore International

Glencore Ltd

Glencore plc

Godelheim, Inc.

Gonzalez, Alex M.

Gravante Jr., Nicholas A.

Greenberg, Gerald Edward

Grillo, Lara O'Donnell

Gruhn, Clifton Richard

Gunster, Yoakley & Stewart, P.A.

Guttman, Jorge David

Hauss, Stephen

Hayden, Donald John

Helsinge Holdings, LLC

Helsinge, Inc.

Holland & Knight LLP

Hornberg Inc.

Hudes, Adam L.

Hunter, Maclean, Exley & Dunn, P.C.

Jehu Holdings, Inc.

Jorden Burt LLP

Josefsberg, Robert C.

Kaplan, Alexander L.

Karp, Brad S.

Kelso, Michael

Konski, Luis S.

Kully, David

Kunstler, Marilyn

Larocca, Jose
Lee, Stephen H.
Lennon Jr., Michael P.
Liendo, Luis
LITASCO, S.A.
Lukoil Pan Americas LLC
Lukoil Petroleum Ltd
Lutz, Daniel
Maarraoui, Antonio
MacDougall, Mark J.
Maher, Helen M.
Manne, Neal S.
Mark Migdal & Hayden
Mark, Ethan
Masefield A.G.
Mayer Brown LLP
McLish, Thomas P.
Medlock, Stephen M.
Meneguin Layerenza, Melina M.
Mitchell, Stacey H.
Monroe, Teresa A.
Morillo, Francisco
Mullins, Edward Maurice
O'Black, Weston
O'Connor, Catherine A.
Olivos, Christina
Otazo-Reyes, Alicia M., Magistrate Judge
Paez, Campos Elias
Paterno, Lide E.
Pathman, Kimberly Ann
Paul, Weiss, Rifkind, Wharton & Garrison, LLP
PDVSA US Litigation Trust
Petróleos de Venezuela, S.A. (PDVSA)
Pillsbury Winthrop Shaw Pittman
PJSC Lukoil
Podhurst Orseck, P.A.
Porter Hedges LLP
Poveda, Maximiliano

Purdy, Lauren V.
Quinn Emanuel Urquhart & Sullivan, LLP
Reed Smith LLP
Reid, Benjamin
Rivero Mestre LLP
Rivero, Andres
Rodriguez, Maria Fernando
Rojas, Alejandro
Rosado, Paul
Rosenthal, Stephen Frederick
Ryan, John
Saint-Hélier
Sanchez, Dayme
Schachter, Adam Michael
Shaw, Adam R.
Shelly, Jeffrey
Silverglate, Spencer Hal
Smith, Brad
Doberan, S.A.
Societe Hedisson, S.A.
Societe Hellin, S.A.
Sox, Daniel Alvarez
Summers, Andrew
Susman Godfrey, LLP
Swyer, Edward
The Brennan Group
Tovar, Ana
Trafigura A.G.
Trafigura Beheer B.V.
Trafigura Trading LLC
Vitol Energy (Bermuda) Ltd
Vitol S.A.
Vitol Holding II S.A.
Vitol Holding Sàrl
Vitol, Inc.
Vitol US Holding Company
Waltrop Consultants, C.A.
Wolfson, Adam B.
Zack, Steven N.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary because there are multiple, independently dispositive grounds for affirmance of the District Court's order that are compelled by well-settled law.

# TABLE OF CONTENTS

**Page**

STATEMENT REGARDING ORAL ARGUMENT ..................................... i

TABLE OF CONTENTS .............................................................. ii

TABLE OF AUTHORITIES ......................................................... iv

JURISDICTIONAL STATEMENT ................................................... 1

STATEMENT OF THE ISSUES .................................................... 2

STATEMENT OF THE CASE ...................................................... 3

I.    THE COMPLAINT ........................................................... 5

II.   THE LITIGATION TRUST .................................................. 6

III.  THE DISTRICT COURT DISMISSES THE LITIGATION
      TRUST'S COMPLAINT FOR LACK OF ARTICLE III
      STANDING AND THIS COURT AFFIRMS THAT
      JUDGMENT ................................................................. 7

IV.   MOVANT SEEKS TO SUBSTITUTE FOR THE
      LITIGATION TRUST AND/OR INTERVENE IN THE
      ACTION .................................................................... 9

V.    THE UNITED STATES DOES NOT RECOGNIZE
      MOVANT AS LEGITIMATE AND MOVANT DOES NOT
      CLAIM TO BE LEGITIMATE ............................................. 9

VI.   THE DISTRICT COURT DENIES THE MOTION ...................... 12

STANDARD OF REVIEW ......................................................... 13

SUMMARY OF ARGUMENT ..................................................... 14

ARGUMENT ....................................................................... 16

I.    THE DISTRICT COURT CORRECTLY HELD THAT IT
      LACKED SUBJECT-MATTER JURISDICTION TO
      CONSIDER THE MOTION ............................................... 16

A.   The   District   Court   Lacked   Subject-Matter
     Jurisdiction, as this Court Had Affirmed ............................ 16

B.   The Movant Could Not Revive this Action Through
     Intervention   and/or   Substitution   Because   the
     District Court Lacked Subject-Matter Jurisdiction
     to Entertain Those Requests ................................................ 18

C.   Denying Substitution in the Absence of Subject-
     Matter Jurisdiction is Consistent with Rule 17 .................. 25

II.   THE MOVANT FAILED TO SATISFY RULE 17 ......................... 32

A.   The District Court Did Not Abuse Its Discretion in
     Concluding that the Motion Was Untimely ......................... 32

B.   Rule 17 Does Not Require that District Courts Grant
     a New Plaintiff Leave to Substitute Following an
     Adverse Ruling on Appeal .................................................... 37

C.   The Court May Affirm the Denial of Section 17
     Relief Because Identifying the Proper Party to Sue
     Was   Not   Difficult   and   There   Was   No
     Understandable Mistake ....................................................... 42

D.   Appellees Would Be Prejudiced By the Grant of Rule
     17 Relief ................................................................................. 47

III.   RULE 60 AFFORDS NO BASIS FOR REVERSAL ...................... 51

IV.   THIS COURT SHOULD AFFIRM THE DENIAL OF THE
      MOTION ON ALTERNATIVE GROUNDS ................................. 54

A.   Movant Did Not Prove it was the Real Party in
     Interest ................................................................................... 54

B.   The   Political   Question   Doctrine   Requires
     Affirmance .............................................................................. 56

C.   The Act of State Doctrine Requires Affirmance ................. 61

CONCLUSION ........................................................................................ 63

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&F Bah. Ltd. Liab. Co. v. World Venture Grp., Inc.*,
796 F. App'x 657 (11th Cir. 2020) ....................................... 36

*Ackermann* v. *United States*,
340 U.S. 193 (1950) ................................................................. 54

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
No. 03 MDL 1529, 2009 WL 1490599 (S.D.N.Y. May 21,
2009) ................................................................. 39, 40, 45, 54

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
106 F.3d 11 (2d Cir. 1997) ............................................ 30, 44

*Aktepe v. U.S.*,
105 F.3d 1400 (11th Cir. 1997) ..................................... 57, 60

*Aldana* v. *Del Monte Fresh Prod. N.A., Inc.*,
741 F.3d 1349 (11th Cir. 2014) ........................................... 54

*Anin v. Reno*,
188 F.3d 1273 (11th Cir. 1999) ........................................... 50

*Arcia v. Fla. Sec'y of State*,
772 F.3d 1335 (11th Cir. 2014) ........................................... 22

*Asker v. Seminole Tribe of Fla., Inc.*,
730 F. App'x 751 (11th Cir. 2018) ...................................... 19

*Atlanta Gas Light Co.* v. *Aetna Cas. & Sur. Co.*,
68 F.3d 409 (11th Cir. 1995) ............................................... 17

*Baker v. Carr*,
369 U.S. 186 (1962) ......................................... 57, 59, 60, 61

iv

*Bochese v. Town of Ponce Inlet*,
  405 F.3d 964 (11th Cir. 2005) ........................................................ 19, 28

*Brooks v. Ashcroft*,
  283 F.3d 1268 (11th Cir. 2002) ............................................................ 13

*Caballero v. Fuerzas Armadas Revolucionarias de Colombia*,
  Case No. 20-MC-40-LJV, 2021 WL 1884110 (W.D.N.Y.
  May 11, 2021) ...................................................................................... 59

*Carmichael v. Kellogg, Brown & Root Servs., Inc.*,
  572 F.3d 1271 (11th Cir. 2009) ............................................................ 60

*Celanese Corp. of Am. v. John Clark Indus.*,
  214 F.2d 551 (5th Cir. 1954) ................................................................ 48

*Cifuentes v. Regions Bank*,
  No. 11-23455-CIV-MORE, 2012 WL 2339317 (S.D. Fla.
  June 19, 2012) ................................................................................ 30, 45

*City of Miami* v. *Citigroup Inc.*,
  801 F.3d 1268 (11th Cir. 2015) ...................................................... 24, 27

*Comparelli v. Bolivarian Republic of Venezuela*,
  Case No. 1:14-cv-24414, slip op. (S.D. Fla. Feb. 9, 2021) .................. 59

*Consul Gen. v. Bill's Rentals, Inc.*,
  330 F.3d 1041 (8th Cir. 2003) .............................................................. 35

*Correge v. Murphy*,
  705 F.2d 1326 (Fed. Cir. 1983) .............................................................. 1

*Corrie v. Caterpillar, Inc.*,
  503 F.3d 974 (9th Cir. 2007) ................................................................ 61

*Cotton States Mut. Ins. Co. v. Anderson*,
  749 F.2d 663 (11th Cir. 1984) .............................................................. 62

*Crowley Maritime Corp. v. Robertson Forwarding Co., Inc.*,
  No. 20-20151, 2020 WL 4366079 (S.D. Fla. July 30, 2020) .......... 31, 32

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  932 F.3d 126 (3d Cir. 2019) ............................................................. 59

*Cuddeback v. Fla. Bd. Of Educ.*,
  381 F.3d 1230 (11th Cir. 2004) ........................................................ 62

*Cummings* v. *United States*,
  704 F.2d 437 (9th Cir. 1983) ...................................................... 45, 47

*Curtis* v. *United States*,
  61 Fed. Cl. 511 (Ct. Fed. Cl. 2004) ............................................ 52, 53

*Davis* v. *Yageo Corp.*,
  481 F.3d 661 (9th Cir. 2007) ............................................................ 20

*Delta Coal Program* v. *Libman*,
  554 F. Supp. 684 (N.D. Ga. 1982), *aff'd*, 743 F.2d 852
  (11th Cir. 1984) ................................................................... *passim*

*Diaz v. Sheppard*,
  85 F.3d 1502 (11th Cir. 1996) .......................................................... 51

*In re Engle Cases*,
  767 F.3d 1082 (11th Cir. 2014) ............................................... *passim*

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
  999 F.3d 1247 (11th Cir. 2021) ........................................................ 33

*Esposito v. United States*,
  368 F.3d 1271 (10th Cir. 2004) ................................................... 30, 45

*Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*,
  402 F.3d 1092 (11th Cir. 2005) ........................................................ 36

*Fisher v. PNC Bank, N.A.*,
  2 F.4th 1352 (11th Cir. 2021) .......................................................... 27

*Fraley v. Cincinnati Ins. Co.*,
  2006 WL 435 (M.D. Ala. Feb. 21, 2006) .......................................... 30

*Fund Liquidation Holdings LLC* v. *Bank of Am. Corp.*,
  991 F.3d 370 (2d Cir. 2021) ....................................................... 20, 58

vi

*GE Mortg. Servs., LLC v. Lawyers Title Ins. Corp.*,
  No. 1:05-CV-03057-MHS, 2006 WL 8432853 (N.D. Ga.
  Mar. 31, 2006) .................................................................. 30

*Gilberti v. Gov. of Fla.*,
  835 F. App'x 508 (11th Cir. 2020) .................................... 27

*Glen v. Club Mediterranee, S.A.*,
  450 F.3d 1251 (11th Cir. 2006) .......................................... 61

*Gonzalez Magallon v. Livingston*,
  No. CIV.A. H-06-818, 2006 WL 1168795 (S.D. Tex. Apr.
  27, 2006) ............................................................................ 39

*Hamilton v. Southland Christian Sch., Inc.*,
  680 F.3d 1316 (11th Cir. 2012) .......................................... 25

*Hercules Inc. v. AIU Ins. Co.*,
  783 A.2d 1275 (Del. 2000) .................................................. 63

