No. 22-10675

# United States Court of Appeals

*for the*

# Eleventh Circuit

PDVSA US LITIGATION TRUST,

*Plaintiff-Appellant,*

PETROLEOS DE VENEZUELA, S.A.,

*Movant-Appellant,*

– v. –

LUKOIL PAN AMERICAS, LLC, LUKOIL PETROLEUM, LTD., COLONIAL OIL INDUSTRIES, INC., COLONIAL GROUP, INC., GLENCORE, LTD., *et al.*,

*Defendants-Appellees*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
HON. DARRIN P. GAYLES

## REPLY BRIEF OF PLAINTIFF AND MOVANT-APPELLANTS

GEORGE F. CARPINELLO
BOIES SCHILLER FLEXNER LLP
30 South Pearl Street, 11th Floor
Albany, New York 12207
(518) 434-0600

– and –

MARSHALL DORE LOUIS
BOIES SCHILLER FLEXNER LLP
MIAMI CENTER
100 SOUTHEAST 2ND ST., SUITE 2800
MIAMI, FL 33131
TEL.: (305) 539-8400

DAVID BOIES
BROOKE ALEXANDER
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, New York, NY 10504
(914) 749-8200

– and –

DAVID A. BARRETT
WALESKA SUERO GARCIA
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, New York 10001
(212) 446-2300

*Attorneys for Plaintiff-Appellant PDVSA U.S. Litigation Trust and
Movant-Appellant Petroleos de Venezuela, S.A.*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

<u>*PDVSA US LITIGATION TRUST V. LUKOIL PAN AMERICAS, LLC, ET AL,* NO. 22-10675</u>

## CERTIFICATE OF INTERESTED PERSONS
## <u>AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Eleventh Circuit Rule 26.1, counsel for Appellants hereby certify that the following persons and entities have or may have an interest in the outcome of this case:

### <u>District Court Judges</u>

Gayles, Darrin P., District Court Judge

Otazo-Reyes, Alicia M., Magistrate Judge

### <u>Counsel for Plaintiff and Movant/Appellants</u>

Alexander, Brooke

Barrett, David A.

Boies, David

Boies Schiller Flexner LLP

Carpinello, George F.

Louis, Marshall Dore

Kunstler, Marilyn

Suero Garcia, Waleska

### <u>Plaintiff/Appellant and Associated Persons/Entities</u>

Algamex Limited

Vincent (trustee)

The Bolivarian Republic of Venezuela

The Brennan Group

Citgo Holdings, Inc. and its numerous partially and wholly-owned subsidiaries

PDVSA US Litigation Trust (Movant on Motion to Intervene and Beneficiary of Trust)

Petróleos de Venezuela, S.A (PDVSA) (Trust beneficiary) and its numerous partially and wholly-owned subsidiaries

Rojas, Alejandro (trustee)

Swyer, Edward (trustee)

**Law Firms Representing Defendants/Appellees**

Akin Gump Strauss Hauer & Feld LLP

Carlton Fields, P.A.

Clarke Silverglate, P.A.

Fowler White Burnett P.A.

Gelber Schachter & Greenberg, P.A.

Gunster

Holland & Knight LLP

Hunter, Maclean, Exley & Dunn, P.C.

Jorden Burt LLP

Mark Migdal & Hayden

Mayer Brown LLP

Paul, Weiss, Rifkind, Wharton & Garrison, LLP

Pillsbury Winthrop Shaw Pittman

Podhurst Orseck, P.A.

Porter Hedges LLP

Reed Smith LLP

Rivero Mestre LLP

Susman Godfrey, LLP

Quinn Emanuel Urquhart & Sullivan, LLP

**<u>Counsel for Defendants/Appellees</u>**

Bellows, Christopher N.

Birenboim, Bruce

Breur, George Thomas

Briz, Brian A.

Burck, William A.

Burkoff, David M.

Canamero, Rebecca Jo

Cardenas, Maria Cristina

Carey, Jessica S.

Encinosa, Israel Jovanny Espinosa, Mikayla Kiersten Funes, Freddy

Galis, Allan C.

Gangwer, Jason E.

Gervais, Michael

Glass, Ethan

Gonzalez, Alex M.

Greenberg, Gerald Edward Gruhn, Clifton Richard Grillo, Lara O'Donnell

Guttman, Jorge David Hauss, Stephen

Hayden, Donald John

Hudes, Adam L.

Josefsberg, Robert C.

Kaplan, Alexander L.

Karp, Brad S.
Kaskel, Jonathan H.

Kelso, Michael C.

Kully, David

Lee, Stephen H.

Lennon Jr., Michael P.

MacDougall, Mark J.

Manne, Neal S.

Mark, Etan

McLish, Thomas P.

Medlock, Stephen M.

Mitchell, Stacey H.

Mullins, Edward Maurice

O'Black, Weston

O'Connor, Catherine A.

Olivos, Christina

Paterno, Lide E.

Pathman, Kimberly Ann

Reid, Benjamine

Rivero, Andres

Rosenthal, Stephen Frederick

Ryan, Mark W.

Sanchez, Dayme

Schachter, Adam Michael

Silverglate, Spencer Hal

Sum, Alice

Wolfson, Adam B.

**Individual Defendants/Appellees**

Alvarez, Luis

Baquero, Leonardo

De la Vega, Sergio

Gabaldon, Gustavo

Larocca, Jose

Liendo, Luis

Lutz, Daniel

Maarraoui, Antonio

Morillo, Francisco

Paez, Campos Elias

Poveda, Maximiliano

Rodriguez, Maria Fernando

Rosado, Paul

Ryan, John

Summers, Andrew

**Corporate Defendants/Appellees**

BAC Florida Bank

Blue Bank International N.V.

Colonial Oil Industries, Inc.

Colonial Group, Inc.

EFG International A.G.

Glencore de Venezuela, C.A.

Glencore Ltd

Glencore International

Godelheim, Inc.

Helsinge Holdings, LLC

Helsinge, Inc.

Helsinge Ltd., Saint-Helier

Hornberg Inc.

Jehu Holdings, Inc.