*Hess v. Eddy*,
  689 F.2d 977 (11th Cir. 1982) ............................................ 29

*House* v. *Mitra QSR KNE LLC*,
  796 F. App'x 783 (4th Cir. 2019) ...................................... 20

*Impact Fluid Solutions LP v. Bariven SA*,
  Case No. 4:19-cv-00652, slip op. (S.D. Tex. May 20, 2020) .............. 59

*Intown Props. Mgmt., Inc.* v. *Wheaton Van Lines, Inc.*,
  271 F.3d 164 (4th Cir. 2001) .............................................. 46

*Jackson* v. *Crosby*,
  437 F.3d 1290 (11th Cir. 2006) .......................................... 51

*Japan Whaling Ass'n v. Am. Cetacean Soc'y*,
  478 U.S. 221 (1986) ............................................................ 57

*Jiménez v. Palacos*,
  2019 WL 3526479 (Del. Ch. Ct. Aug. 2, 2019) ........................... *passim*

*Kendrick v. Kendrick*,
   16 F.2d 744 (5th Cir. 1926) ................................................................. 20

*Kondapalli v. DeMasi (In re DeMasi)*,
   No. 8:13-bk-08406-MGW, 2014 WL 4071664 (Bankr. M.D.
   Fla. Aug. 18, 2014) ................................................................. 30, 31

*Kuelbs v. Hill*,
   615 F.3d 1037 (8th Cir. 2010) ................................................................. 35

*Langston v. Lookout Mt. Cmty. Servs.*,
   775 F. App'x 991 (11th Cir. 2019) ................................................................. 54

*Lans* v. *Digital Equip. Corp.*,
   252 F.3d 1320 (Fed. Cir. 2001) ................................................................. 46

*Levinson v. Deupree*,
   345 U.S. 648 (1953) ................................................................. 29

*Lexmark Int'l, Inc.* v. *Static Control Components, Inc.*,
   572 U.S. 118 (2014) ................................................................. 24, 27

*Link Aviation, Inc. v. Downs*,
   325 F.2d 613 (D.C. Cir. 1963) ................................................................. 30

*Litman v. Mass. Mut. Life Ins. Co.*,
   825 F.2d 1506 (11th Cir. 1987) ................................................................. 18

*Live Entertainment, Inc. v. Digex, Inc.*,
   300 F. Supp. 2d 1273 (S.D. Fla. 2003) ................................................................. 30, 31

*Ltd. v. Ocwen Loan Serv., LLC*,
   762 F. App'x 601 (11th Cir. 2019) ................................................................. 27

*Luckey v. Miller*,
   929 F.2d 618 (11th Cir. 1991) ................................................................. 17

*Magallon v. Livingston*,
   453 F.3d 268 (5th Cir. 2006) ................................................................. 38, 39

*MAO-MSO Recovery II, LLC v. Boehringer Ingelheim Pharms., Inc.*,
No. 1:17-CV-21996-UU, 2018 WL 4956737 (S.D. Fla. Jan. 26, 2018) .................................................................................. 29

*Marks Law Offices, LLC v. Mireskandari*,
704 F. App'x 171 (3d Cir. 2017) ........................................ 45

*Meek v. Metro. Dade Cty.*,
985 F.2d 1471 (11th Cir. 1993) .......................................... 47

*Miller v. Longacre*,
No. 98-2010, 1999 WL 34977 (4th Cir. Jan. 28, 1999) ...................... 30

*NCUA Bd. v. U.S. Bank Nat'l Ass'n*,
898 F.3d 243 (2d Cir. 2018) ............................................. 35

*Norris* v. *Causey*,
869 F.3d 360 (5th Cir. 2017) ............................................ 27

*O'Hara v. District No. 1-PCD*,
56 F.3d 1514 (D.C. Cir. 1995) .......................................... 38

*Ocwen Loan Serv., LLC v. Accredited Home Lenders, Inc.*,
No. 6:08-cv-214-Orl-31GJK, 2009 WL 722406 (M.D. Fla. Mar. 18, 2009) .................................................................. 30

*Oetjen v. Central Leather Co.*,
246 U.S. 297 (1918) .................................................... 57

*PDVSA US Litig. Tr. v. Lukoil Pan Americas, LLC*,
991 F.3d 1187 (11th Cir. 2021), *cert. denied,* 142 S. Ct. 466 (2021) ........................................................... *passim*

*Quinn v. Monroe Cty.*,
330 F.3d 1320 (11th Cir. 2003) .......................................... 63

*Regents of Univ. of N.M. v. Knight*,
116 F. App'x 258 (Fed. Cir. 2004) ....................................... 1

*Rideau v. Keller Indep. Sch. Dist.*,
  819 F.3d 155 (5th Cir. 2016)............................................................45

*Roanoke Props. Ltd. P'ship* v. *Dewberry*,
  No. 97-1905, 1999 WL 1032605 (4th Cir. Nov. 15, 1999)..................46

*Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*,
  Case No. 18-7044, slip op. (D.C. Cir. May 1, 2019) ...........................59

*Hassanati ex rel. Said* v. *Int'l Lease Fin Corp.*,
  643 F. App'x 620 (9th Cir. 2016) ......................................................46

*Salcedo v. Hanna*,
  936 F.3d 1162 (11th Cir. 2019)..........................................................28

*In re Sanford Fork & Tool Co.*,
  160 U.S. 247 (1895)............................................................................18

*Schneider v. Kissinger*,
  412 F.3d 190 (D.C. Cir. 2005) ...........................................................61

*Thole* v. *U.S. Bank N.A.*,
  140 S. Ct. 1615 (2020)........................................................................21

*Transit Cas. Co.* v. *Sec. Tr. Co.*,
  441 F.2d 788 (5th Cir. 1971)..............................................................52

*Unique Sols., LLC v. Murray*,
  No. CV 106-024, 2007 WL 9701284 (S.D. Ga. Apr. 18,
  2007) ..................................................................................................30

*United States v. Jernigan*,
  341 F.3d 1273 (11th Cir. 2003)..........................................................25

*Univ. of S. Ala. v. Am. Tobacco Co.*,
  168 F.3d 405 (11th Cir. 1999).....................................................19, 22

*Waddell* v. *Hendry Cnty. Sheriff's Office*,
  329 F.3d 1300 (11th Cir. 2003)..........................................................53

*Weissman v. Weener*,
  12 F.3d 84 (7th Cir. 1993)..................................................................35

*Wieburg* v. *GTE Southwest, Inc.*,
272 F.3d 302 (5th Cir. 2001)................................................ 44

*Wieburg v. GTE Sw., Inc.*,
71 F. App'x 440 (5th Cir. 2003) ................................... 35, 45

*Wright* v. *Dougherty Cnty.*,
358 F.3d 1352 (11th Cir. 2004)........................................... 22

*Zamudio v. Haskins*,
775 F. App'x 614 (11th Cir. 2019) .................................... 50

*Zurich Ins. Co. v. Logitrans, Inc.*,
297 F.3d 528 (6th Cir. 2002)................................. 20, 45, 49

**Statutes**

28 U.S.C. § 2072(b) .............................................................. 20, 26

**Rules**

Fed. R. Civ. P.  17(a) ..............................................................54

Fed. R. Civ. P. 17(a)(3) Advisory Committee Notes on 1966
Amendment ...................................................................... 42

Fed. R. Civ. P. 60(b)(1) ........................................................ 52

Fed. R. Civ. P. 60(b)(6) ........................................................ 52

Fed. R. Civ. P. 60(c)(1)......................................................... 52

Fed. R. Civ. P. 82 ................................................................. 26

## JURISDICTIONAL STATEMENT

This is an appeal from an order denying a motion for substitution pursuant to Federal Rule of Civil Procedure 17(a), for intervention pursuant to Rule 24, and to reopen an affirmed final judgment pursuant to Rule 60. App.422–91, 531–35.

Two entities purport to be Appellants: the PDVSA U.S. Litigation Trust (the "Litigation Trust") and "Petróleos de Venezuela" or "PDVSA," a non-party that is aligned with the regime of former Venezuelan president, Nicolás Maduro ("Movant") (together with the Litigation Trust, "Appellants"), and not with the U.S.-recognized government of Venezuela (which owns the real PDVSA).

Appellees agree this Court has jurisdiction pursuant to 28 U.S.C. § 1291. The Litigation Trust, however, is not a proper appellant because it was not a party to the motion at issue here. *See* App.531.[1]

---

[1] *Regents of Univ. of N.M. v. Knight*, 116 F. App'x 258 (Fed. Cir. 2004) (party cannot appeal denial of a motion it did not join); *Correge v. Murphy*, 705 F.2d 1326 (Fed. Cir. 1983) (same).

## STATEMENT OF THE ISSUES

1.      Whether the District Court correctly held that it lacked subject-matter jurisdiction to grant intervention and/or substitution because Movant filed the motion after the court had dismissed the action for lack of subject-matter jurisdiction and after this Court had affirmed that final judgment on appeal without remand.

2.      Whether the District Court abused its discretion in holding that the request to substitute under Rule 17 was untimely because Movant did not seek substitution until three years after it was on notice of the challenge to the Litigation Trust's standing.

3.      Whether the District Court erred in not re-opening the action pursuant to Rule 60(b), when Rule 60 does not provide an independent basis for subject-matter jurisdiction, Movant was not a party or legal representative, and its motion was untimely.

4.      Whether this Court should affirm the order on appeal on the alternative grounds that the political question and act of state doctrines each barred Movant's requested relief because granting the motion would have required the District Court to contradict the U.S. Executive Branch's proclamations concerning the illegitimacy of the Venezuelan

government officials controlling the so-called "PDVSA" before this Court and second-guess the validity of acts taken by the Venezuelan government officials whom the U.S. Executive Branch does recognize as legitimate.

## STATEMENT OF THE CASE

The Litigation Trust allegedly was created in 2017 at the behest of Boies Schiller & Flexner LLP ("Boies Schiller") (together with a litigation funder and a private investigator) to pursue supposed "billions of dollars" of claims against Appellees for their alleged role in corruption at Petróleos de Venezuela S.A., or PDVSA, the Venezuelan state-owned oil giant. Appellees are international oil trading companies, their employees, and certain intermediaries.[2]

Under the putative trust agreement, PDVSA purported to assign its litigation claims to the newly created Litigation Trust so that it could

---

[2] Appellees are Lukoil Pan Americas LLC; Colonial Oil Industries, Inc.; Colonial Group, Inc.; Paul Rosado; Glencore Ltd.; Glencore Energy UK Ltd.; Gustavo Gabaldon; Sergio de la Vega; Vitol Inc.; Vitol Energy (Bermuda) Ltd.; Antonio Maarraoui; Trafigura Trading, LLC; BAC Florida Bank; Francisco Morillo; Leonardo Baquero; Helsinge Holdings, LLC; Helsinge, Inc.; Helsinge Ltd.; Daniel Lutz; Luis Liendo; John Ryan; Luis Alvarez; and Maximiliano Poveda.

litigate those claims in the U.S. court system. The Litigation Trust filed a complaint against Appellees in 2018, purporting to have authority to prosecute PDVSA's claims. Appellees immediately challenged the Litigation Trust's Article III standing to pursue PDVSA's claims. The Litigation Trust was unable to carry its burden of demonstrating that such claims ever were lawfully assigned to it. The District Court, after a full evidentiary hearing before Magistrate Judge Otazo-Reyes, dismissed the action for lack of subject-matter jurisdiction, holding that the Litigation Trust lacked Article III standing to pursue PDVSA's claims. App.374, 411. This Court affirmed that holding on appeal without remanding the action to the District Court for any further proceedings. *PDVSA US Litig. Tr. v. Lukoil Pan Americas, LLC,* 991 F.3d 1187, 1194 (11th Cir. 2021)*, cert. denied,* 142 S. Ct. 466 (2021). This Court denied rehearing, and the U.S. Supreme Court denied certiorari. *Litigation Trust*, No. 19-10950-AA (May 7, 2021); *Litigation Trust*, 142 S.Ct. 466 (2021).

More than three years after Appellees moved to dismiss the action for lack of subject-matter jurisdiction because the Litigation Trust lacked Article III standing, more than two years after the District Court

dismissed the action on that basis, and two months after this Court affirmed that dismissal, a non-party purporting to be "PDVSA" and therefore the supposed real party in interest, moved to substitute itself as the plaintiff, to intervene, and to reopen the final judgment this Court had affirmed (the "Motion"). App.422. But the Movant "PDVSA" is *not the* PDVSA controlled by the U.S-recognized government of Venezuela—*i.e.*, a true potential real party in interest—but is instead controlled by a collection of appointees of former President Nicolás Maduro, whose regime the United States has declared to be "illegitimate."