Lukoil Pan Americas LLC

Lukoil Petroleum Ltd

Masefield A.G.

Societe Doberan, S.A.

Societe Hedisson, S.A.

Societe Hellin, S.A.

Trafigura A.G.

Trafigura Trading LLC

Trafigura Beheer B.V.

Vitol Energy (Bermuda) Ltd

Vitol S.A.

Vitol, Inc.

Waltrop Consultants, C.A.

Dated: October 14, 2022

**BOIES SCHILLER FLEXNER LLP**

By: */s/ Marshall Dore Louis*

Marshall Dore Louis (Bar No. 512680)
Miami Center
100 Southeast 2nd St., Suite 2800
Miami, FL 33131
Tel: (305) 539-8400
Fax: (305) 539-1307

David Boies
Brooke Alexander
333 Main Street
Armonk, New York 10504
Tel: (914) 749-8200
Fax: (914) 749-8300

George F. Carpinello
30 S. Pearl Street, 11th Floor
Albany, New York 12207
Tel: (518) 434-0600
Fax: (518) 434-0665

David A. Barrett
Waleska Suero Garcia
55 Hudson Yards
New York, NY 10001
Tel: (212) 446-2300
Fax: (212) 446-2350

*Attorneys for Plaintiff and Movant Appellants*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..................................................C-1

TABLE OF AUTHORITIES ...................................................................... ii

PRELIMINARY STATEMENT ...............................................................1

ARGUMENT ...........................................................................................3

      I.     THE DISTRICT COURT HAD SUBJECT MATTER
           JURISDICTION TO GRANT RULE 17 SUBSTITUTION OF
           PDVSA FOR THE TRUST..................................................3

      II.    THIS APPEAL IS NOT BARRED BY LAW OF THE CASE..........12

      III.   PDVSA MEETS THE REQUIREMENTS OF RULE 17(a)(3)
           FOR SUBSTITUTION AND RELATION BACK. ...........................13

      IV.   THE DISTRICT COURT HAD JURISDICTION UNDER
           RULE 60(b) TO ALLOW POST-JUDGMENT RELIEF. .................18

      V.    THE COURT SHOULD REMAND FOR FURTHER
           CONSIDERATION. ........................................................20

CONCLUSION .......................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                **Page(s)**

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
   106 F.3d 11 (2d Cir. 1997)..................................................................... 14

*Arcia v. Fla. Sec'y of State*,
   772 F.3d 1335 (11th Cir. 2014).............................................................. 12

*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l.*,
   790 F.3d 411 (2d Cir. 2015)................................................................... 12

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
   932 F.3d 126 (3d Cir. 2019)........................................................ 21, 22, 25

*Davis v. Yageo Corp.*,
   481 F.3d 661 (9th Cir. 2007)............................................................. 9, 10

*Delta Coal Program v. Libman*,
   743 F.2d 852 (11th Cir. 1984)...........................................................*Passim*

*Fed. Sav. & Loan Ins. Corp. v. Haralson*,
   813 F.2d 370 (11th Cir. 1987)........................................................ 13, 14

*Fund Liquidation Holdings, LLC v. Bank of America Corp.*,
   991 F.3d 370 (2d Cir. 2020).................................................................... 8

*Harris v. Union Elec. Co.*,
   846 F.2d 482 (8th Cir. 1988)......................................................... 19, 20

*House v. Mitra*,
   796 F. App'x 783 (4th Cir. 2019) ....................................................... 8, 9

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
   2009 WL 1490599 (S.D.N.Y. May 21, 2009) ...................................... 15

*In re Engle Cases*,
    767 F.3d 1082 (11th Cir. 2014)............................................................... 18

*Jimenez v. Palacios*,
    250 A.3d 814 (Del. Ch. 2019)............................................................... 25

*Jones v. Las Vegas Metro. Police Dep't*,
    873 F.3d 1123 (9th Cir. 2017)............................................................... 10

*Klein v. Qlik Techs., Inc.*,
    906 F.3d 215 (2d Cir. 2018)................................................................... 15

*Martineau v. Wier*,
    934 F.3d 385 (4th Cir. 2019)................................................................... 9

*PDVSA U.S. Litig. Trust v. Lukoil Pan Americas, LLC*,
    991 F.3d 1187 (11th Cir. 2021)............................................... 6, 7, 13, 16

*PDVSA US Litig. Tr. v. Lukoil Pan Americas, LLC*,
    142 S. Ct. 466 (2021) ........................................................................... 14

*Rideau v. Keller Indep. Sch. Dist.*,
    819 F.3d 155 (5th Cir. 2016).......................................................... 11, 15

*Wright v. Dougherty Cnty., Ga.*,
    358 F.3d 1352 (11th Cir. 2004)............................................................. 12

*Young v. New Process Steel, LP*,
    419 F.3d 1201 (11th Cir. 2005)............................................................. 15

*Zurich Insurance Co. v. Logitrans Inc.*,
    297 F.3d 528 (6th Cir. 2002)................................................... 10, 11, 12

**Rules**

Fed. R. Civ. P. 15 .................................................................................. 14

Fed. R. Civ. P. 17 .................................................................................. 14

Fed. R. Civ. P. 24 ................................................................................................ 13

**Other Authorities**

6A Charles Wright & Arthur Miller, Federal Practice & Procedure § 1555 (3d ed. 2016)............................................................................................................ 14

13A Charles Wright & Arthur Miller, Federal Practice & Procedure § 3531 (3d ed. 2022)............................................................................................................ 11

## PRELIMINARY STATEMENT

In the first appeal of this case to this Court, Defendants told the Court that dismissal of the Trust's claims would not adversely affect the people of Venezuela because "PDVSA would still have its purported claims."  Case No. 19-10950, Appellees' Br. (June 26, 2019) at 36.  They repeated this assertion in their oral argument: "These claims still remain in the hands of PDVSA if this case is dismissed."  Appellants' Opening Brief ("OB") at 7 n.2.  Yet now, Defendants argue that PDVSA cannot bring the claims.  Defendants' arguments are based upon two fundamental fallacies.