The District Court denied the Motion because it lacked subject-matter jurisdiction over the action, as this Court already had affirmed, and thus lacked subject-matter jurisdiction to grant a subsequent substitution or intervention request. App.533–34. The District Court also found the Motion was untimely. App.534–35.

Movant and the Litigation Trust (which was not a party to the Motion) appeal from the District Court's order denying the Motion. App.536–37.

## I.    THE COMPLAINT

In its complaint (the "Complaint"), the Litigation Trust alleged that

Appellees engaged in a "conspiracy to defraud . . . the Venezuelan state-owned oil company known as PDVSA." *Litigation Trust*, 991 F.3d at 1190; App.240. PDVSA, "the purported victim of the fraudulent scheme, did not sue the alleged perpetrators." *Litigation Trust*, 991 F.3d at 1190. Instead, the Litigation Trust claimed "that it had authority to do so as an assignee of PDVSA pursuant to a trust agreement [the "Trust Agreement"]." *Id.*

## II.   THE LITIGATION TRUST

The Litigation Trust was created by Boies Schiller (Appellants' counsel here); Algamex Limited, a Cyprus-based litigation funder controlled by William Duker, a disbarred lawyer and felon, App.243; ECF 570-70 at 1; and certain alleged Venezuelan officials. *Litigation Trust*, 991 F.3d at 1193.

Pursuant to the Trust Agreement, the vast majority of any recovery—66%—would have gone to Boies Schiller and other entities having nothing to do with PDVSA or the Venezuelan people. *Id.* Although the Trust Agreement purported to divest PDVSA of claims allegedly worth billions of dollars, neither PDVSA's President nor its Board of Directors approved it. *Id.* at 1193. Instead, the Trust Agreement and the transfer of claims allegedly were authorized and approved by two

individuals: Nelson Martinez, the former Venezuelan oil minister who purportedly signed the agreement on behalf of PDVSA, and Reynaldo Muñoz Pedrosa, purportedly Venezuela's attorney general for civil matters. *Id.*

## III. THE DISTRICT COURT DISMISSES THE LITIGATION TRUST'S COMPLAINT FOR LACK OF ARTICLE III STANDING AND THIS COURT AFFIRMS THAT JUDGMENT

In March 2018, a month after the Litigation Trust filed the Complaint, Appellees sought discovery and briefing concerning the Litigation Trust's standing. ECF 193, 197. The District Court granted those requests, scheduled an evidentiary hearing, and postponed case deadlines until standing was resolved. ECF 603, 632, 635. By the close of fact discovery on standing, the Litigation Trust had produced no witnesses with relevant personal knowledge of the Trust Agreement's execution by those purporting to act on PDVSA's behalf, the power of those supposed signatories to convey the claims, or the circumstances under which the Trust Agreement purportedly was signed. *See* ECF 712 at 4–7; ECF 715. The Litigation Trust also failed to procure any documents from PDVSA. ECF 366 at 3; ECF 430-1, Ex. C.

Following an evidentiary hearing, on November 5, 2018, the Magistrate Judge recommended dismissal of the Complaint for lack of Article III standing on numerous grounds, including that the Litigation Trust failed to carry its burden of authenticating the Trust Agreement and that the purported assignment to the Litigation Trust had violated New York champerty law and therefore was invalid. App.380–409.

Following briefing and oral argument, on March 8, 2019, the District Court adopted in part the Magistrate's recommendation, concluding that the Litigation Trust lacked Article III standing. App.411. The District Court agreed that the Litigation Trust had failed to establish that the Trust Agreement was admissible due to lack of authentication, including by "anyone with authority to take action on behalf of PDVSA." App.415–16. In addition, the District Court agreed that no valid assignment existed that could support the Litigation Trust's Article III standing because the putative assignment in the Trust Agreement was invalid under New York champerty law. App.417–18. Although it declined to adopt the Magistrate's findings on Venezuelan law, the District Court noted that the Venezuelan National Assembly's resolution denouncing the Litigation Trust as unconstitutional under Venezuelan law supported dismissal under principles of comity. App.418–20.

-8-

This Court affirmed the District Court's dismissal of the action for lack of Article III standing, finding no clear error in the District Court's finding that the Trust Agreement was champertous under New York law and therefore invalid. *Litigation Trust*, 991 F.3d at 1193–97.

## IV. MOVANT SEEKS TO SUBSTITUTE FOR THE LITIGATION TRUST AND/OR INTERVENE IN THE ACTION

More than three years after Appellees first raised objections to the Litigation Trust's Article III standing, Movant filed the Motion seeking to substitute for the Litigation Trust as the real party in interest and/or to intervene in the action, purporting to represent "the de facto governing body of PDVSA." Appellants' Opening Brief [hereinafter "OB"] at 37; App.422–28.

## V. THE UNITED STATES DOES NOT RECOGNIZE MOVANT AS LEGITIMATE AND MOVANT DOES NOT CLAIM TO BE LEGITIMATE

The Trust Agreement was signed on behalf of PDVSA by Martinez and Muñoz Pedrosa, both of whom served President Maduro at the time. App.344. On August 18, 2017, the U.S. State Department determined that Maduro's parallel legislature, the National Constituent Assembly, was "illegitimate." ECF 570-64. Around the same time, the U.S. Treasury Office of Foreign Assets Control ("OFAC") added Maduro to OFAC's list

of Specially Designated Nationals, "mak[ing] clear" its "opposition to the policies of [his] regime." ECF 570-68. And, shortly after the Litigation Trust filed this action, the democratically elected, officially recognized National Assembly (1) denounced the Litigation Trust as unconstitutional, and (2) declared that purported signatory Pedrosa had been illegitimately appointed. ECF 570-7. In November 2018, the United States promulgated new sanctions against Venezuela, designating PDVSA as a blocked entity. ECF 668-1.

In January 2019, before the District Court dismissed this action, President Trump issued executive orders declaring the Maduro regime "illegitimate," ECF 669-3 at 1, and recognizing Juan Guaidó, the President of the National Assembly, as the Interim President. ECF 665-1. President Trump promulgated new sanctions targeting PDVSA due to Maduro's attempts to undermine the National Assembly and prevent Mr. Guaidó and the National Assembly from exercising authority in Venezuela. ECF 669-3 at 1.

On February 5, 2019, the National Assembly adopted legislation to re-establish a transition to democracy in Venezuela. *Jiménez v. Palacos*, 2019 WL 3526479, at *6 (Del. Ch. Ct. Aug. 2, 2019). That statute

identified Mr. Guaidó as "the legitimate President in Charge of Venezuela" and "specifically empowered" him "to 'appoint an *ad hoc* Managing Board' of PDVSA 'to exercise PDVSA's rights as a shareholder of PDV Holding[.]'" *Id.* On February 8, 2019, Mr. Guaidó appointed the Managing Board of PDVSA, and on February 13, 2019, the National Assembly approved this action by resolution. *Id.*

The Biden Administration confirmed that "[t]he U.S. stance on Maduro's lack of legitimacy hasn't changed since Biden took office . . . . The U.S. doesn't accept Maduro as Venezuela's legitimate president and instead recognizes Guaidó, the leader of the National Assembly, as the interim president." ECF 735 at 5–6.

Movant never has contested that it does not represent either the lawfully recognized Guaidó administration or the *ad hoc* Managing Board of PDVSA appointed by Guaidó and confirmed by the National Assembly. On the contrary, Appellees expressly "acknowledge[d] that the U.S. Government has recognized a government separate from the *de facto* government of Venezuela and that an alternative board of directors of PDVSA has been recognized by U.S. courts for certain purposes." ECF 732 at 5–6. Appellants have admitted that, despite numerous requests,

-11-

Guaidó's Managing Board of PDVSA has not authorized Movant to bring this action, to intervene in this action, substitute for the dismissed Litigation Trust, or otherwise act as the real party in interest. ECF 738 at 2, 6; ECF 739-1; ECF 739-2.

## VI.    THE DISTRICT COURT DENIES THE MOTION

The District Court denied the Motion because, two years prior, it had found it lacked subject-matter jurisdiction because the Litigation Trust lacked Article III standing to bring the action, and this Court's "Mandate, [ECF 731], brought finality to that determination and divested this Court of jurisdiction." App.533. The District Court further held that the Motion was untimely under Rules 17 and 24 "given PDVSA's years-long knowledge that standing was at issue in this case." App.534–35 ("[A] motion to intervene may have been timely and appropriate much earlier in the case."). In light of those findings, the District Court did not reach the several other grounds for denial of the Motion that Appellees had presented.

## STANDARD OF REVIEW

Contrary to Appellants' argument, this appeal does not concern whether the District Court lacked subject-matter jurisdiction over the action. OB at 5. This Court already affirmed the District Court's final judgment dismissing the action for lack of subject-matter jurisdiction and that affirmance became the law of the case. *See Litigation Trust,* 991 F.3d at 1197. Instead, this appeal initially concerns whether the District Court properly determined that it lacked subject-matter jurisdiction to consider the Motion after this Court affirmed the District Court's dismissal of the entire action for lack of subject-matter jurisdiction and did not remand for further proceedings. That determination is reviewed *de novo. Brooks v. Ashcroft*, 283 F.3d 1268, 1272 (11th Cir. 2002).

This Court applies the abuse of discretion standard to review the District Court's application of the Federal Rules of Civil Procedure to deny the Motion, including the dispositive holding that the Motion was untimely. *In re Engle Cases*, 767 F.3d 1082, 1109 (11th Cir. 2014); *Delta Coal Program v. Libman*, 743 F.2d 852, 857 (11th Cir. 1984) (district court has broad discretion on Rule 17(a)(3) timeliness).

## SUMMARY OF ARGUMENT

The District Court correctly denied the Motion for several reasons, any one of which warrants affirmance.

*First*, the District Court properly determined that it lacked subject-matter jurisdiction to consider the Motion. This Court unanimously affirmed the District Court's final judgment of dismissal for lack of subject-matter jurisdiction without remand. Thus, granting any relief to Movant would have required the District Court to exercise jurisdiction inconsistent with this Court's affirmance and the well-settled principle that a court is powerless to act in the absence of subject-matter jurisdiction.

*Second*, because the sole, original plaintiff in this action lacked Article III standing, the action was an incurable nullity, including by resort to the Federal Rules of Civil Procedure, which do not create subject-matter jurisdiction.

*Third*, the District Court did not abuse its discretion in applying Rules 17, 24, and 60 to deny the Motion. With respect to Rule 17, the District Court did not abuse its broad discretion in denying substitution as untimely. Rule 17 did not require the District Court to allow

substitution nearly three years after Appellees challenged the Litigation Trust's standing, two years after a final judgment of dismissal for lack of subject-matter jurisdiction, and two months after this Court affirmed that dismissal.

The District Court's finding that the Motion was untimely under Rule 17 is dispositive here because Movant sought relief under Rule 60 for the sole purpose of bringing its improper and untimely Rule 17 request for substitution, and Movant has forfeited any argument with regard to Rule 24 by failing to include that argument in its Opening Brief.[3]

Moreover, with respect to Rule 60, Movant was not a party or legal representative to the action, as required by that rule, and even if it had been entitled to relief under Rule 60, its Motion was untimely and did not demonstrate any "mistake" or "extraordinary circumstances" sufficient to justify reopening the action.

---

[3] Even if Appellants had not forfeited their argument on intervention, the Motion was untimely under Rule 24, as the District Court held. *See* App.532–33; *United States v. U.S. Steel Corp.*, 548 F.2d 1232, 1235 (5th Cir. 1977) (no abuse of discretion in denying motion to intervene on timeliness grounds and noting that "intervention attempts after final judgments are ordinarily looked upon with a jaundiced eye") (internal quotation marks and citation omitted)).

*Fourth*, affirmance is warranted on multiple alternative grounds, including that Movant, whose management was appointed by the illegitimate regime of Nicolás Maduro, did not show that it was the real party in interest; that the political question doctrine precludes interference with the U.S. Executive Branch's determination that only President Juan Guaidó's appointees can direct PDVSA's acts, including participating in this litigation; and that the act of state doctrine precludes any challenge to the validity of President Guaidó's appointments or those appointees' exclusive ability to direct PDVSA to enter into litigation.