*First*, they argue that the Trust's lack of standing was somehow qualitatively different from the plaintiff's lack of standing in this Court's decision in *Delta Coal Program v. Lipman*, 743 F.2d 852 (11th Cir. 1984), and in the numerous other circuit court and district court cases cited in OB at 11-16.  It is not.  In *Delta Coal* and in each of the cases cited by Appellants, the court would have lacked Article III subject matter jurisdiction but for the fact that there was another party, a real party in interest, that could assert the same claims and had a community of interest with the original plaintiff.  In each of those cases, subject matter jurisdiction existed because that real party in interest had standing and its substitution, pursuant to Federal Rule of Civil Procedure 17(a)(3), was appropriate.  There is nothing unique about the deficiency

in the Trust's standing here that makes this case different from all the other decisions that are directly on point.

*Second*, Defendants argue that this appeal should be dismissed because this Court already decided that the district court lacked subject matter jurisdiction. But the issue that was before this Court in the original appeal was whether the district court lacked jurisdiction because PDVSA's assignment of its claims to the Trust was void under New York champerty law, thereby depriving the Trust of standing. The Court obviously did not have before it the issue now presented, *i.e.*, whether the district court would nonetheless have subject matter jurisdiction to substitute PDVSA—which unquestionably has standing to assert claims on its own behalf in place of the Trust as plaintiff.

Defendants also argue that the district court correctly found, without an evidentiary hearing or any showing of actual prejudice, that PDVSA unreasonably delayed in moving to intervene until after this Court affirmed dismissal of the Trust's case. But that decision was clearly wrong given the fact that PDVSA moved expeditiously to intervene after the Trust's lack of standing was affirmed on appeal and given the absence of any proof of prejudice. The suggestion made by Defendants and the district court that PDVSA and the Trust should have dropped the issue of standing immediately after it was challenged by Defendants' motion to dismiss lacks any support in the law and nothing in the law required them to abandon

their right to appeal.  The Trust had good faith arguments supporting its standing, especially given that the overwhelming focus of Defendants' motion was their spurious attack on the authenticity of the assignment agreement—an argument this Court found highly dubious.  The Trust was entitled to pursue its good faith arguments for standing to accomplish the purposes for which the Trust was created. Neither the district court nor Defendants has cited any case which holds that a party whose standing is challenged must accede to that challenge before pressing a good faith argument that the challenge is wrong.

Finally, the issue of which PDVSA board should control the litigation was not addressed below and therefore should not be addressed on this appeal.  However, given the rapidly changing relationship between the U.S. and the Maduro government, this matter is best left to the district court on remand.  Defendants should not escape all liability for their theft of billions of dollars from PDVSA, and through it, from the Venezuelan people, by invoking the diplomatic crisis that now is approaching a resolution.

## ARGUMENT

## I.    THE DISTRICT COURT HAD SUBJECT MATTER JURISDICTION TO GRANT RULE 17 SUBSTITUTION OF PDVSA FOR THE TRUST.

The district court held that because the Trust lacked standing, the court had no subject matter jurisdiction to substitute PDVSA.  ECF 755 at 3-4.  Defendants

echo this flawed reasoning, maintaining that because it lacked subject matter jurisdiction, the district court was "powerless" to grant Appellants' Motion for Substitution as Real Party in Interest and to Intervene (ECF 732).  Respondent's Brief ("RB") at 19.  This reasoning, however, is contrary to the law of this Circuit.

This Court long ago established in *Delta Coal* the principle that a district court is not divested of subject matter jurisdiction because the original plaintiff lacked standing "*as long as* there exists a substantial identity of interest between the original plaintiff and the true party in interest, and *as long as* the pleadings set forth the facts upon which the real party would base its invocation of the court's jurisdiction in its own right."  743 F.2d at 856 (emphasis added).  Both conditions for substitution of PDVSA as the real party in interest are met here.  First, there is a substantial "identity of interest" between the Trust and PDVSA, and second, PDVSA will be asserting identical causes of action as the Trust did in the Amended Complaint.  OB at 22.  As in *Delta Coal*, where individual investors were permitted to substitute for the corporate entity in which they had invested that had been the original plaintiff, 743 F.2d at 854, here the district court should have permitted substitution of the Trust for PDVSA.

Defendants' treatment of *Delta Coal*, which they do not discuss until page 23 of their Brief, does not accurately describe the Court's holding.  They assert that *Delta Coal* is distinguishable because "unlike here, the original plaintiff in *Delta*

4

*Coal* had Article III standing—*i.e.*, it was a proper representative of the interests of its co-owners, who had suffered an injury-in-fact." RB at 23. In fact, this Court held that Delta Coal *did not* have standing under the applicable federal securities laws. 743 F.2d at 855-56. Defendants in *Delta Coal* argued, as do Defendants here, that, because Delta Coal itself lacked standing, the court had no Article III subject matter jurisdiction and therefore had no power to substitute the investors, who did have standing, for the original plaintiff. *Id.* at 854. Defendants in *Delta Coal* also argued, as Defendants do here, that "it would be improper for the district court to attempt to remedy its initial lack of jurisdiction by the substitution of the co-owners, because a lack of subject matter jurisdiction cannot be remedied retroactively by resort to procedural rules." *Id.*

This Court expressly rejected that argument based on reasoning that is directly applicable here. This Court held that, because the complaint alleged injury (purchase and sale of a security based on misrepresentations) to the interest of the investors who would have standing, those facts sufficed to "pass the minimal test required for invoking the court's jurisdiction." *Id.* at 855-56. To paraphrase the Court by replacing the names of the parties in this case for those in *Delta Coal*: The "pleadings clearly set forth the factual allegations upon which [PDVSA's] claims for relief are grounded." *Id.* at 856. PDVSA "has such an identity of interest with [the Trust] that their claims have functionally been before the court since the outset of this

litigation." *Id.* "Damages are claimed in terms of the losses suffered by [PDVSA], and the monetary relief is sought to be awarded to [PDVSA]." *Id.* Thus, concluded this Court in *Delta Coal*, in language equally applicable here, a district court does have subject matter jurisdiction "when it takes jurisdiction over a controversy, even if not brought by the real party in interest, as long as there exists a substantial identity of interest between the original plaintiff and the true party in interest, and as long as the pleadings set forth the facts upon which the real party would base its invocation of the court's jurisdiction in its own right." *Id.* That principle of law is directly applicable here.