## ARGUMENT

## I.   THE DISTRICT COURT CORRECTLY HELD THAT IT LACKED SUBJECT-MATTER JURISDICTION TO CONSIDER THE MOTION

### A.   The District Court Lacked Subject-Matter Jurisdiction, as this Court Had Affirmed

It is uncontested on appeal that the District Court concluded in March 2019 that the original, sole plaintiff in this Action—the Litigation Trust—lacked Article III standing when it filed this action in 2018. App.411; *Litigation Trust*, 991 F.3d 1187. As a plaintiff without standing, the Litigation Trust never properly invoked the District Court's subject-

matter jurisdiction. *See Atlanta Gas Light Co.* v. *Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995) (in determining whether a party has met the "irreducible minimum" to "invoke[] a federal court's authority," courts "look to the state of affairs as of the filing of the complaint; a justiciable controversy must have existed at that time").

The District Court's lack of subject-matter jurisdiction over the action became the law of the case when this Court unanimously affirmed the judgment in March 2021. *Litigation Trust,* 991 F.3d at 1197; *Luckey v. Miller*, 929 F.2d 618, 621 (11th Cir. 1991) ("[L]aw of the case decrees that the findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal.") (citation and internal quotation marks omitted). Contrary to Appellants' contention (OB at 13), the affirmance was on Article III standing grounds, not on the merits. *Litigation Trust*, 991 F.3d at 1197 ("We affirm the district court's dismissal of the Litigation Trust's complaint without prejudice for lack of standing."). Under this Court's decision, a justiciable controversy did not exist when the action was filed. *See Atlanta Gas*, 68 F.3d at 414; *see also Luckey*, 929 F.2d at 621 (law-of-the-case preclusion encompasses issues "decided by

-17-

necessary implication as well as those decided explicitly"). This Court did not remand the action for further proceedings. *Litigation Trust*, 991 F.3d at 1197. Rather, this Court's affirmance and mandate made clear that the District Court's dismissal was final. ECF 731 ("[T]he opinion issued on this date in this appeal is entered as the judgment of this Court."). The mandate did not instruct the District Court to do anything because the District Court lacked subject-matter jurisdiction and thus there was nothing left for it to do. Acting under that mandate, the District Court could neither ignore its own affirmed determination that it lacked subject-matter jurisdiction nor "give any other or further relief" inconsistent with the mandate. *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895); *Litman v. Mass. Mut. Life Ins. Co.*, 825 F.2d 1506, 1518 (11th Cir. 1987).

### B. The Movant Could Not Revive this Action Through Intervention and/or Substitution Because the District Court Lacked Subject-Matter Jurisdiction to Entertain Those Requests

The District Court's holding that it lacked subject-matter jurisdiction to consider the Motion was correct for two related but independently sufficient reasons: (1) since it lacked subject-matter jurisdiction, the District Court could not grant any further relief,

including under Rules 17, 24, or 60; and (2) the action was a nullity at its inception, and no rule of civil procedure could revive it without running afoul of the Constitution and the Rules Enabling Act.

*First*, "standing is perhaps the most important jurisdictional doctrine, and, as with any jurisdictional requisite, [courts] are powerless to hear a case when it is lacking." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005) (citations and internal quotation marks omitted). "[O]nce a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999); *Asker v. Seminole Tribe of Fla., Inc.*, 730 F. App'x 751, 754 (11th Cir. 2018) (court "lacks subject matter jurisdiction to hear a case if the requirements of Article III of the Constitution are not satisfied" and "is powerless to act") (citation omitted).

Here, Movant asked the District Court to do what it could not: disregard its lack of subject-matter jurisdiction, affirmed on appeal, and proceed to hear the already-dismissed action with a new plaintiff. The District Court correctly held that it was powerless to grant that relief. ECF 755 at 3.

*Second*, because the Litigation Trust lacked standing, there was no justiciable controversy at the outset, and Movant could not use any procedural rule to cure that jurisdictional problem retroactively. *See* 28 U.S.C. § 2072(b) (authorizing rules of procedure that "shall not abridge, enlarge or modify any substantive right"); *Kendrick v. Kendrick*, 16 F.2d 744, 745 (5th Cir. 1926) ("An existing suit within the court's jurisdiction is a prerequisite of an intervention, which is an ancillary proceeding in an already instituted suit or action by which a third person is permitted to make himself a party . . . .").

All but one of the Circuits that have considered the issue have endorsed the view that an action brought by a plaintiff without Article III standing is a "nullity" at its inception. *See Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir. 2002); *House* v. *Mitra QSR KNE LLC*, 796 F. App'x 783, 787 (4th Cir. 2019) (plaintiff's lack of Article III standing at inception renders case a nullity incurable via Rule 17); *Davis* v. *Yageo Corp.*, 481 F.3d 661, 678 (9th Cir. 2007) (same).

Appellants rely on a single out-of-circuit case that held otherwise. *Fund Liquidation Holdings LLC* v. *Bank of Am. Corp.*, 991 F.3d 370, 386

(2d Cir. 2021).[4] But the Second Circuit's holding that the standing of the original plaintiff is irrelevant to the availability of substitution cannot be squared with *Thole* v. *U.S. Bank N.A.*, a decision that the Second Circuit did not grapple with. 140 S. Ct. 1615, 1620 (2020) ("[T]o claim the interest of others, the *litigants themselves* . . . must have suffered an injury in fact, thus giving them a sufficiently concrete interest in the outcome of the issue in dispute.") (emphasis added). Furthermore, the Second Circuit recognized that it was taking a minority position in holding that substitution under Rule 17 was available when the original plaintiff lacked Article III standing, noting that the "far more common view is the so-called 'nullity doctrine'" under which a "case initiated in the name of a plaintiff that lacks standing is an incurable nullity." *Id.* at 386.

Moreover, *Fund Liquidation* is nothing like this case. The movants in *Fund Liquidation* sought substitution by way of a Rule 15 amendment *before* the district court concluded that the original plaintiffs lacked standing, whereas here, Movant did not file the Motion until *after* this

---

[4] As demonstrated below, Appellants' other cited cases are inapplicable because, unlike here, the plaintiffs' "standing" defects in those cases were non-jurisdictional defects and thus could be cured by Rule 17.

Court affirmed the District Court's dismissal for lack of subject-matter jurisdiction. Thus, *Fund Liquidation* does not alter the well-settled, dispositive principle that the District Court was powerless to act upon finding that it lacked subject-matter jurisdiction over the action, *see, e.g.*, *Univ. of S. Ala.*, 168 F.3d at 410, let alone after this Court affirmed that judgment. That principle is dispositive here, regardless of whether this Court adopts the nullity doctrine.

If this Court nevertheless addresses the nullity doctrine, it should adopt it. This Circuit's prior holdings are in conformity with the nullity doctrine. For example, this Circuit holds that Article III standing is a precondition for relief under the Federal Rules of Civil Procedure. *See Wright* v. *Dougherty Cnty.*, 358 F.3d 1352, 1356 (11th Cir. 2004) ("By lacking [Article III] standing to bring a claim the appellants also lack standing to amend the complaint to consolidate with a party who may have standing."). And it holds that "standing is determined at the time the plaintiff's complaint is filed." *See, e.g.*, *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1340 (11th Cir. 2014). Thus, to the extent this Court reaches the issue, it should adopt the nullity doctrine and hold that Rules 17, 24, and 60 cannot revive this nonjusticiable action, particularly after this

Court already had affirmed the District Court's lack of subject-matter jurisdiction.

Appellants contend that this Court held in *Delta Coal Program v. Libman*, 743 F.2d 852 (11th Cir. 1984) that Rule 17 provides subject-matter jurisdiction to cure an Article III standing defect if there is an "identity of interest" between the original plaintiff and the substituting party. *See* OB at 31, 37. That strained reading of *Delta Coal* is wrong.

*Delta Coal* did not address the availability of relief under Rule 17 in the presence of an Article III defect because, unlike here, the original plaintiff in *Delta Coal* had Article III standing—*i.e.*, it was a proper representative of the interests of its co-owners, who had suffered an injury-in-fact. *See Delta Coal*, 743 F.2d at 855.

*Delta Coal* also did not address whether a district court has subject-matter jurisdiction to consider substitution after the district court's dismissal of the action for lack of subject-matter jurisdiction is affirmed on appeal. Unlike here, the district court in *Delta Coal* retained jurisdiction throughout because it held that the original plaintiff (Delta Coal) lacked a right of action or "statutory standing." *Id.* at 856 n.5 (Delta not "proper party plaintiff" because did not meet *statutory* requirement

under securities laws for federal-question jurisdiction). As the Supreme Court and this Court have stated, "statutory standing," unlike Article III standing, does not implicate a court's subject-matter jurisdiction. *Lexmark Int'l, Inc.* v. *Static Control Components, Inc.*, 572 U.S. 118, 125 (2014); *City of Miami* v. *Citigroup Inc.*, 801 F.3d 1268, 1276 n.6 (11th Cir. 2015).

The district court in *Delta Coal* had subject-matter jurisdiction for the additional reason that "other original plaintiffs remained and the court retained pendent jurisdiction over Delta's state claims." ECF 755 at 3 (citing *Delta Coal Program* v. *Libman*, 554 F. Supp. 684, 688 (N.D. Ga. 1982), *aff'd*, 743 F.2d 852 (11th Cir. 1984)). Appellants seek to minimize these dispositive facts by asserting that this Court "did not rely on (or even mention)" them in *Delta Coal*. OB at 17. But it is unsurprising that this Court did not reference the impact of those facts on Article III standing because Delta had Article III standing and thus the court had subject-matter jurisdiction. *Id.* at 855.

At most, *Delta Coal* stands for the proposition that a district court may temporarily delay dismissal to permit substitution of a real party in interest so long as an Article III plaintiff initially invoked the court's

subject-matter jurisdiction. *Delta Coal* does not give courts leave to grant substantive relief in the absence of Article III standing, does not authorize a movant to revive an already dismissed suit, and certainly does not mandate that a court delay giving effect to a dismissal to permit substitution months after a circuit court has affirmed its final judgment of dismissal for lack of subject-matter jurisdiction.

### C.    Denying Substitution in the Absence of Subject-Matter Jurisdiction is Consistent with Rule 17

Although Movant sought intervention as well as substitution, it forfeited any argument that the District Court erred in denying its request to intervene by not raising it in its Opening Brief.[5] Moreover, Movant sought to reopen the action under Rule 60(b) for the sole purpose of effecting the requested Rule 17 substitution. App.427. As a result, this appeal initially boils down to whether substitution under Rule 17 was available and appropriate to permit the prosecution of this already-

---

[5] *See United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) (party seeking to raise claim or issue on appeal "must plainly and prominently so indicate" and "devote a discrete, substantial portion of his argumentation to that issue"); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) (requirement "promotes careful and correct decision").

dismissed action despite the Litigation Trust's lack of Article III standing.

Appellants frame this dispute in terms of a binary choice between embracing the nullity doctrine and permitting substitution under Rule 17. *See, e.g.*, OB at 19 (Rule 17 would be "dead letter" if courts "lacked jurisdiction to substitute the party actually holding the claim" "when the original party lacks standing"). But those principles coexist harmoniously, and Appellants' authorities do not suggest otherwise.[6]

If, as here, no original plaintiff has Article III standing, the case is an incurable nullity because the court lacks subject-matter jurisdiction and the Federal Rules of Civil Procedure, including Rule 17, cannot be the basis for relief because such rules "do not extend or limit the jurisdiction of the district courts." *See* ECF 755 at 4 (citation omitted); 28 U.S.C. § 2072(b) (authorizing promulgation of rules that "shall not abridge, enlarge or modify any substantive right"); Fed. R. Civ. P. 82 ("These rules do not extend or limit the jurisdiction of the district courts").

_____

[6] As noted *infra*, separate reasons existed for the District Court to deny Rule 17 substitution.