Defendants also attempt to distinguish *Delta Coal* by arguing that *Delta Coal* "did not address whether a district court has subject-matter jurisdiction to consider substitution after the district court's dismissal of the action for lack of subject matter jurisdiction is affirmed on appeal." RB at 23. But there is nothing in this Court's reasoning in *Delta Coal* to indicate that the timing of the substitution was essential to the result. Delta Coal's lack of standing did not deprive the district court of subject matter jurisdiction because there were real parties in interest that could be substituted. In the instant case, this Court affirmed that the Trust lacked standing, *PDVSA U.S. Litig. Trust v. Lukoil Pan Americas, LLC*, 991 F.3d 1187, 1197 (11th Cir. 2021), but it had no occasion to address the question that was decided in *Delta Coal*, *i.e.*, whether the district court has jurisdiction to substitute PDVSA as the

6

Plaintiff in place of the Trust. That issue was simply not before the Court in the prior appeal.

Further, Defendants' purported distinction between "statutory standing" and "Article III standing" is irrelevant to the issue before the Court. RB at 23-25. In *Delta Coal*, the original plaintiff lacked Article III standing because the securities laws did not grant that plaintiff a cause of action. 743 F.2d at 854-55. This case is no different. The Trust lacked standing by virtue of a New York statute that this Court determined prohibited the assignment to the Trust. *PDVSA U.S. Litig. Trust*, 991 F.3d at 1190 (citing N.Y. Judiciary Law § 489). Thus, the defect in standing here—the failure to meet a statutory requirement—is no different in quality or kind than the lack of standing that was at issue in *Delta Coal*.

On the same basis, Defendants attempt to distinguish the numerous cases cited by PDVSA (OB at 16) that allow substitution of the real party in interest, notwithstanding that the original plaintiff lacked standing. Defendants assert that those cases "rested on a lack of capacity to sue or other non-Article III infirmities." RB at 29. But all of the cases had "Article III infirmities" because the original plaintiff lacked standing. Nonetheless, in each case, the court held that it had subject matter jurisdiction to substitute a party that had—as here—both a community of interest with the original plaintiff and standing under the applicable law. There is nothing unique about the reason for the lack of standing here—noncompliance with

a state law—as compared with the multiple and various reasons why standing was absent in each of the cited cases.

Defendants are critical of the Second Circuit's decision in *Fund Liquidation Holdings, LLC v. Bank of America Corp.*, 991 F.3d 370 (2d Cir. 2020), but they fail to explain how the court's reasoning is in any way incorrect. Like this Court in *Delta Coal*, the Second Circuit in *Fund Liquidation* held that it was "nonsensical" for jurisdiction to turn on whether the nominal plaintiff had standing. *Id.* at 389. This is especially so when the substituting party is not in any way changing the original cause of action, but simply stepping into the shoes of the original plaintiff. Thus, in *Fund Liquidation*, the court found that the assignee of the dissolved entities was prosecuting the identical claims. *Id.* at 377. The fact that Fund Liquidation existed and had standing at the time the action was brought ensured that there was "a live controversy when the action was initiated." *Id.* at 390.

The Second Circuit further noted that there are many cases where courts have allowed substitution where the initial plaintiff technically lacked standing. Indeed, the only potentially inconsistent decision was the Fourth Circuit's unpublished opinion in *House v. Mitra*, 796 F. App'x 783 (4th Cir. 2019), cited at RB 20, which the Second Circuit rightly characterized as a case which "brings little to the table." *Fund Liquidation*, 991 F.3rd at 391. In *House*, the court held that there was no subject matter jurisdiction over an action brought by an individual who had died two

8

days before the case was filed. 796 F. App'x at 783-84. The court rejected substitution of his estate representative pursuant to Rule 17(a)(3) on the grounds that, by its terms, the Rule "does not allow for substitution when a plaintiff is deceased at the time suit is filed." *Id.* at 788-79.

Assuming *House* was correctly decided, its holding is limited to the narrow, inapplicable circumstance of a deceased plaintiff. The narrow holding is demonstrated by the Fourth Circuit's favorable citation to its own decision in *Martineau v. Wier*, 934 F.3d 385 (4th Cir. 2019), which predated *House* by just sixteen weeks. In *Martineau*, the district court held that the individual plaintiff lacked standing because, at the time she sued, her tort claims were the property of her bankruptcy estate. *Id.* at 392. Nonetheless, the Fourth Circuit allowed substitution of the bankruptcy trustee because Martineau had alleged "a distinct injury" caused by the defendants in her tort action "and redressable by a favorable decision" in that case. *Id.* at 391. Similarly, here, the action was brought by the Trust which clearly alleged both concrete injury caused by Defendants and redressable relief. There is no logical reason why PDVSA's claims here cannot be asserted through substitution of the real party in interest just as Martineau's claims were.

Nor is Defendants' "nullity" theory supported by the other cases they cite. RB at 20-22, 26-28. For example, in *Davis v. Yageo Corp.*, the court merely held that a

plaintiff who did not buy shares of stock until after the alleged securities violation had occurred had no standing to assert a claim for damages. 481 F.3d 661, 675 (9th Cir. 2007). Further, the court held that the purchaser could not use Rule 17(a) to involuntarily force the joinder of the original shareholder who did suffer the actual injury. *Id.* at 678. More relevant is the Ninth Circuit's decision in *Jones v. Las Vegas Metro. Police Dep't*, where the court relied on Rule 17(a)(3) to reverse a dismissal of a wrongful death action that was improperly brought by the father of the decedent in his personal capacity, rather than as administrator of the decedent's estate. 873 F.3d 1123, 1128-29 (9th Cir. 2017).