By contrast, if an original plaintiff *with* Article III standing properly invokes the court's subject-matter jurisdiction—as was true in *Delta Coal*—then the district court may under some circumstances delay dismissal to permit substitution of a real party in interest to cure a non-jurisdictional standing defect. That is the case when parties raise real-party-in-interest challenges (like lack of capacity) that *do not* implicate Article III standing problems. *See Fisher v. PNC Bank, N.A.*, 2 F.4th 1352, 1358 (11th Cir. 2021) (real-party-in-interest and Article III standing are "'distinct issues' with separate considerations"); *see also Norris* v. *Causey*, 869 F.3d 360, 367 (5th Cir. 2017) (Article III standing is constitutional but real party in interest and capacity are non-jurisdictional).[7] Thus, contrary to Appellants' argument, courts grant Rule 17 relief without running afoul of the principle that the Federal

---

[7] *Lexmark*, 572 U.S. 118, 125, (2014) (Article III standing is constitutional; "statutory standing" "does not implicate subject-matter jurisdiction"); *City of Miami v. Citigroup Inc.*, 801 F.3d 1268, 1275 n.6 (11th Cir. 2015) (in *Lexmark*, Supreme Court "discarded the doctrinal label of 'statutory standing'"); *Gilberti v. Gov. of Fla.*, 835 F. App'x 508, 512 n.2 (11th Cir. 2020) (statutory standing unrelated to subject-matter jurisdiction); *Triaxx Prime CDO 2006-1, Ltd. v. Ocwen Loan Serv., LLC*, 762 F. App'x 601, 604 n.6 (11th Cir. 2019) (distinguishing between subject-matter jurisdiction and non-jurisdictional prudential standing).

Rules of Civil Procedure do not create subject-matter jurisdiction if, and only if, the original plaintiff has Article III standing, which is the "irreducible constitutional minimum to subject-matter jurisdiction," *Salcedo v. Hanna*, 936 F.3d 1162, 1166 (11th Cir. 2019) (citation omitted), and the court otherwise deems the "jurisdictional" defect curable. Here, Rule 17 was unavailable as a procedural mechanism because no original plaintiff with Article III standing invoked the District Court's subject-matter jurisdiction.

Again, this Court need not reach the nullity doctrine because Movant filed the Motion when it already was law of the case that the District Court lacked subject-matter jurisdiction over the action. Under such conditions, the District Court was powerless to consider the Motion. *Bochese*, 405 F.3d at 974. None of Appellants' cases compels a different result because none concerns an attempted substitution *after* the district court had dismissed the case for lack of subject-matter jurisdiction and the appellate court had affirmed and issued its mandate.

Appellants' cases are distinguishable for additional reasons.

Far from "recognizing that the district court [in *Delta Coal*] had discretion to permit substitution, even when none of the original

plaintiffs has standing," OB at 16 n.3, one of Appellants' own cited authorities acknowledged that "two of the three Plaintiffs in *Delta Coal* had standing to bring the action and therefore to ask for the substitution" and held that *Delta Coal* did not warrant substitution where the Article III requirement was not met. *MAO-MSO Recovery II, LLC v. Boehringer Ingelheim Pharms., Inc.*, No. 1:17-CV-21996-UU, 2018 WL 4956737, at *3 (S.D. Fla. Jan. 26, 2018) (denying reconsideration of earlier decision denying substitution).

Appellants' other cases fare no better. In all but one, the plaintiffs' "standing" defects were non-jurisdictional (*e.g.*, they rested on lack of capacity to sue or other non-Article III infirmities) and thus could be cured by Rule 17 substitution without improperly enlarging the courts' jurisdiction. *See, e.g.*, *Levinson v. Deupree*, 345 U.S. 648 (1953) (plaintiff sued in his capacity as administrator of estate appointed by one county and amended to substitute himself in capacity as administrator for another county); *Hess v. Eddy*, 689 F.2d 977, 979 (11th Cir. 1982) (widow sued in personal capacity instead of as administrator of husband's

estate).[8]

Appellants' attempts to distinguish relevant case law fail. They fault the District Court for relying on *Live Entertainment, Inc. v. Digex,*

---

[8] Appellants' non-binding authorities are distinguishable for the same reason. *Esposito v. United States*, 368 F.3d 1271, 1272 (10th Cir. 2004) (plaintiff had Article III standing but not capacity to sue; defect remediable under Rule 17); *Link Aviation, Inc. v. Downs*, 325 F.2d 613, 614 (D.C. Cir. 1963) (original plaintiffs had Article III standing); *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 14, 18 (2d Cir. 1997) (plaintiff suing on its own behalf and on behalf of shareholders lacked standing to assert shareholders' claims but had satisfied Article III for its claim); *Miller v. Longacre*, No. 98-2010, 1999 WL 34977, at *1–2 (4th Cir. Jan. 28, 1999) (unreported) (plaintiff with deed of property lacked capacity to sue for original owner, but could substitute real party in interest); *Cifuentes v. Regions Bank*, No. 11-23455-CIV-MORE, 2012 WL 2339317, at *6–7 (S.D. Fla. June 19, 2012) (granting substitution after finding defect in *prudential* standing); *Ocwen Loan Serv., LLC v. Accredited Home Lenders, Inc.*, No. 6:08-cv-214-Orl-31GJK, 2009 WL 722406, at *5 (M.D. Fla. Mar. 18, 2009) (original plaintiff suffered "invasion" of " legally protected interest," thus had standing); *Unique Sols., LLC v. Murray*, No. CV 106-024, 2007 WL 9701284, at *1–4 (S.D. Ga. Apr. 18, 2007) (original plaintiff with proprietary stake in LLC lacked right of action because injury not separate from that of company); *GE Mortg. Servs., LLC v. Lawyers Title Ins. Corp.*, No. 1:05-CV-03057-MHS, 2006 WL 8432853, at *1–2 (N.D. Ga. Mar. 31, 2006) (original plaintiff had Article III standing); *Fraley v. Cincinnati Ins. Co.*, 2006 WL 435, at *1 & n.1 (M.D. Ala. Feb. 21, 2006) (plaintiffs suffered injury in fact; question was whether they had the right of action under the bankruptcy code); *Kondapalli v. DeMasi (In re DeMasi)*, No. 8:13-bk-08406-MGW, 2014 WL 4071664, at *1–2 (Bankr. M.D. Fla. Aug. 18, 2014) (original plaintiff was LLC member who lacked right of action in bankruptcy but was injured).

*Inc.*, 300 F. Supp. 2d 1273, 1277 (S.D. Fla. 2003), claiming that its holding establishes that "substitution is precluded when the plaintiff 'lacked standing **and** the lack of standing was not an honest mistake." OB at 39 (emphasis in original). However, the *Live* court expressly stated that its holding depended on the fact that the plaintiff lacked standing, and *not* on "an honest mistake" under Rule 17(a). 300 F. Supp. 2d at 1277 ("[T]he Court does not rest its holding on Rule 17(a) but rather on the fact that Live Entertainment has admitted that it lacks standing in this case.").[9]

Appellants also fault the District Court for relying on *Crowley Maritime Corp. v. Robertson Forwarding Co., Inc.*, No. 20-20151, 2020 WL 4366079 (S.D. Fla. July 30, 2020), asserting that *Crowley* is distinguishable because the purported real parties in interest—certain corporate subsidiaries—did not seek substitution. *See* OB at 11. But that distinction is irrelevant because the court there considered whether a Rule 17 motion could be brought to delay or avoid dismissal and

---

[9] *See also* OB at 20 (citing *Kondapalli*, 2014 WL 4071664, at *1–4. Appellants argue that *DeMasi* is "almost directly on point," but it is not because the original plaintiff in that case, as an owner of the LLCs that held claims, had a concrete stake in the action even if his injury was not separate from that of his LLCs. 2014 WL 4071664, at *1, *2.

concluded that the case should be dismissed because "Article III standing supersedes the Rules to the extent they ever conflict," and Rule 17 could never be invoked to permit substitution of a plaintiff lacking constitutional standing. *Crowley*, 2020 WL 4366079, at *3.

Unlike in *Crowley*, this Court does not have to decide whether Rule 17 could delay—and ultimately prevent—dismissal of an action for lack of subject-matter jurisdiction. Rather, this appeal only asks whether Rule 17 can *revive* an action that a district court already has dismissed for lack of subject-matter jurisdiction via a judgment affirmed on appeal. Under the Constitution, the Rules Enabling Act, and the cases of this Court and its sister Circuits, the answer must be no.

## II.   THE MOVANT FAILED TO SATISFY RULE 17

Even if it had subject-matter jurisdiction to entertain the Motion (it did not), the District Court correctly applied Rule 17 to deny the Motion.

### A.   The District Court Did Not Abuse Its Discretion in Concluding that the Motion Was Untimely

District courts have "broad discretion" to decide whether a motion for substitution is timely. *Delta Coal*, 743 F.2d at 857. The District Court did not abuse its discretion in denying the Motion more than two years after the District Court had dismissed the action for lack of subject-

-32-

matter jurisdiction, and two months after this Court affirmed that dismissal. By any metric, Appellants sat on their rights for too long to seek relief under Rule 17, and the District Court certainly did not abuse its discretion in ruling against them on this issue.

Appellants misstate the purpose of Rule 17, which only prevents a dismissal without a reasonable time for substitution of the "real party in interest" once an objection is made to the named plaintiff. That is not what occurred here.

Rule 17(a)(3) is not intended to provide a path for a movant to seek substitution at this late juncture of the litigation, and the rule's own text demonstrates why. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1283 (11th Cir. 2021) (in interpreting a Federal Rule of Civil Procedure, this Court "examine[s] its text and give[s] effect to its plain meaning"). Rule 17(a)(3) directs a court to provide a "reasonable time" for a real party in interest to "ratify, join, or be substituted into the action" before the court may "dismiss [that] action for failure to prosecute in the name of the real party in interest." Here, by contrast, the District Court was not in a position to, let alone required to, provide a "reasonable time" for Movant to file a motion for substitution

before dismissal because the District Court already dismissed the action in March 2019—and not for "failure to prosecute in the name of the real party in interest," as would be the case if the plaintiff's capacity were at issue, but for lack of Article III standing. App.411.

And even if Rule 17(a)(3) applied to dismissals for lack of Article III standing (it does not), by its own terms, the rule provides a mechanism only to delay, rather than undo, dismissal pending joinder of a real party in interest. Rule 17(a)(3) does not contemplate a post-final judgment, post-appeal substitution that would unwind an affirmed dismissal, and Appellants cite no authority suggesting otherwise. Tellingly, the dismissal of this action already was litigated and resolved in Appellees' favor in the prior appeal in this action, and at no time prior to the issuance of the corresponding mandate did Appellants seek relief under Rule 17 or even assert arguments that dismissal should be delayed for a "reasonable time" to permit a Rule 17 motion. Given this history, this Court should reject Appellants' baseless, eleventh-hour attempt to repurpose Rule 17(a)(3) to secure another bite at the apple.

Rule 17 cannot be read as permitting plaintiffs to file complaints with obvious subject-matter jurisdiction problems, and then seek to

substitute in the purported actual injured party years later. Rule 17 states, and this Court has held, that the clock to bring a Rule 17(a)(3) motion begins to run from the date of the "objection" to real-party-in-interest status. *See Engle*, 767 F.3d at 1109 (substitution must be made within a "reasonable time *after objection*" (emphasis added)); *see also Consul Gen. v. Bill's Rentals, Inc.*, 330 F.3d 1041, 1047–48 (8th Cir. 2003) (denying relief under Rule 17 where plaintiff "was aware of the objection concerning real party in interest at least 18 months prior to the district court's ruling on the issue," during which time he had "ample opportunity" to take steps to become a real party in interest and amend the complaint, yet "purposely chose not to do so" until after an adverse ruling). A "reasonable time" to permit substitution depends on the facts and could be as short as three weeks. *Weissman v. Weener*, 12 F.3d 84, 85, 87 (7th Cir. 1993); *see also Kuelbs v. Hill*, 615 F.3d 1037, 1043 (8th Cir. 2010) (affirming dismissal, 6 months); *Bill's Rentals*, 330 F.3d at 1047 (18 months); *NCUA Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 259 (2d Cir. 2018) (more than a year); *Wieburg v. GTE Sw., Inc.*, 71 F. App'x 440 (5th Cir. 2003) (seven months from objection "more than reasonable").

Indeed, in the *Delta Coal* district court case upon which Appellants rely in their timeliness arguments, the plaintiff and substituting parties moved for substitution within **11 days** of the district court's order dismissing the case, *Delta Coal*, 554 F. Supp. at 690, even though the plaintiff was appealing the dismissal. *Delta Coal*, 743 F.2d at 853.