Also clearly distinguishable is *Zurich Insurance Co. v. Logitrans Inc.*, 297 F.3d 528 (6th Cir. 2002). In that case, the wrong insurance company filed an action in which it purported to be the subrogee of the original injured party. *Id.* at 530. When the insurance company that actually owned the claim sought to be substituted as the plaintiff, the court refused. *Id.* at 533. It explained that this was a classic example of the situation where Rule 17(a)(3) does not apply, analogizing the situation to the specific example cited in the Advisory Committee comments to Rule 17, which recognize that a party that does not own a claim cannot substitute an entirely different party that may have a similar claim. *Id.* at 531-32. Moreover, the insurance company seeking substitution was a "totally separate entity, which was not vigilant in protecting its claims." *Id.* at 532.

10

The failure to exercise due diligence is a critical factor which courts apply in distinguishing between good faith mistakes warranting ratification, joinder, or substitution, and mistakes "found not [to be] understandable." *Rideau v. Keller Indep. Sch. Dist.*, 819 F.3d 155, 167 (5th Cir. 2016) (allowing guardian *ad litem* to ratify parents' good faith belief that they could bring suit on behalf of their child) (citing *Zurich Ins. Co.*, 297 F.3d at 532). The facts in *Zurich* are clearly distinguishable from the facts here and in *Delta Coal*. In this case, as in *Delta Coal*, an action was brought by a party that had a clear connection to the claims and had a community of interest with the real party in interest. Further, PDVSA diligently sought substitution shortly after the Trust's lack of standing was affirmed on appeal.

In any event, *Zurich* has been heavily criticized. Wright and Miller note that "[t]he confusion of standing with real-party-in-interest concepts may have unfortunate consequences. A focus on standing may lead a court to refuse application of the ameliorating rules that enable substitution of the real party in interest when the wrong plaintiff filed the action." 13A Charles Wright & Arthur Miller, Federal Practice & Procedure § 3531 (3d ed. 2022). Indeed, the authors cite *Zurich* as a "particularly troubling illustration" of this confusion leading to unfortunate consequences. *Id.* at n.61. Said the authors, *Zurich* demonstrates "one of the nefarious consequences of pushing too far the Article III foundations of standing theory. Clearly, there was a plaintiff with standing. The mistake in naming

the proper insurer as plaintiff was plainly inadvertent and caused no prejudice to the defendants.  The policies embodied in Rule 17 could—and should—have been implemented by allowing substitution of American as real party in interest." *Id.; see also Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l.*, 790 F.3d 411, 425-27 (2d Cir. 2015) (concurring opinion) (stating that *Zurich* "is not the law of this Circuit," and expressing "some doubt that it should be").

Next, Defendants cite two Eleventh Circuit cases in support of adopting the "nullity" doctrine.  RB at 22.  But neither case even mentions Rule 17(a) or the nullity doctrine.  Instead, the two cases support the well-established principle that standing requires an injury-in-fact.  In *Wright v. Dougherty Cnty., Ga.*, the voters who brought a Voting Rights Act challenge to malapportionment lacked standing because, as non-residents of the district at issue, they not only were not harmed by the alleged malapportionment, but actually benefited from it.  358 F.3d 1352, 1355 (11th Cir. 2004).  *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335 (11th Cir. 2014), another Voting Rights Act case, simply held that the plaintiffs, naturalized United States citizens, had standing because they suffered an injury-in-fact.

## II.    THIS APPEAL IS NOT BARRED BY LAW OF THE CASE.

Defendants argue that this appeal is precluded by the principle of law of the case because this Court determined in the prior appeal that the district court lacks subject matter jurisdiction due to the Trust's lack of standing.  That argument is

12

meritless because the issue now before the Court was not presented in the prior appeal.

The only issue decided in the prior appeal was whether the assignment to the Trust was valid; if it had been, the Trust would have had standing to pursue the merits of the case. *PDVSA U.S. Litig. Trust*, 991 F.3d at 1190. This Court held that the Trust did not have standing because the assignment violated New York champerty law. *Id.* at 1187. The issue now before the Court is distinctly different: whether the district court has subject matter jurisdiction to substitute PDVSA as the real party in interest.[1] As the *Delta Coal* decision demonstrates, however, lack of standing, and therefore the court's lack of subject matter jurisdiction, of the initial party does not determine the issue of whether the court has jurisdiction to address an intervention motion by the real party in interest. 743 F.2d at 856.

## III.  PDVSA MEETS THE REQUIREMENTS OF RULE 17(a)(3) FOR SUBSTITUTION AND RELATION BACK.

PDVSA was entitled to intervene as the real party in interest pursuant to Rule 17(a)(3)[2] because the motion for substitution was filed before the dismissal order

---

[1] Indeed, Defendants' recitations of the issues presented in the prior appeal (Response Brief at 1, Case No. 19-10950) and now (RB at 2) reflect this distinction.

[2] Defendants argue that Appellants have waived any argument under Rule 24. Appellants believe that Rule 17(a)(3) is the procedural rule applicable here, but there should be no waiver of the substantive argument if the Court finds that Appellants cited the wrong rule. *See generally Fed. Sav. & Loan Ins. Corp. v. Haralson*, 813

became final.  PDVSA moved to be substituted for the Trust on May 18, 2021, almost six months before the Supreme Court denied the Trust's petition for certiorari on November 8, 2021.  *See PDVSA US Litig. Tr. v. Lukoil Pan Americas, LLC*, 142 S. Ct. 466 (2021).  Further, the motion was made within 60 days of this Court's decision affirming the Trust's lack of standing.

Rule 17(a) is designed to prevent the forfeiture of valid claims merely because such claims are not brought by the real party in interest and where the real party in interest seeks to be substituted within a reasonable time after the defect in standing is determined.  *See* Fed. R. Civ. P. 15 advisory committee's note to 1966 amendment; Fed. R. Civ. P. 17 advisory committee's note to 1966 amendment; *see generally Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 18-21 (2d Cir. 1997) (citing Advisory Committee Notes in allowing substitution of real party in interest before assignment did not validly transfer claims to original plaintiff); 6A Charles Wright & Arthur Miller, Federal Practice & Procedure § 1555 (3d ed. 2016).