Here, Appellants cannot satisfy their burden by showing that the District Court *could have* allowed PDVSA additional time to move for substitution or even by showing that this Court *would have* given PDVSA more time to substitute if the question had been before it in the first instance before dismissal. Rather, Appellants' burden is to show that the District Court abused its discretion and was *required* to afford PDVSA leave to file the Motion two years after dismissal and three years after Appellees made the objection.[10] Appellants have not cited any authority that justifies why this Court should be the first to adopt a new

---

[10] *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty*., 402 F.3d 1092, 1103 (11th Cir. 2005) ("[b]y definition" under abuse of discretion review court will affirm "even though we would have gone the other way had it been our call." (citation omitted)); *A&F Bah. Ltd. Liab. Co. v. World Venture Grp., Inc.*, 796 F. App'x 657, 662 (11th Cir. 2020) (declining to reverse on grounds that Rule 60 motion was timely for failure to show court "was *required* to" grant motion (emphasis in original)).

requirement that a "reasonable time" under Rule 17(a)(3) must be calculated from the date of an appellate ruling on the district court's dismissal.

Appellees raised their initial challenge to the Litigation Trust's standing in July 2018, App.300–43, and the Magistrate Judge issued her report and recommendation recommending dismissal in November 2018. App.374. The Litigation Trust formally objected to the recommended dismissal in November 2018. ECF 646. Despite being aware of Appellees' objection and the Magistrate Judge's recommendation to dismiss, neither Appellant filed a motion for substitution until *almost two years and six months* after first objecting to dismissal, *more than two years* after a final judgment of dismissal had been entered, and only after the appellate process had run its course, including issuance of the mandate. ECF 679, 731; App.422–28; OB at 51 (admitting "PDVSA was aware of the attack on the Trust's validity"). The District Court did not abuse its broad discretion in denying the Motion as untimely.

## B.  Rule 17 Does Not Require that District Courts Grant a New Plaintiff Leave to Substitute Following an Adverse Ruling on Appeal

Courts have broad discretion to decide what is appropriate in light

of the facts of each case, and this case does not present a close question. Appellants have cited no authority requiring a district court to provide a "reasonable time" to substitute a plaintiff under Rule 17(a)(3) *after* an appellate ruling affirms an earlier final judgment of dismissal for lack of subject-matter jurisdiction.

Although Appellants cite *O'Hara v. District No. 1-PCD*, 56 F.3d 1514 (D.C. Cir. 1995), for the proposition that a court may allow substitution of the proper parties "as late as the appeal" (OB at 28), *O'Hara* did not involve the facts at issue here. Rather, the successors in *O'Hara* acquired an interest in the suit less than 45 days before being granted substitution; they promptly filed their motion; and they protected their rights on interlocutory appeal *before* their substitution was granted rather than waiting until a mandate issued following affirmance. *Id.* at 1517–19. In contrast, Movant did not act promptly and diligently even when faced with a final judgment dismissing the action for lack of subject-matter jurisdiction. Thus, the District Court did not abuse its discretion in finding that the Motion was untimely.

Similarly, Appellants cite *Magallon v. Livingston*, 453 F.3d 268, 273 (5th Cir. 2006), as an example of a case in which the trial court

granted Rule 17 substitution despite the plaintiff's lack of standing. OB at 28. However, while that court used the terminology "standing" to describe the defect, the plaintiff lacked a right to sue on behalf of a detainee on death row who had not been properly alleged to be mentally incompetent—a quintessential nonjurisdictional "capacity" problem, not an Article III issue. *Id.* at 271–72; *Gonzalez Magallon v. Livingston*, No. CIV.A. H-06-818, 2006 WL 1168795, at *2–3 (S.D. Tex. Apr. 27, 2006). And, while the court reversed the district court's dismissal with prejudice —which was at issue on appeal—because it concluded that the district court should have delayed dismissal to permit substitution, that holding rested on the severity of the dismissal in the face of a traditional "capacity" pleading defect that could have been cured at the trial court level. *Magallon*, 453 F.3d at 273. The Fifth Circuit did not, however, suggest that Rule 17 motions must be allowed generally after appeals conclude in the event of affirmance. Nor did it suggest that Rule 17 alone can unwind a dismissal specifically for lack of subject-matter jurisdiction that already has been affirmed on appeal.

Appellants rely on *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529, 2009 WL 1490599, at *18 (S.D.N.Y. May 21,

2009), but that case also is distinguishable. There, the plaintiff advisor had neglected to seek substitution in reliance on favorable district court decisions later reversed on appeal. *Id.* at \*5. The *Adelphia* court found, under the circumstances, that the new plaintiff had acted promptly "to seek relief as it might originally have done had this Court not erred" and thus declined to "punish[]" the plaintiff "for [the] Court's error." *Id.*

By contrast, Appellants here were on notice of the adverse rulings at each stage of the litigation before the mandate issued. The plaintiff in *Adelphia* responded to the original objection raising a standing defect, and conditionally asked for leave to amend if the motion were granted. *Id.* Appellants never did any of that, and instead asserted that PDVSA was a nonparty for purposes of discovery. ECF 712, 715.

While the Litigation Trust may have been entitled to "undertake[] a good faith defense" without "abandon[ing] its position" on the validity of the assignment, OB at 31, Appellants also were required to take appropriate steps to protect their interests in the event the adverse rulings previewed as early as November 2018 in the Magistrate Judge's report and recommendation were not overturned—all the more so in a case in which a loss meant no subject-matter jurisdiction over the entire

action. *Delta Coal* demonstrates that a plaintiff may move for substitution while also prosecuting and prevailing on an appeal from an order of dismissal for failure to name the proper plaintiff. *Delta Coal*, 743 F.2d at 857.

Appellants ask this Court to construe Rule 17 as a procedural "get out of jail free card" requiring a district court to provide time to substitute after a judgment of dismissal for lack of subject-matter jurisdiction is affirmed on appeal following tremendous expenditures of resources on standing litigation. But that interpretation would be inconsistent with the plain text of Rule 17, would compromise finality, and would be at odds with the approach to other relief under the Federal Rules of Civil Procedure. After all, a party seeking to reopen a final judgment under Rule 60 (as the Movant attempted below) only has a "reasonable time" of one year to request relief from a district court judgment on grounds of "mistake, inadvertence, surprise, or excusable neglect" under Rule 60(b)(1). Under Appellants' theory, that same litigant would have a "reasonable time" of more than *two years* to request relief from an affirmed district court dismissal for lack of subject-matter jurisdiction based on the litigant's alleged own "understandable mistake" about the

"identification of the correct" plaintiff. *Engle*, 767 F.3d at 1109; OB at 26. That cannot be, and is not, the law.

### C.   The Court May Affirm the Denial of Section 17 Relief Because Identifying the Proper Party to Sue Was Not Difficult and There Was No Understandable Mistake

"When the real party in interest is not properly named, Rule 17(a)(3) requires [a] court to provide an opportunity to substitute in the correct party before the court dismisses the case," provided that the substitution is timely. *Engle*, 767 F.3d at 1109. But the Advisory Committee comments to the Rule cautioned that "[t]he provision should not be misunderstood or distorted" because "[i]t is intended to prevent forfeiture when *determination of the proper party to sue is difficult or when an understandable mistake is made*." *Id.* (quoting Fed. R. Civ. P. 17(a)(3) Advisory Committee Notes on 1966 Amendment). "Accordingly, most courts have interpreted . . . Rule 17(a) as being applicable only when the plaintiff brought the action [in the name of the wrong party] as a result of an understandable mistake, because the determination of the correct party to bring the action is difficult." *Id.*

Here, Appellants do not claim that it was "difficult" to determine the proper plaintiff. Nor could they. The Litigation Trust entered into an

agreement with Movant solely for the purpose of obtaining the right to pursue Movant's purported claims. App.344.

Instead, Appellants assert they made an "understandable mistake" as to the proper plaintiff because the Litigation Trust "clearly had a reasonable relief [sic] that the Trust assignment was valid and therefore the Trust had standing." OB at 30, 26–29. But Appellants fail to demonstrate how their mistake was "understandable" when they moved for Rule 17 relief. According to Appellants, Movant always was the real party in interest and thus its entitlement to bring the claims was always known. But, instead of moving for substitution or joinder after Appellees challenged the Litigation Trust's Article III standing or even after the District Court's dismissal order, the Litigation Trust made a strategic decision to continue to pursue the claims, which, if successful, would have allowed counsel and other third parties to receive their share of any recovery pursuant to the Trust Agreement. That strategic decision also allowed the Litigation Trust to avoid producing critical discovery from

the eventual Movant relating to the validity of the assignment.[11] Appellants point to no case in which a court permitted Rule 17(a)(3) substitution in analogous circumstances.

Appellants cite to *Advanced Magnetics, Inc.* v. *Bayfront Partners, Inc.*, 106 F.3d 11 (2d Cir. 1997), but there, the non-parties moved to substitute *before* defendants moved to dismiss for lack of standing— "prompted by defendants' pretrial discovery focus on the validity of the assignments"—*and* renewed their request in response to defendants' motion . *Id.* at 14–15. That is, the non-parties moved while the "mistake" remained "understandable." That did not occur here.

Similarly, in *Wieburg* v. *GTE Southwest, Inc.*, 272 F.3d 302 (5th Cir. 2001), the Fifth Circuit did not, as Appellants claim, "hold[] that it was an abuse of discretion for the district court to dismiss a case because the claim was brought by a plaintiff with standing." OB at 29. Instead, the court remanded the case "because the [district court] made no factual

---

[11] *See, e.g.*, ECF 670 at 17, 18 (report and recommendation recommending monetary sanctions against the Litigation Trust for not producing PDVSA corporate representative for deposition); ECF 712 at 13, 30 (awarding attorneys' fees due to cancelled deposition of PDVSA corporate representative); ECF 685 (adopting report and recommendation on sanctions); ECF 715.

findings for [it] to review for a possible abuse of discretion" and subsequently held that the district court had not abused its discretion in denying substitution because plaintiff "had seven months" to substitute after the case was dismissed for lack of standing, which was "a reasonable time of which she did not take advantage." 71 F. App'x at 440. Appellants' other cited cases are similarly distinguishable.[12] Moreover, numerous Circuits have held that Rule 17(a)(3) relief is not available in analogous circumstances to this case. *See Zurich*, 297 F.3d at 532  (substitution properly denied when lawsuit mistakenly brought in the name of wrong entity in the corporate family and the right entity "was not vigilant in

---

[12] *See Cifuentes*, 2012 WL 2339317, at *6 ("identification of the correct Plaintiffs under Columbian intestacy law was difficult to make or . . . Plaintiffs' mistaken identification of the decedent's siblings" as the plaintiffs with the right to sue on behalf of the estate "was understandable"); *In re Adelphia Commc'ns*, 2009 WL 1490599, at *18 (conditional substitution sought upon objection and request renewed when favorable district court decision *reversed* on appeal); *Esposito*, 368 F.3d at 1276 (problem of capacity, not standing, and substitution motion filed within a few weeks of dismissal); *Rideau v. Keller Indep. Sch. Dist.*, 819 F.3d 155, 165–67 (5th Cir. 2016) (problem of capacity, not standing, and substitution sought in response to motion to dismiss); *Marks Law Offices, LLC v. Mireskandari*, 704 F. App'x 171, 175 (3d Cir. 2017) (affirming substitution contemporaneous with finding original plaintiff was not real party in interest); *Cummings* v. *United States*, 704 F.2d 437, 440 (9th Cir. 1983) (intervention into action with original plaintiff with standing, and in that context, findings on prejudice required).

-45-

protecting its claims"); *Lans* v. *Digital Equip. Corp.*, 252 F.3d 1320, 1324, 1328–29 (Fed. Cir. 2001) (substitution properly denied when individual who brought patent infringement claim had assigned patent to a corporation he controlled and there was no understandable mistake in naming the individual rather than the corporation as plaintiff); *Intown Props. Mgmt., Inc.* v. *Wheaton Van Lines, Inc.*, 271 F.3d 164, 171 (4th Cir. 2001) ("Intown's mistake had not been 'understandable,' Intown was represented by counsel and had notice of [the relevant action] from an early date, and yet failed to seek to join [the action] until after the limitations problem with its own action became apparent."); *Roanoke Props. Ltd. P'ship* v. *Dewberry*, No. 97-1905, 1999 WL 1032605, at *5 (4th Cir. Nov. 15, 1999) ("[T]he decision to have [plaintiff] sue . . . was not an "understandable mistake," but rather a purely strategic decision . . . [I]t would appear that [plaintiff] brought suit itself because it believed . . . that bringing suit itself was its best chance for recovery."); *Hassanati ex rel. Said* v. *Int'l Lease Fin Corp.*, 643 F. App'x 620, 622–23 (9th Cir. 2016) ("Plaintiffs' close to two-year delay in seeking appointment was unreasonable and not an understandable mistake" where district court

"made it clear that a court appointment was necessary to bring [the] action").