As in *Advanced Magnetics*, PDVSA met the conditions for substitution and relation back pursuant to Rule 17(a) after the assignment was finally declared invalid (OB at 23-33), yet in one sentence at the end of its order, the district court

---

F.2d 370, 373 & n.3 (11th Cir. 1987) ("Briefs are read liberally to ascertain the issues raised on appeal.") (inartful description of issues on appeal is not abandonment where the relevant substantive issue is argued in the appellate brief).

additionally denied the motion as untimely "given PDVSA's years long knowledge that standing was an issue in this case." ECF 755 at 4. Defendants devote most of their Argument section to asserting that this ruling was not an abuse of discretion.

Defendants' position is wrong for several reasons. First, the issue is not whether the district court abused its discretion. The district court's holding that PDVSA was obligated to intervene as soon as Defendants objected to the Trust's standing is erroneous as a matter of law. *See* OB at 26; *Young v. New Process Steel, LP*, 419 F.3d 1201, 1203 (11th Cir. 2005) ("We decide pure law issues *de novo* . . . which is another way of saying that a ruling based on an error of law is an abuse of discretion."). The Trust was entitled to vigorously defend its standing in the face of Defendants' challenge. Therefore, it was not unreasonable for the Trust to zealously pursue a position it asserted in good faith, both in the district court and on appeal. *See Klein v. Qlik Techs., Inc.*, 906 F.3d 215 (2d Cir. 2018) (court did not lose subject matter jurisdiction where original plaintiff lost standing; proper party could be substituted under Rule 17(a)(3) where failure of the proper party to originally join was not the result of bad faith); *Rideau*, 819 F.3d at 165-67 ("A good-faith, nonfrivolous mistake of law triggers Rule 17(a)(3) ratification, joinder, or substitution" and noting original plaintiffs' "steadfast and consistent position"); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 2009 WL 1490599, at *3 (S.D.N.Y. May 21, 2009) ("It cannot be extrapolated from this, however, that a party

faced with a Rule 17(a) objection in a motion must forthwith seek ratification, joinder or substitution at that party's peril, even if the party takes a different view of the validity of the objection; *such a party is surely acting reasonably if it awaits the court's decision of the motion*.") (emphasis added).

This is especially so in this case for two reasons. First, the primary ground on which Defendants challenged the Trust's standing was the alleged lack of authenticity of the assignment. This Court held in the prior appeal that the district court's holding on that ground was dubious and instead denied standing on the basis of champerty. *PDVSA U.S. Litig. Trust*, 991 F.3d at 1191-93. Thus, this Court's holding corroborates that the Trust did not act improperly in vigorously defending the authenticity of the assignment documents.

Second, even on the issue of champerty, the Trust was well within its rights to challenge Defendants' position that the assignment violated New York law. This is most especially the case since this Court recognized, in the prior appeal, that it was improper for the district court even to consider the champerty defense as a part of a Rule 12(b)(1) motion since champerty is a defense on the merits. *Id.* at 1192-93. While this Court held that the Trust had waived that procedural issue on appeal, it acknowledged that the Trust properly raised that issue below and the Court ultimately held that the Trust's position was, in fact, procedurally correct. *Id.* at 1192-94.

16

Defendants cite various cases which supposedly support the proposition that a party must abandon defense of its standing merely in the face of an objection by the opposing party. RB at 35-37. Those cases are all clearly distinguishable. In each of those cases, the plaintiff took no action in the face of an express challenge that it was not the proper party or lacked capacity to sue. This is a very different case. Here, the Trust vigorously defended its standing and PDVSA was entitled to rely upon the Trust's vigorous defense up until the point that this Court determined, on appeal, that standing did not exist.

Finally, Defendants argue that it would be inappropriate to allow PDVSA to intervene because Defendants spent $209,000 in fees and costs in their original opposition to the Trust's standing.[3] RB at 49. This argument is meritless for three reasons. First, Defendants were already awarded $209,732.65 in fees and costs as a sanction by the district court. ECF 685, 715. While the Trust's appeal of the sanctions award was pending in this Court, the parties settled the fee issue. Thus, Defendants have been made whole for any wrongful expenditures. Second, as noted above, most of Defendants' efforts were spent on the dubious contention, made without any evidence in the record whatsoever, that the documents effecting the

---

[3] Virtually all this money was claimed by Defendants to be money expended because of the Trust's alleged discovery failures, which all related to their dubious attack on the authenticity of the documents assigning PDVSA's claims to the Trust.

17

assignment from PDVSA to the Trust were somehow not authentic.  Third, the sum of $209,000 pales in comparison to the billions of dollars in losses allegedly suffered by PDVSA as a result of Defendants' fraud and other misconduct.[4]  ECF 12 ¶ 7.

## IV.    THE DISTRICT COURT HAD JURISDICTION UNDER RULE 60(b) TO ALLOW POST-JUDGMENT RELIEF.

Although Rule 17(a)(3) alone entitles PDVSA to move to intervene before the case became final, out of an abundance of caution, Appellants also sought relief under Rule 60(b).  Defendants argue that the Rule 60(b) motion is untimely because it was not brought within one year of the district court's decision rejecting the Trust's standing.  Generally, the pendency of an appeal does not toll the one-year period to

---

[4] Defendants also rely on this Court's decision in *The Engle Cases*, 767 F.3d 1082 (11th Cir. 2014), to argue that they need not show prejudice in order for Appellants' Rule 17(a)(3) motion to be denied.  Defendants miscite *Engle*.  In that case, this Court held that substitution of the real parties in interest under Rule 17(a)(3) was inappropriate because plaintiffs' counsel had failed to undertake any due diligence to determine whether over 500 of the plaintiffs were deceased at the time the action was brought in their names, and made no effort to correct the error over four years of litigation.  Plaintiffs' counsel argued that the estates of the decedents should be substituted anyway because defendants had suffered no prejudice.  This Court rejected that argument, holding that prejudice is "not the only factor to consider" and noted that the "reasons for delay are also relevant."  *Id.* at 119.  Thus, concluded the Court, "a district court has discretion to deny leave to amend when the moving party's delay was the result of bad faith, dilatory tactics, or sheer inadvertence, or when the moving party offers no adequate explanation for a lengthy delay."  *Id.* Significantly, the Court further noted that plaintiffs' counsel not only failed to exercise due diligence, but had "no excuse for withholding the information from the court."  *Id.*  Such misconduct and unexcused delay clearly are not present here.