### D. Appellees Would Be Prejudiced By the Grant of Rule 17 Relief

Appellants argue that the District Court was barred from denying the Motion on grounds of timeliness absent a finding of prejudice to Appellees. *See* OB at 27 (citing *Cummings v. United States*, 704 F.2d 437, 440 (9th Cir. 1983) (discussing prejudice in the context of timeliness of *intervention*)). Appellees are not required to establish prejudice to successfully oppose a Rule 17 motion as untimely. *Engle*, 767 F.3d at 1119 (prejudice to non-moving party not necessary or dispositive to warrant denial of motion to amend to effect Rule 17 substitution).[13]

---

[13] Relying on *Meek v. Metro. Dade Cty.*, 985 F.2d 1471, 1479 (11th Cir. 1993), Appellants argue that Rule 17's timeliness inquiry turns on prejudice to the non-moving party. OB at 52. But this Court did not apply Rule 17 in *Meek*, it applied Rule 24. 985 F.2d at 1475–76. Further, the movants in *Meek* sought conditional intervention under Rule 24 *before* the final judgment, so that they could appeal on behalf of Dade County *if* the district court entered an adverse ruling against the county and *if* the county itself did not appeal. *Id.* In finding that intervention was timely, this Court noted that this was not a disfavored circumstance in which the movants sought "intervention following final judgment." *Id.* at 1479. Here, in contrast, Movant sought relief following the final judgment and the appeal affirming that final judgment. Thus, even if Rule 24's timeliness standard applied to Rule 17, Movant did not satisfy it.

Nevertheless, the record shows that Appellees would have been prejudiced if the District Court had granted the Motion.

*First,* Appellees have an interest in the finality of the judgment of dismissal. The very purpose of Rule 17 is to facilitate prosecution of actions in the name of the real party in interest "to enable the defendant to avail himself of evidence and defenses that the defendant has against the real party in interest, and to assure him finality of the judgment, and that he will be protected against another suit brought by the real party at interest on the same matter." *Celanese Corp. of Am. v. John Clark Indus.*, 214 F.2d 551, 556 (5th Cir. 1954); Rule 17(a)(3) Advisory Committee Notes on 1966 Amendment (noting that the function of the Rule "is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata"). Movant's belated attempt at substitution sought to do the exact opposite: it would have deprived Appellees of the finality of the judgment they had secured through years of litigation, all the while leaving them exposed to a follow-on suit by a purported PDVSA (as noted *infra*, the Movant is not even the legitimate PDVSA).

*Second*, it is undisputed that Appellees spent more than $209,000 in fees and costs as a result of the Litigation Trust's pre-dismissal assertions that PDVSA was a non-party, and should not bear discovery costs, only for the Movant that refused to comply with standing-related discovery to turn around years later and seek to be added as a party to the litigation. The ability of Appellees to defend themselves already has been irrevocably harmed by the loss of evidence and witnesses and the fading of recollections that can be expected when litigations drag on for years, and those effects are only exacerbated by Movant's strategic (and ultimately sanctionable) behavior to date.

*Third*, Appellees would have been prejudiced if Movant had been able to avoid the proper application of the statutes of limitation and repose by having Movant's purported claims relate back to the Litigation Trust's complaint. That prejudice alone would have been sufficient for the District Court to deny substitution. *See Zurich*, 297 F.3d at 532 ("[A] totally separate entity, which was not vigilant in protecting its claims, cannot now benefit from [the original plaintiff's] mistake so as to take advantage of the suspension of the limitations period [under Rule 17].""). Yet, avoiding application of the statutes of limitations was an explicit

motivation behind the Motion, App.427 ("[Movant] seeks to preserve the causes of action against any possible claim of expiration of statute of limitations."), a fact that actually supports affirmance because this Court expressly has barred Rule 17 as a mechanism to substitute placeholder plaintiffs. *Engle*, 767 F.3d at 1113. Allowing the Maduro regime or anyone else to circumvent the statute of limitations also would have increased the risk that discovery necessary for Appellees' defenses already has been compromised or lost. *See Zamudio v. Haskins*, 775 F. App'x 614, 615 (11th Cir. 2019) ("Statutes of limitations promote justice by preventing surprises through plaintiffs' revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." (citation omitted)). Statutes of limitations frequently are imposed with harsh results; mistakes do not warrant their tolling .[14]

For these reasons, the District Court did not abuse its discretion in

---

[14] *Anin v. Reno*, 188 F.3d 1273, 1278 (11th Cir. 1999) ("[F]iling deadlines, like statutes of limitations, necessarily operate harshly and arbitrarily with respect to persons who fall just on the other side of them, but if the concept is to have any content, the deadline must be enforced." (citation omitted)).

denying the Motion as untimely, a conclusion that is independently dispositive of this appeal.

## III.   RULE 60 AFFORDS NO BASIS FOR REVERSAL

Appellants cannot show that the District Court abused its discretion by refusing to reopen the action pursuant to Rule 60(b)(1) or 60(b)(6) to allow for substitution. *See Jackson* v. *Crosby*, 437 F.3d 1290, 1295 (11th Cir. 2006) (denial under Rule 60(b) reviewable for abuse of discretion).

*First*, Movant moved to reopen the judgment under Rule 60 for the sole purpose of invoking the District Court's subject-matter jurisdiction to effect its requested substitution under Rule 17 and/or intervention under Rule 24 (which request it abandoned on appeal). App.427. But, like other rules, Rule 60 does not create subject-matter jurisdiction. *See Diaz v. Sheppard*, 85 F.3d 1502, 1505 n.3 (11th Cir. 1996). And, even if the District Court had subject-matter jurisdiction, that would have no bearing on the District Court's separate holding that the Motion was untimely under Rules 17 and 24.

*Second*, Rule 60(b) does not apply here. It provides that "[o]n just terms, a court may relieve a *party or its legal representative* from a final

judgment, order or proceeding for the following reasons: . . . mistake, inadvertence, surprise or excusable neglect"; or "for any other reason justifying relief from the operation of the judgement." Fed. R. Civ. P. 60(b)(1), (b)(6) (emphasis added). Movant was not a party to this action. Nor was it a party's legal representative because, as noted below, Movant does not represent the legitimate PDVSA. Accordingly, Movant could not avail itself of Rule 60.[15]

*Third,* even if it were entitled to invoke Rule 60(b), Movant did not timely move for relief. Movant was required to seek relief under Rule 60(b)(1) "no more than a year after entry of the judgment or order of the date of the proceeding" and to seek relief under Rule 60(b)(6) "within a reasonable time." Fed. R. Civ. P. 60(c)(1). These time periods are not tolled by an appeal because the motion could have been "made even though an appeal [was] taken and . . . pending." *Transit Cas. Co.* v. *Sec. Tr. Co.*, 441 F.2d 788, 791 (5th Cir. 1971). The District Court dismissed the action for lack of standing on March 8, 2019, and Movant did not seek

---

[15] Appellants' reliance on *Curtis* v. *United States*, 61 Fed. Cl. 511 (Ct. Fed. Cl. 2004), is misplaced for this reason alone. As Appellants acknowledge, there, the *plaintiff* moved to reopen under Rule 60.  *See* OB at 34.

to reopen the judgment until more than two years later, on May 18, 2021. Appellants' lack of timeliness is dispositive of their Rule 60(b) argument.[16]

*Fourth*, even if it were entitled to invoke Rule 60, as explained above in the context of Rule 17, Movant failed to show any "mistake, inadvertence, surprise, or excusable neglect" as required under Rule 60(b)(1). Appellants claim that Movant's "mistake" was believing that the Litigation Trust had standing to bring the action. OB at 34. But, Appellants made a tactical decision to pursue PDVSA's claims through the Litigation Trust, and it is well established that Rule 60(b)(1) does not afford relief from such tactical decisions. *See Waddell* v. *Hendry Cnty. Sheriff's Office*, 329 F.3d 1300, 1310 (11th Cir. 2003) (plaintiffs' "tactical decisions" prevented plaintiffs from presenting their case). The Litigation Trust's standing was hard-fought; the Appellants' position below was not a mistake.

Relief is unavailable under Rule 60(b)(6) for the same reason. Appellants acknowledge that this catch-all provision is reserved for

---

[16] *Curtis* is distinguishable on this basis as well; plaintiff there moved under Rule 60 within two months of judgment. *See* 61 Fed. Cl. at 513.

"extraordinary circumstances" and "requires a justification so compelling that the court must vacate its order." OB at 35. It "does not reward a party that seeks to avoid the consequences of its own 'free, calculated, deliberate choices.'" *Aldana* v. *Del Monte Fresh Prod. N.A., Inc.*, 741 F.3d 1349, 1357 (11th Cir. 2014); *Ackermann* v. *United States*, 340 U.S. 193, 198 (1950) ("There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from.") Appellants fail to point to any decisions permitting relief under Rule 60(b) in these circumstances. Appellants do not offer any valid reason why Movant did not seek to conditionally substitute as plaintiff, as in *Adelphia*, 2009 WL 1490599, or alternatively seek to intervene at an earlier stage to protect its rights.

## IV. THIS COURT SHOULD AFFIRM THE DENIAL OF THE MOTION ON ALTERNATIVE GROUNDS

This Court may affirm the Order on Appeal on numerous alternative grounds supported by the record. *See Langston v. Lookout Mt. Cmty. Servs.*, 775 F. App'x 991, 1001 n.13 (11th Cir. 2019).

### A. Movant Did Not Prove it was the Real Party in Interest

Movant acknowledges that it had to prove it was the real party in interest to be substituted as plaintiff. OB at 36–39; Fed. R. Civ. P. 17(a).

But Movant failed to present any evidence that it was the real party in interest and the record establishes that it is not. Therefore, this Court should affirm.

The Movant purported to represent the "current governing body of" PDVSA, that claimed to be "the de facto governing body of PDVSA," App.426–27, but that is not the PDVSA management the United States recognizes. Although Appellants submit that the position of the U.S. government as to the governance of Venezuela and thus PDVSA has been "unsettled and changing," that is untrue. Since early 2019—before this Court dismissed the Action for lack of subject-matter jurisdiction and Movant filed its Motion—the United States has considered the Maduro regime to be "illegitimate" and recognized Mr. Guaidó as the President of Venezuela. Mr. Guaidó appointed another board of directors of PDVSA— the *ad hoc* Managing Board of PDVSA, which the National Assembly confirmed. *Id.*

Movant did not contest below that it does not represent either the Guaidó administration or the *ad hoc* Managing Board of PDVSA. In fact, Movant acknowledged that "an alternative board of directors of PDVSA has been recognized by U.S. courts for certain purposes." App.426–27.

Movant therefore conceded that it is not the legitimate PDVSA that has suffered injury sufficient to support Article III standing.

Recognizing this fatal flaw, Appellants urge this Court to "allow the action to proceed" and remand the action for consideration of "who may properly represent the interests of PDVSA." OB at 36–39. But Movant presented *no evidence* below (or here) that it is the actual real party in interest. A litigant cannot seek a remand based on the mere hope that the facts might change. The Court should affirm the Order without remanding to the District Court.

## B.    The Political Question Doctrine Requires Affirmance

Without invoking any particular doctrine by name, Appellants urge this Court to reverse and remand this case so that the District Court may "determine who may properly represent the interests of PDVSA" in light of a "complex and ever-changing political situation" and the U.S. government's supposedly "unsettled and changing position" on the "treatment of the multiple contenders for power in Venezuela." OB at 36–37. Appellants have it backwards. The parties already briefed these issues before the District Court, and this Court can affirm based upon the record if it elects to reach those issues. Indeed, who may properly

represent PDVSA in U.S. courts is a settled matter, and permitting the Movant to proceed as substitute plaintiff would violate the political question doctrine. *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986).

The political question doctrine "excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution" to other branches. *Id.* "Who is the sovereign, de jure or de facto, of a territory" is a quintessential political rather than judicial question. *Oetjen v. Central Leather Co.*, 246 U.S. 297, 302 (1918). That and other questions of foreign relations "uniquely demand single-voiced statement of the Government's views," *Baker v. Carr*, 369 U.S. 186, 211 (1962), and thus "are rarely proper subjects for judicial intervention." *Aktepe v. U.S.*, 105 F.3d 1400, 1403 (11th Cir. 1997).