18

make a Rule 60(b)(1) motion, but that principle should not apply in this case because the very issue that was on appeal would determine whether a Rule 60(b) motion would be necessary at all.  It was not until this Court affirmed that the Trust lacked standing that PDVSA could seek to be substituted for the Trust as the plaintiff.  Thus, the "mistake" that justified a Rule 60(b)(1) motion was directly related to the issue that was on appeal.  If PDVSA had filed its motion during the pendency of its appeal to conditionally intervene if the Trust's standing were held invalid, Defendants might well have objected that it was premature and, in any event, the district court would not have decided the motion pending the outcome of that appeal.  Thus, there is no conceivable injury to Defendants by allowing intervention now.

In any event, this is clearly a case where the motion should be granted pursuant to Rule 60(b)(6) in the interest of justice.  It was entirely reasonable for

Nor can Defendants assert prejudice.  First, Defendants have been on notice of PDVSA's claims from the day on which suit was first filed over four years ago.  Indeed, Defendants have repeatedly argued and acknowledged that these very claims belong to PDVSA. *See, e.g.*, s*upra*, at 1.  Second, there has been no merits discovery.  Third, there have been no other proceedings on the underlying merits.  If this Court reverses, Defendants would have to answer and ultimately defend the case on the merits as they ordinarily would in any case.  This would not cause Defendants any prejudice.

In any event, this is clearly a case where the motion should be granted pursuant to Rule 60(b)(6) in the interest of justice.  It was entirely reasonable for

PDVSA to wait until the final outcome of the appeal before moving, especially given the changing political situation. *See infra* Point V; *Harris v. Union Elec. Co.*, 846 F.2d 482, 485 (8th Cir. 1988) ("Union did not act unreasonably in waiting until all avenues of appeal had been exhausted before filing its motion."). In this case, Defendants would escape justice on a multibillion-dollar claim that would be lost merely because the action originally was brought based on an assignment made by PDVSA in good faith to the Trust, which was designed to protect the recovery from corrupt Venezuelan officials, and was held years later to have been invalid. Invocation of Rule 60(b)(6) in this case would ensure litigation on the merits rather than dismissal based upon a technicality.

## V.    THE    COURT    SHOULD    REMAND    FOR    FURTHER CONSIDERATION.

The district court did not reach all of the parties' arguments. ECF 755 at 5. Therefore, if this Court agrees that the district court erred in denying PDVSA's motion for substitution, it should remand for further findings of fact and consideration of the remaining legal arguments, rather than affirm the denial on alternative grounds as sought by Defendants.

The alternative grounds raised by Defendants all center on which board of directors may represent PDVSA in this litigation: either the Maduro-appointed board, which approved PDVSA's involvement in this action; or the Guaidó-

20

appointed board, which Defendants favor.  However, Defendants' focus on the governing board of PDVSA is misplaced, and their argument that the record "establishes" that PDVSA (whichever board controls it) is not the real party in interest is belied by the very record upon which it relies.  RB at 55.

As alleged in the Amended Complaint, this litigation "arises from an on-going conspiracy . . . among international oil companies and traders, their banks, and co-conspirators, including corrupt agents and officials of . . . PDVSA" to "fix prices, rig bids, and eliminate competition in the purchase and sale of crude oi1 and hydrocarbon products by PDVSA," "misappropriate PDVSA proprietary data and intellectual property," and "systematically loot PDVSA." ECF 12 ¶ 1. Accordingly, Defendants do not (and cannot) contest that PDVSA, as an entity (that is, the Venezuelan state-owned energy company) (ECF 12 ¶ 1), is the injured party.  Nor do Defendants contest that PDVSA has standing to bring this suit.  Indeed, the Amended Complaint alleges "losses to PDVSA" that "amount to many billions of dollars."  ECF 12 ¶ 7.  Therefore, whether PDVSA's board comprises Maduro appointees or Guaidó appointees is immaterial to this litigation which addresses the multibillion-dollar injury suffered by PDVSA as a corporate entity.  That injury exists irrespective of which board controls the company.

Additionally, contrary to Defendants' argument, the question of who represents PDVSA in litigation in the United States is far from "settled."  RB at 57.

Current events illustrate that the situation is fluid and therefore this Court should hold in abeyance the distribution of any recovery in this action until the recognition of PDVSA is resolved. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126 (3d Cir. 2019) (in action to collect arbitration award against PDVSA, staying attachment and execution against certain PDVSA assets conditioned on approval of the U.S. Executive Branch). For example, the U.S. Government is actively considering allowing Chevron to purchase oil products directly from PDVSA. Further, the Government is considering a program whereby Chevron's payments for the oil would be put in a trust fund benefiting the people of Venezuela.[5] Such an arrangement would be consistent with the Third Circuit's approach in *Crystallex*[6] and is exactly what Appellants proposed from the outset of this case—that any recovery would be held in trust to ensure that it benefited the Venezuelan people. ECF 12 ¶ 9. Further, that is exactly what Appellants proposed

---

[5] Natalie Kitroeff & Anatoly Kurmanaev, *With Migration Surging, U.S. Considers Easing Sanctions on Venezuela*, THE NEW YORK TIMES (Oct. 12, 2022), https://www.nytimes.com/2022/10/12/world/americas/venezuela-us-sanctions.html?searchResultPosition=2.

[6] An appropriate approach here would parallel that taken by the Third Circuit in *Crystallex* when faced with the question of control over PDVSA in rapidly evolving circumstances where deference is owed to the Executive Branch. There, in an action to collect an arbitration award against PDVSA, the Third Circuit addressed U.S. relations with Venezuela, acknowledged Maduro's de facto control, and stayed attachment and execution against PDVSA conditioned on approval by the U.S. Treasury. 932 F.3d at 150-51.

to the court below: that any recovery be held until the proper party to receive the funds is determined by the U.S. Government.  ECF 732.