Here, Appellants openly concede (OB at 37) that the Motion was made by the "current" "*de facto* governing body of PDVSA," which is not the PDVSA management recognized by the United States. The Executive Branch consistently has denounced the Maduro regime as "illegitimate" in contrast to the "legitimate" Venezuelan National Assembly headed by

Juan Guaidó, and backed that stated position with economic sanctions. ECF 570-64, 570-68, 669-3. Far from recognizing "multiple contenders for power," as Appellants claim (OB at 37), since January 2019, Guaidó has been officially recognized as Interim President of Venezuela by both the Trump and Biden administrations. ECF 665-1; App.496–97.[17]

President Guaidó's recognition has important implications for legal control of PDVSA. Pursuant to a statute enacted by the National Assembly, President Guaidó is empowered to "'appoint an *ad hoc* Managing Board' of PDVSA 'to exercise PDVSA's rights as a shareholder of PDV Holding,'" and he exercised that power in February 2019 to appoint an ad hoc Managing Board that was approved by National Assembly resolution. *Jiménez v. Palacios*, 2019 WL 3526479, at *6 (Del. Ch. Ct. Aug. 2, 2019), *aff'd*, 237 A.3d 68 (Del. 2020). Every court that has addressed the issue since has concluded that the Maduro regime does not control PDVSA as a matter of law and rejected the argument that de facto

---

[17] Whether the United States eventually may recognize the Maduro regime as legitimate is irrelevant because, as Appellants note, the question was whether the real party in interest "has had standing *since the case's inception*." OB at 15 (quoting *Fund Liquidation*, 991 F.3d at 388) (emphasis added).

control is legally significant. *See, e.g.*, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 135 & n.2 (3d Cir. 2019).[18] By its own admission (OB at 37), counsel for Appellants has asked for—but evidently has not received and certainly did not receive before the Order on appeal—the Guaidó administration's and *ad hoc* Board's "support" of its Motion because Movant plainly is not the PDVSA management recognized by the United States.

Allowing Movant, whose management was appointed by an unrecognized regime, to substitute as the real party in interest would have contradicted the Executive Branch's position on the legitimacy of President Guaidó and the National Assembly at a time when a "single-voiced statement" of the country's diplomatic stance towards Venezuela is critical. *Baker*, 369 U.S. at 211. Permitting substitution would have implicated a number of the *Baker* factors, *Baker*, 369 U.S. at 217, any one

---

[18] *See also Comparelli v. Bolivarian Republic of Venezuela*, Case No. 1:14-cv-24414, slip op. at 2–3 (S.D. Fla. Feb. 9, 2021); *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, Case No. 20-MC-40-LJV, 2021 WL 1884110, at *7 (W.D.N.Y. May 11, 2021); *Impact Fluid Solutions LP v. Bariven SA*, Case No. 4:19-cv-00652, slip op. at 13 (S.D. Tex. May 20, 2020); *Jiménez v. Palacios*, 2019 WL 3526479, at *11 (Del. Ch. Ct. Aug. 2, 2019); *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, Case No. 18-7044, slip op. at 1 (D.C. Cir. May 1, 2019).

of which establishes the presence of a nonjusticiable political question. *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1280 (11th Cir. 2009).

*First*, it would have demanded judicial interference in a foreign-policy area committed to the Executive Branch. *Baker*, 369 U.S. at 217. In recognizing President Guaidó, the U.S. government has made a determination that he may speak for Venezuela and its instrumentalities. And the U.S. government also has condemned—and imposed sanctions for—the Maduro regime's interference with the National Assembly, which authorized the appointment of President Guaidó's *ad hoc* Management Board of PDVSA. ECF 669-3 at 1. A determination that the Maduro-appointed "*de facto*" management of PDVSA may speak for a Venezuelan instrumentality in court would have amounted to an improper "judicial reappraisal" of the Executive Branch's judgment. *Aktepe*, 105 F.3d at 1404.

*Second*, permitting substitution would have expressed a "lack of respect" to the Executive Branch. Allowing Movant to litigate as if it was PDVSA would have accorded more weight to *de facto* control than U.S. government recognition, and approved actions taken by a sanctioned

regime in defiance of the National Assembly's decision to empower President Guaidó to appoint PDVSA management. *Baker*, 369 U.S. at 217; *Schneider v. Kissinger*, 412 F.3d 190, 198 (D.C. Cir. 2005); ECF 669-3 at 1.

*Third*, permitting substitution would have caused the "potentiality of embarrassment." *Baker*, 369 U.S. at 217. It would have "implicitly questioned" or "even condemned United States foreign policy" towards the Maduro regime and the legitimacy of the National Assembly's delegation of power to President Guaidó. *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 982–84 (9th Cir. 2007).

## C.   The Act of State Doctrine Requires Affirmance

President Guaidó's appointment of the *ad hoc* Management Board of PDVSA was entitled to judicial deference pursuant to the act of state doctrine, which prevents U.S. courts from "declaring that an official act of a foreign sovereign performed within its own territory is invalid." *Glen v. Club Mediterranee, S.A.*, 450 F.3d 1251, 1253 (11th Cir. 2006). Here, that doctrine precluded any role for the Maduro-appointed "*de facto*" management of PDVSA in this litigation. Appellants cannot dispute that President Guaidó's appointment of the *ad hoc* board was an official act

of a recognized sovereign taken wholly within Venezuela's territory, and therefore the District Court had to accept those appointments as valid. *See Palacios*, 2019 WL 3526479, at \*6, *aff'd*, 237 A.3d 68 (Del. 2020). To accept Appellants' invitation to remand to consider whether Movant could direct PDVSA's acts by virtue of its management's *de facto* control is too late and would, in any event, involve precisely the type of inquiry into the validity of an act of state that the doctrine precludes. As the Delaware Court of Chancery put it, "[t]he Executive's de jure recognition of the Guaidó government standing alone establishes statehood sufficient to invoke the act of state doctrine," even if his government does not *de facto* control territory, people, or assets. *Id.* at \*16, 18.[19] And, indeed, Movant was precluded from relitigating the validity of President Guaidó's appointments as acts of state.[20] Permitting substitution here

---

[19] *Cuddeback v. Fla. Bd. Of Educ.*, 381 F.3d 1230, 1236 n.5 (11th Cir. 2004) (when record "is so clear as to the final outcome of the case and is sufficiently developed for us to decide the issue," a remand is "a waste of time and judicial resources").

[20] That issue was determined against the Maduro-appointed PDVSA management in the *Palacios* litigation in Delaware Chancery Court. Appellees would be entitled to invoke collateral estoppel offensively against Appellants. *Cotton States Mut. Ins. Co. v. Anderson*, 749 F.2d 663, 666 (11th Cir. 1984). Delaware courts would give preclusive effect to

would have second-guessed the settled conclusion that only President Guaidó's appointees can direct PDVSA's acts, including participating in litigation, and President Guaidó's appointees neither control Movant nor lent their support to the Motion. *See* OB at 37.

## CONCLUSION

For all of these reasons, the judgment of the District Court should be affirmed.

Respectfully submitted,

*s/ Edward M. Mullins*
EDWARD M. MULLINS
DANIEL ALVAREZ SOX
CHRISTINA OLIVOS
REED SMITH LLP
200 S. Biscayne Blvd., Ste. 2600
Miami, FL 33131
 (786) 747-0200

WILLIAM A. BURCK
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street, N.W., Suite 900
Washington, DC 20005
(202) 538-8000
*Attorneys for Defendants-Appellees Trafigura Trading, LLC and Jose Larocca*

―――――――――――――

the Chancery Court's determination that the act of state doctrine applies, *Hercules Inc. v. AIU Ins. Co.*, 783 A.2d 1275, 1278 (Del. 2000), and Movant's management had a "full and fair opportunity to litigate their claims." *Quinn v. Monroe Cty.*, 330 F.3d 1320, 1329 (11th Cir. 2003).

*s/ Bruce Birenboim*
BRUCE BIRENBOIM
BRAD S. KARP
JESSICA S. CAREY
KRISTINA A. BUNTING
MELINA MENEGUIN LAYERENZA
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000

ROBERT C. JOSEFSBERG
STEPHEN F. ROSENTHAL
PODHURST ORSECK, P.A.
One Southeast Third Avenue
Suite 2300
Miami, FL 33131
(305) 358-2800

*Attorneys for Defendants-Appellees*
*Glencore Ltd., Glencore Energy UK Ltd., Gustavo Gabaldon, Luis*
*Alvarez, and Sergio de la Vega*

*s/ Alex M. Gonzalez*
ALEX M. GONZALEZ
ISRAEL J. ENCINOSA
BRIAN BRIZ
CHRISTOPHER N. BELLOWS
HOLLAND & KNIGHT LLP
701 Brickell Avenue, Suite 3300
Miami, FL 33131
 (305) 374-8500

*Attorneys for Defendants-Appellees Helsinge, Inc., Helsinge Ltd.,*
*Helsinge Holdings, LLC, Daniel Lutz, Luis Liendo, and Maria*
*Fernanda Rodriguez*

-64-

s/ MARK J. MACDOUGALL
MARK J. MACDOUGALL
LIDE E. PATERNO
AKIN GUMP STRAUSS
HAUER & FELD, LLP
2001 K Street, N.W.
Washington, DC 20006
(202) 887-4000

*Attorneys for Defendants-Appellees Leonardo Baquero
and Francisco Morillo*

s/ Adam L. Hudes
ADAM L. HUDES
STEPHEN M. MEDLOCK
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
(202) 263-3312

– and –

MICHAEL P. LENNON, JR.
*Pro hac vice*
MAYER BROWN LLP
700 Louisiana Street, Suite 3400
Houston, TX 77002
(713) 238-3000

– and –

JORGE D. GUTTMAN
LAUREN V. PURDY
GUNSTER
600 Brickell Avenue, Suite 3500
Miami, FL 33131
(305) 376-6054

*Attorneys for Defendant-Appellee
LUKOIL Pan Americas LLC*

_s/ David M. Burkoff_
DAVID M. BURKOFF
ALLAN C. GALIS
HUNTER, MACLEAN, EXLEY
& DUNN, P.C.
200 East Saint Julian Street
P.O. Box 9848
Savannah, GA 31412
(912) 236-0261

_Attorneys for Defendants-Appellees Colonial Group, Inc., Colonial Oil Industries, Inc., and Paul Rosado_

_s/ Gerald E. Greenberg_
GERALD E. GREENBERG
ADAM M. SCHACHTER
FREDDY FUNES
GELBER SCHACHTER
& GREENBERG, P.A.
1221 Brickell Avenue, Suite 2010
Miami, FL 33131
(305) 728-0950

_Attorneys for Defendants-Appellees Vitol Inc., Vitol Energy (Bermuda) Ltd., and Antonio Maarraoui_

_s/ Etan Mark_
ETAN MARK
LARA O'DONNELL GRILLO
MARK MIGDAL & HAYDEN
80 Southwest Eighth Street
Suite 1999
Miami, FL 33130
(305) 374-0440

_Attorneys for Defendant-Appellee John Ryan_

*s/ Luis Konski*
Luis Konski
Ana Tovar
Fowler White Burnett P.A.
1395 Brickell Avenue, 14th Floor
Miami, FL 33131
(305) 479-9273

*Attorneys for Defendant-Appellee*
*BAC Florida Bank*

Neal S. Manne
Alexander L. Kaplan
Weston O'Black
Michael C. Kelso
Susman Godfrey L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
(713) 651-9366

– and –

*s/ Michael Gervais*
Michael Gervais
Susman Godfrey L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
(310) 789-3100

*Attorneys for Defendants-Appellees*
*Vitol Inc., Vitol Energy (Bermuda)*
*Ltd. and Antonio Maarraoui*

*s/ Spencer H. Silverglate*
Spencer H. Silverglate
Clarke Silverglate, PA
799 Brickell Plaza, Suite 900
Miami, FL 33131
(305) 377-0700

– and –

STEPHEN H. LEE
PORTER HEDGES LLP
1000 Main Street, 36th Floor
Houston, TX 77002
(713) 226-6686

*Attorneys for Defendant-Appellee*
*Maximiliano Poveda*

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND WORD-COUNT LIMITATIONS

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 12,969. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Word 2016 in 14-point Century Schoolbook font.

*s/Edward M. Mullins*

## CERTIFICATE OF SERVICE

I, Edward M. Mullins, certify that, on July 25, 2022, a copy of this brief was filed electronically through the appellate CM/ECF system and that a resulting electronic notice was sent to all counsel of record.

*s/Edward M. Mullins*