These current developments follow a series of moves recently taken by the U.S. Government signaling that tensions between the United States and Venezuela are thawing.  In March 2022, U.S. officials traveled to Caracas to meet with Maduro and, subsequently, U.S. officials met with officials of the Guaidó administration "to discuss a path forward."[7]  The United States has also begun lifting economic sanctions against Venezuela and the Maduro administration in "a gesture meant to encourage resumed negotiations between the U.S.-backed opposition and the government of President Nicolás Maduro."[8]  The move includes the Treasury Department renewing Chevron's license to operate in Venezuela by contracting with PDVSA and permitting Italian oil company Eni and Spanish oil company Repsol to resume exporting Venezuelan oil to Europe.[9]  As part of the negotiations, the United

---

[7] Regina Garcia Cano, *US to ease a few economic sanctions against Venezuela*, THE ASSOCIATED PRESS (May 17, 2020), https://apnews.com/article/biden-venezuela-caribbean-united-states-f73616e984ab38e049c4881782a04959.

[8] *Id.*

[9] *See* Miguel Jiménez, *US authorizes Repsol to ship oil from Venezuela to Europe*, EL PAÍS (June 7, 2022), https://english.elpais.com/international/2022-06-07/us-authorizes-repsol-to-ship-oil-from-venezuela-to-europe.html; Patrick Sykes, *US to Let Eni, Repsol Ship Venezuela Oil to Europe, Reuters Says*, BLOOMBERG (June 5, 2022), https://www.bloomberg.com/news/articles/2022-06-05/us-to-let-eni-repsol-ship-venezuela-oil-to-europe-reuters-says; Marianna Parraga & Matt Spetalnick, *U.S. prepares renewal of Chevron's Venezuela license without broader terms-sources*, REUTERS (May 24, 2022) https://www.reuters.com/business/energy/us-

States, the Maduro administration, and the Guaidó interests are working out a deal to release hundreds of millions of dollars in Venezuela state funds that have been frozen in American banks.[10]  In early October 2022, the United States freed two relatives of Maduro in a prisoner exchange as part of the U.S. Government's ongoing efforts to "draw" Maduro "to the negotiating table with the political opposition and to promote free and fair presidential elections in 2024."[11]  A few days later, the Government announced that the U.S. will review its sanctions policies.[12]

Defendants assert that "[a] litigant cannot seek a remand based on the mere hope that the facts might change" (RB at 56), but current events demonstrate that change is already moving quickly forward.  Appellants had delayed joining PDVSA as the plaintiff due, in part, to the political situation in Venezuela.  Yet, by considering a trust fund, easing sanctions, allowing entities to resume business with PDVSA in Venezuela, and engaging in dialogue with President Maduro, the U.S.

---

prepares-renewal-chevrons-venezuela-license-without-broader-terms-sources-2022-05-24/.

[10] Patricia Garip, Vivian Salama & Kejal Vyas, *U.S. Looks to Ease Venezuela Sanctions, Enabling Chevron to Pump Oil*, THE WALL STREET JOURNAL (Oct. 5, 2022),       https://www.wsj.com/articles/u-s-plans-to-ease-venezuela-sanctions-enabling-chevron-to-pump-oil-11665005719.

[11] Ryan Dube & Patricia Garip, *Venezuela Releases Jailed U.S. Citizens in Prisoner Swap*,    THE    WALL    STREET    JOURNAL    (Oct.    1,    2022), https://www.wsj.com/articles/venezuela-releases-jailed-u-s-citizens-in-prisoner-swap-11664655351.

[12] Kitroeff & Kurmanaev, *supra* note 5, at 22.

24

Government is strongly signaling that U.S. policy is changing such that it is open to recognizing the administration of PDVSA that is de facto running the business in Venezuela.  *See Jimenez v. Palacios*, 250 A.3d 814, 828–29 (Del. Ch. 2019), *as revised* (Aug. 12, 2019), *aff'd,* 237 A.3d 68 (Del. 2020) ("The [United States] President . . . holds the exclusive power of recognition of a foreign government [and] [t]he very purpose of [this] recognition . . .  is that our nationals may be conclusively advised with what government they may safely carry on business transactions and who its representatives are.").  This Court should remand to the district court to make additional findings of fact in light of the relevant circumstances that then exist.  It would not be unprecedented for this Court to do so.  *See Crystallex Int'l Corp.*, 932 F.3d at 126.

As Defendants argued below, and expressly represented to this Court, the claims herein belong to PDVSA and PDVSA should still have the claims, even if the Trust were dismissed.  That is all that Appellants request.

## CONCLUSION

For the foregoing reasons and those stated in their Opening Brief, Plaintiff-Appellant and Movant-Appellant respectfully request that the decision below be reversed, and the action be remanded to the district court.

25

Respectfully submitted,

Dated: October 14, 2022

By: */s/ Marshall Dore Louis*
Marshall Dore Louis
BOIES SCHILLER FLEXNER LLP
Miami Center
100 Southeast 2nd St., Suite 2800
Miami, Fl 33131
Tel.: (305) 539-8400
Fax: (305) 539-1307

David Boies
Brooke Alexander
Boies Schiller Flexner LLP
333 Main Street
Armonk, New York 10504
Tel.: (914) 749-8200
Fax: (914) 749-8300

George F. Carpanello
Boies Schiller Flexner LLP
30 S. Pearl Street, 11th Floor
Albany, New York 12207
Tel. (518) 434-0600
Fax: (518) 434-0665

David A. Barrett
Waleska Suero Garcia
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY 10001
Tel.: (212) 446-2300
Fax: (212) 446-2350

*Attorneys for Plaintiff and Movant
Appellants*

## <u>CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(G)(1)</u>

1. This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(ii) because it contains 6,368 words, excluding the parts of the brief exempted by 11th Cir. R. 32-4, as calculated by the word-counting feature of Microsoft Office 2010.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: October 14, 2022          */s/ Marshall Dore Louis*

27

## <u>CERTIFICATE OF SERVICE</u>

I, Marshall Dore Louis, do hereby certify that I have filed the foregoing Brief electronically with the Court's CM/ECF system with a resulting electronic notice to all counsel of record on October 14, 2022.

/s/ *Marshall Dore Louis*